| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br>**WHITE & CASE LLP**<br>Gregory F. Pesce (*pro hac vice* pending)<br>Adam T. Swingle (*pro hac vice* pending)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email:  gregory.pesce@whitecase.com<br>           adam.swingle@whitecase.com<br><br>- and -<br><br>Andrew Zatz<br>Barrett Lingle (*pro hac vice* pending)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email:  azatz@whitecase.com<br>           barrett.lingle@whitecase.com<br><br>*Proposed Counsel to Debtors and Debtors-in-Possession*<br><br>**KEN ROSEN ADVISORS PC**<br>Kenneth A. Rosen<br>80 Central Park West<br>New York, New York 10023<br>Telephone: (973) 493-4955<br>Email: ken@kenrosenadvisors.com<br><br>*Proposed Co-Counsel to Debtors and Debtors-in-Possession* |
| In re:<br><br>CBRM Realty Inc. *et al.*,<br><br>                    Debtors.[1] |

Chapter 11

Case No. 25–15343 (MBK)
(Joint Administration Requested)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (1115), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**DEBTORS' MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
DEBTORS TO (A) CONTINUE OPERATING THEIR CASH
MANAGEMENT SYSTEM, (B) HONOR CERTAIN OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND
(D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully state the following in support of this motion:

### Relief Requested

1. The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**"), and a final order, substantially in the form attached hereto as **Exhibit B** (the "**Final Order**"), (i) authorizing the Debtors to (a) continue operating their cash management system; (b) honor certain obligations related thereto; (c) maintain their existing bank accounts and business forms and implement changes to their cash management system and bank accounts in the ordinary course, including opening new bank accounts and closing existing bank accounts, as may be necessary; and (d) continue to perform Intercompany Transactions (as defined herein) consistent with historical practice; (ii) granting superpriority administrative expense status to postpetition Intercompany Balances (as defined herein); (iii) scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the motion on a final basis; and (iv) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18,

2012 (Simandle, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirms their consent to the entry of a final order by the Court.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 345, 363, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Rules**").

## Background

5. On May 19, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. Each Debtor is operating their businesses and managing their properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**I.    Overview of the Debtors' Cash Management System**

6. In the ordinary course of business, the Debtors historically maintained a cash management system (the "**Cash Management System**") comprised of the following bank accounts maintained at CFG Bank (the "**Existing Cash Management Bank**"). To the best of the Debtors' knowledge as of the Petition Date, the balances in these accounts are as follows:

| Debtor | Bank Name | Acct. No. | Balance |
|---|---|---|---|
| Crown Capital Holdings LLC | CFG Bank | x1519 | $1,284.80 |
| Kelly Hamilton Apts LLC | CFG Bank | x1758 | $104,352.50 |
| RH Chenault Creek LLC | CFG Bank | x1543 | $35,915.13 |
| RH Copper Creek LLC | CFG Bank | x1576 | $40,836.97 |
| RH Lakewind East LLC | CFG Bank | x1584 | $10,436.93 |
| RH Windrun LLC | CFG Bank | x1550 | $62,230.56 |

Certain of the accounts held at the Existing Cash Management Bank are subject to deposit control agreements.

7. Following the Petition Date, the Debtors determined that it would be prudent to establish one or more new bank accounts (the "**New Accounts**") with a financial institution designated by the U.S. Trustee as an authorized depository institution. Accordingly, the Debtors are currently in the process of opening the New Accounts at Western Alliance Bank (the "**New Cash Management Bank**" and, together with the Existing Cash Management Bank, the "**Cash Management Banks**"). The Debtors intend to use the New Accounts to hold deposits and fund expenses incurred during the pendency of these chapter 11 cases. The Debtors will provide notice of the establishment of any such New Account within three (3) business days of the opening of such New Accounts to the U.S. Trustee, the Debtors' postpetition lender, and counsel to any statutory committees, as set forth in the Interim Order and Final Order.

8. It is imperative for the Debtors to maintain their current Cash Management System and establish the New Accounts in order to manage their payroll, fund repairs and upgrades to the Debtors' affordable housing properties, and monitor expenses that occur in the ordinary course

4

of business. Accordingly, the Debtors request authority to continue operating their Cash Management System in the ordinary course on a postpetition basis, consistent with historical practices and as directed by the Debtors' independent fiduciary—Elizabeth A. LaPuma (the "**Independent Fiduciary**").

## II. Bank Fees

9. In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "**Bank Fees**"). To maintain the integrity of their Cash Management System, the Debtors request authority to pay any existing Bank Fees and continue to pay Bank Fees in the ordinary course on a postpetition basis, consistent with historical practices and as directed by the Independent Fiduciary.

## III. Intercompany Transfers

10. In the ordinary course of business, the Debtors are routinely engaged in intercompany financial transactions (the "**Intercompany Transactions**") with other Debtors and non-Debtor affiliates, resulting in intercompany receivables and payables. In the ordinary course of business, the Debtors make Intercompany Transactions to either (a) reimburse certain Debtors or non-Debtor affiliates for various expenditures associated with their business or (b) fund certain Debtors' or non-Debtor affiliates' accounts in anticipation of such expenditures as needed. The operating accounts set forth above hold substantially all of the Debtors' cash which is directly or indirectly wired or transferred throughout the Cash Management System.

11. The Debtors track all fund transfers through their accounting system and can ascertain, trace, and account for all Intercompany Transactions. If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.

5

**IV.    Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines**

12. Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of estate funds, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). To comply with section 345 of the Bankruptcy Code, the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "**U.S. Trustee Guidelines**") for the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee. Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

13. The Existing Cash Management Bank is a well-capitalized and sophisticated financial institution insured by the FDIC and the Court should waive the requirements under section 345 of the Bankruptcy Code with respect to the Existing Cash Management Bank for a limited period of time as set forth herein. Specifically, the Existing Cash Management Bank is well positioned and sufficiently capitalized to continue performing depository and cash management functions for the Debtors. At the same time, the Debtors are in the process of opening the New Accounts at the New Cash Management Bank, which is an authorized depository institution in this region. Accordingly, the Debtors seek a waiver of section 345(b)'s requirements or, alternatively, a temporary suspension of the requirements of section 345(b) for an interim period of thirty (30) days to allow the Debtors to establish the New Accounts, without prejudice to the Debtors' ability to seek further extensions to the extent applicable.

14. As part of the Cash Management System, the Debtors also use a variety of preprinted business forms (including letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, and as they may be modified from time to time, the "**Business Forms**"). The Debtors also maintain books and records to document financial results and a wide array of operating information (collectively, the "**Books and Records**"). The Debtors request authorization to continue using all of the Business Forms and Books and Records in a manner consistent with prepetition practice, without reference to the Debtors' status as a chapter 11 debtor in possession.

## Basis for Relief

**I. The Court Should Waive Strict Compliance with Section 345(b) for Cause**

15. Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," must be secured by a bond that (i) is in favor of the United States, is secured by the undertaking of a corporate surety approved by the U.S. Trustee, and contains certain conditions, or (ii) by the deposit of securities of the kind specified in 31 U.S.C. § 9303. *See* 11 U.S.C. § 345(b). Section 9303 of title 31 of the United States Code provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. *See* 31 U.S.C. § 9303. Moreover, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. Courts may waive compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines "for cause." 11 U.S.C. § 345(b). "Cause," for purposes of section 345(b),

is not defined in the Bankruptcy Code. Courts apply a "totality of the circumstances" test when determining whether cause exists to waive compliance with section 345(b). *In re Serv. Merch. Co., Inc.,* 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). For example, in determining whether to grant a waiver from the requirements of section 345(b) of the Bankruptcy Code, courts may consider (among other things) "the benefit to the debtor; the harm, if any to the estate; and the reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case." *Id*. at 896.

17.     The Debtors submit that cause exists in this case to waive the requirements of section 345(b). The Existing Cash Management Bank is well positioned and sufficiently capitalized to continue performing depository and cash management functions for the Debtors. At the same time, the Debtors are in the process of opening the New Accounts at the New Cash Management Bank, which is an authorized depository institution in this region. Waiving section 345(b)'s requirements with respect to the Existing Cash Management Bank will allow the Debtors to effect an orderly transition of the Cash Management System from the Existing Cash Management Bank to the New Cash Management Bank during these chapter 11 cases. Accordingly, the Debtors submit that cause exists to waive section 345(b)'s requirements.

II.    **The Court Should Approve the Debtors' Use of the Cash Management System and Payment of Bank Fees As Essential to Maximizing the Value of the Debtors' Estates**

18.     Continuation of the Cash Management System and payment of Bank Fees are permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Bankruptcy courts routinely treat requests for authority to continue using existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.,* 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief,

courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part,* 997 F.2d 1039, 1061 (3rd Cir. 1993).

19. Requiring the Debtors to further adopt a different, segmented cash management system during these chapter 11 cases would be expensive and time consuming, and the cost would ultimately be borne by the Debtors' creditors and other stakeholders. By contrast, maintaining the Cash Management System will, among other things, minimize delays in paying postpetition expenses and eliminate administrative inefficiencies.

20. Courts in this and other districts have regularly allowed debtors to maintain their existing cash management systems and such relief generally is non-controversial. *See, e.g., In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) [Docket No. 48] (authorizing the debtors' continued use of their prepetition cash management system on an interim basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024) [Docket No. 1302] (authorizing the debtors' continued use of their prepetition cash management system on a final basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) [Docket No. 59] (authorizing the debtors' continued use of their prepetition cash management system on an interim basis); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 22, 2023) [Docket No. 1160] (authorizing the debtors' continued use of their prepetition cash management system on a final basis); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Dec. 11, 2023) [Docket No. 69] (authorizing the debtors' continued use of their prepetition cash management system on an interim basis).

21. Accordingly, the Debtors respectfully request that the Court authorize the continued use of the Cash Management System, including the continuance of the Intercompany Transactions, and the payment of Bank Fees from the Cash Management System, consistent with past practice and as directed by the Independent Fiduciary.

### III. The Court Should Authorize the Debtors to Open the New Accounts at the New Cash Management Bank

22. The Debtors further request that the Court authorize the Debtors to open new bank accounts, including the New Accounts, with the New Cash Management Bank without seeking further relief from the Court. The Debtors anticipate establishing the New Accounts at the New Cash Management Bank, which is a party to a Uniform Depository Agreement for the District of New Jersey. Following the establishment of the New Accounts, the Debtors will provide notice to the U.S. Trustee, the DIP Lender, and counsel to any statutory committees of the opening of a new account or closing of an existing account.

23. The requested relief will allow the Debtors to comply with the requirements set forth in section 345(b) of the Bankruptcy Code going forward and is routinely granted in chapter 11 cases in this jurisdiction. *See In re the Diocese of Camden, New Jersey*, No. 20-21257 (JNP) (Bankr. D. N.J. Oct. 1, 2020) [Docket No. 34] (authorizing debtors to open new accounts as the debtors may deem appropriate); *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK) (Bankr. D. N.J. Apr. 26, 2023) [Docket No. 68] (same); *In re Princeton Alternative Funding LLC*, Case No. 18-14600 (Bankr. D.N.J. Mar. 9, 2018) [Docket No. 20] (same); *In re Presperse Corporation*, Case No. 24-18921 (MBK) (Bankr. D.N.J. Sep. 9, 2024) [Docket No. 36] (same); *In re Roseville Senior Living Properties LLC*, No. 13-31198 (MBK) (Bankr. D. N.J. Sep. 27, 2013) [Docket No. 30] (same).

24. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to open the New Accounts as the Debtors may deem necessary.

### IV. Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted

25. The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent necessary herein. In the ordinary course of business, the Debtors conduct transactions through methods, including, but not limited to, wires, ACH transactions, direct deposits, and other similar methods. If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to vendors could be delayed.

### V. The Court Should Authorize the Debtors to Continue Using the Existing Business Forms and Books and Records

26. The Debtors request that they be authorized to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession. Parties in interest will not be prejudiced by this relief as parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing the Business Forms is unnecessary and would be unduly burdensome.

27. Notwithstanding the foregoing, once the Debtors have exhausted their existing supply of correspondence, business forms stock and checks, the Debtors will obtain new business forms stock and checks reflecting their status as "Debtors in Possession" and include the corresponding lead bankruptcy case number on all checks. Further, within fourteen (14) days of entry of the Interim Order, the Debtors shall update any electronically produced checks to reflect their status as "Debtors in Possession" and to include the corresponding lead bankruptcy case number.

28. The Debtors should also be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines. The Debtors use a sophisticated recordkeeping system for financial reporting purposes. Continued use of the Debtors' current Books and Records, therefore, will maximize efficiency and reduce administrative strain on the Debtors in these chapter 11 cases.

VI. **The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course of Business and Grant Superpriority Administrative Expense Status to Postpetition Intercompany Balances Among the Debtors**

29. The Debtors' funds move through the Cash Management System as described above. At any given time, there may be intercompany balances (the "**Intercompany Balances**") owed by one Debtor to another Debtor, or a Debtor to a non-Debtor affiliate (or vice versa). Intercompany Transactions are made between and among the Debtors and their non-Debtor affiliates in the ordinary course as part of the Cash Management System. The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions. The Debtors, moreover, will continue to maintain records of such Intercompany Transactions. If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and the estates' detriment. In addition, a number of critical services, including centralized management services and cash management services, currently provided to Debtor entities on an intercompany basis would be interrupted. Accordingly, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.

30. The Debtors further request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments on account of postpetition Intercompany Transactions

12

between or among the Debtors or non-Debtor affiliates that give rise to an Intercompany Balance be accorded administrative expense status, which would result in an administrative expense claim in favor of the applicable Debtor payer.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.  For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition intercompany balance or the Intercompany Transaction(s) from which such intercompany balance may have arisen.

31. Similar relief has been granted in other multi-debtor chapter 11 cases in this district and others.  *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto on an interim basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto on a final basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto on an interim basis); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 22, 2023) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto on a final basis); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Dec. 11, 2023) (authorizing postpetition intercompany transactions between

debtors and granting administrative expense status to intercompany claims related thereto on an interim basis).

### Processing of Checks and Electronic Fund Transfers Should be Authorized

32. The Debtors will have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of anticipated access to postpetition debtor-in-possession financing. In addition, under the Debtors' Cash Management System, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

33. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Waiver of Memorandum of Law

34. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and this motion does not raise any novel issues of law.

### No Prior Request

35. No prior request for the relief sought in this motion has been made to this or any other court.

**Reservation of Rights**

36. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion except as otherwise set forth in the motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**Notice**

37. The Debtors will provide notice of this motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the DIP Lender; (c) Lynd Living; (d) the Ad Hoc Group of Holders of Crown Capital Notes; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors conducts their business operations; (h) the U.S. Department of Housing and Urban Development; (i) the Cash Management Banks; and (j) any party that has requested notice pursuant to Bankruptcy Rule

2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim and Final Orders granting the relief requested in this motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  May 23, 2025

Respectfully submitted,

/s/ Andrew Zatz
**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
Adam T. Swingle (*pro hac vice* pending)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com
       adam.swingle@whitecase.com

-and-

Andrew Zatz
Barrett Lingle (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
       barrett.lingle@whitecase.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*