|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1** | |
| **WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: gregory.pesce@whitecase.com<br><br>- and -<br><br>Andrew Zatz<br>Barrett Lingle (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email:  azatz@whitecase.com<br>            barrett.lingle@whitecase.com<br><br>*Proposed Counsel to Debtors and Debtors-in-Possession*<br><br>**KEN ROSEN ADVISORS PC**<br>Kenneth A. Rosen<br>80 Central Park West<br>New York, New York 10023<br>Telephone: (973) 493-4955<br>Email: ken@kenrosenadvisors.com<br><br>*Proposed Co-Counsel to Debtors and Debtors-in-Possession* | |
| In re:<br><br>CBRM Realty Inc. *et al.*,<br><br>      Debtors.[1] | Chapter 11<br><br>Case No. 25–15343 (MBK)<br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (1115), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951). The location of the Debtors' service address in these chapter 11 cases is: In re CBRE Realty, Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**DEBTORS' MOTION
FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO ASSUME CERTAIN AMENDED AND RESTATED
PROPERTY MANAGEMENT AND ASSET MANAGEMENT AGREEMENTS**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully state the following in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): authorizing the Debtors to assume certain amended property management agreements with Lynd Management Group LLC (collectively, the "**Amended and Restated Property Management Agreements**") and that certain Amended and Restated Asset Management Agreement with LAGSP LLC (the "**Amended and Restated Asset Management Agreement**," and, together with the Amended and Restated Property Management Agreements, the "**Amended and Restated Agreements**") listed on **Exhibit B** to the Proposed Order.

2. In support of this Motion, the Debtors respectfully submit the *Declaration of Mark Dundon in Support of the Debtors' Motion for Entry of an Order (I) Authorizing The Debtors to Assume Certain Amended and Restated Property Management and Asset Management Agreements and (II) Granting Related Relief* (the "**Dundon Declaration**"), attached hereto as **Exhibit C**.

**Jurisdiction and Venue**

3. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a), 365, 501, 502, 503, and 1111(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002(a)(7), (f), and (l), 3003(c), 5005(a), and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 3003-1 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Rules**").

## Background

### A. Overview of the Chapter 11 Cases

6. On May 19, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. Each Debtor is operating their businesses and managing their properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

7. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Dundon, Principal of IslandDundon LLC, In Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [Docket No. 44].

8. On September 26, 2024, the Debtors' independent fiduciary – Elizabeth A. LaPuma (the "**Independent Fiduciary**") – was appointed as the sole manager of Debtors CBRM Realty Inc. and Crown Capital Holdings LLC, which Debtors subsequently appointed the Independent Fiduciary as the sole director or manager, as applicable, of the other Debtors and certain non-Debtor affiliates owned or controlled by the Debtors. First Day Decl. ¶ 13.

9. On May 28, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (the "**DIP Motion**") [Docket No. 61], seeking entry of interim and final orders authorizing, among other things, certain of the Debtors to enter into a debtor-in-possession financing facility the ("**Kelly Hamilton DIP Facility**") with 3650 SS1 Pittsburgh LLC (the "**Kelly Hamilton DIP Lender**").

10. On June 4, 2025, the Bankruptcy Court entered the *Interim Order (I) Authorizing the Kelly Hamilton DIP Loan Parties to Obtain Senior Secured Priming Superprority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 108] (the "**Kelly Hamilton Interim DIP Order**"), approving the Debtors' entry into the Kelly Hamilton DIP Facility on an interim basis.

### B. The Prior Service Agreements

11. The Debtors, together with their non-Debtor affiliates (collectively, the "**Company**"), own a real estate portfolio comprised of over fifty properties across the United States. Dundon Decl. ¶ 5. To operate and maintain their real estate portfolio, the Company relies on a set of interrelated agreements, including (i) a property management and service agreement, which appoints a property manager responsible for the day-to-day operations, tenant relations, staffing, and maintenance of the Debtors' properties, and (ii) an asset management agreement, which appoints an asset manager to oversee the property manager and the operation, maintenance, and management of the Debtors' properties. *Id.*

12. The asset manager's duties generally include: (i) contracting with professionals, including property managers and contractors, and monitoring their performance, (ii) managing and disbursing funds, establishing reserves, and recommending cash resource investment strategies; (iii) reviewing and monitoring the property manager's operations, including staffing, financial reports, and budgets; (iv) preparing strategic asset and marketing plans, (v) recommending and overseeing major repairs, replacements, and critical improvements at the Debtors' properties, and (vi) providing information for annual financial statements and tax returns. Dundon Decl. ¶ 6.

13. Prior to the commencement of the Debtors' chapter 11 cases, the Debtors engaged LAGSP LLC and Lynd Management Group LLC to provide asset management and property management services, respectively, to the Debtors' multifamily properties in Pittsburgh, Pennsylvania and New Orleans, Louisiana under various asset management, property management, and related agreements (collectively, the "**Prior Service Agreements**"). Dundon Decl. ¶ 7. LAGSP LLC and Lynd Management Group are affiliates of The Lynd Group, a Texas-based real estate management organization (collectively, the "**Manager**"). Dundon Decl. ¶ 8. The Manger is a leading, national full-service real estate operating enterprise that offers property management, asset management, and affordable housing compliance services with expertise focused on multifamily housing. Dundon Decl. ¶ 9.

14. Prior to the Petition Date, the Manager accrued approximately $953,000 in unpaid fees under the Prior Service Agreements. Dundon Decl. ¶ 10.

**C. The Amended and Restated Agreements**

15. The Kelly Hamilton DIP Lender is affiliated with the Manager. First Day Decl. ¶ 22; Dundon Decl. ¶ 11.

16. In connection with negotiation of the Kelly Hamilton DIP Facility, the Debtors, at the direction of the Independent Fiduciary, and the Manager engaged in negotiations regarding certain modifications to the Prior Service Agreements, which the Kelly Hamiliton DIP Lender required in order to enter into the Kelly Hamilton DIP Facility. Dundon Decl. ¶ 12. These negotiations resulted in the Debtors seeking to assume the Amended and Restated Agreements. Dundon Decl. ¶ 12.

17. The Kelly Hamilton DIP Facility provides that the Debtors shall seek to assume the Amended and Restated Agreements under section 365(a) of the Bankruptcy Code. DIP Motion, Ex. A at 3.

18. Moreover, in connection with the Kelly Hamilton DIP Facility, the Debtors and Manager agreed that the Debtors would seek to assume the Amended and Restated Agreements, subject to cure costs totaling $953,000 (the "**Cure Amount**"), which Cure Amount shall be satisfied (i) in cash in the amount of $328,000, within five (5) business days of entry of the Proposed Order and (ii) as an administrative expense priority claim under section 503(b) of the Bankruptcy Code asserted by LAGSP LLC in the amount of $625,000 (the "**Manager Administrative Expense Claim**"), *provided, however*, that the Manager Administrative Expense Claim shall be satisfied upon consummation of the Kelly Hamilton Restructuring Transaction (as defined in the Kelly Hamilton Interim DIP Order), without any further approval or action by any person or entity, as set forth in the *Binding Term Sheet for Senior Secured, Superpriority Debtor-in-Possession Financing dated May 26, 2025*, annexed as Exhibit A to the Kelly Hamilton Interim DIP Order; *provided*, further, however, that if the Kelly Hamilton Restructuring Transaction is not consummated as set forth in the *Binding Term Sheet for Senior Secured, Superpriority Debtor-in-Possession Financing dated May 26, 2025*, annexed as Exhibit A to the Kelly Hamilton Interim

DIP Order, then, the Manager Administrative Expense Claim shall be satisfied at the time of closing of a transaction other than the Kelly Hamilton Restructuring Transaction or otherwise in a manner otherwise agreed to in writing by the Debtors and the Manager. Dundon Decl. ¶ 13.

19. By this Motion, the Debtors seek to assume the Amended and Restated Agreements and satisfy the Cure Amount associated therewith. As set forth in the Dundon Declaration, assumption of the Amended and Restated Agreements was negotiated by the Debtors, under the direction of the Independent Fiduciary in connection with negotiation of the Kelly Hamilton DIP Facility. The Debtors' assumption of the Amended and Restated Agreements will not only allow the Debtors to continue operating and maintaining their real estate portfolio, but will also ensure compliance with the terms and conditions of the Kelly Hamilton DIP Facility.

## Basis for Relief

20. The Bankruptcy Code provides that a debtor may assume or reject any executory contract or unexpired lease, subject to the court's approval. 11 U.S.C. § 365(a). The decision to assume or reject executory contracts is squarely within the Debtors' business judgment. *See, e.g.*, *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional"); *In re Group of Inst. Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("the question [of assumption] is one of business judgment"); *In re Market Square Inn, Inc.*, 978 F.2d 116, 131 (3d Cir. 1992) (The "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court."); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) ("Although the code does not provide the standard to be applies in determining the propriety of the trustee or DIP's decision, most Circuits, including the Third Circuit have adopted the business judgment test.")

21. A debtor exercises sound business judgment with respect to its decision to assume or reject an executory contract or unexpired lease upon a good-faith determination that the proposed action will benefit the estate. *See In re Central Jersey Airport Serv., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002). Courts will defer to a debtor's decision to assume or reject an executory contract upon finding that the debtor has exercised its sound business judgment in making such determination. *See In re III Enterprises Inc. V*, 163 B.R. 453, 469 (Bankr. E. D. Pa 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet."); *see also City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 U.S. Dist. LEXIS 54785, at \*19 (D. Del. Mar. 28, 2022) ("The legal standard to . . . 365(a) is the business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor shows that a sound business purpose justifies such actions. The test considers the benefit to the debtor's estate and, if a valid business justification exists, then a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) ("Courts normally leave the decision to reject a contract to the debtor's sound business judgment.").

22. The Debtors have determined, in the exercise of their business judgment, that it is in the best interests of their estates to assume the Amended and Restated Agreements. As explained above and in the Dundon Declaration, the Debtors agreed to assume the Amended and Restated Agreements, and satisfy the Cure Amount associated therewith, in connection with their negotiation of the Kelly Hamilton DIP Facility, at the direction of the Independent Fiduciary. *See generally* Dundon Decl. As a result, the Debtors' assumption of the Amended and Restated

Agreements is a condition precedent to closing the Kelly Hamiliton DIP Facility and is necessary to avoid a default under the Kelly Hamilton DIP Facility. Dundon Decl. ¶¶ 12, 14; DIP Motion, Ex. A at 12; *see also* DIP Motion, Ex. C, Art. 1.1 (providing that the Interim Order shall require the Debtors to assume all Amended and Restated Service Agreements); *id*., Ex. C, Art. 4.1(g) (providing that the Debtors shall have received authority to assume all Amended and Restated Agreements, as a condition precedent to the Kelly Hamilton DIP Facility). Accordingly, financing from the Kelly Hamilton DIP Lender remains subject to the Debtors' assumption of the Amended and Restated Agreements and satisfaction of the Cure Amount. *See id*.

23. Moreover, the Debtors already rely on the Manager to provide critical property management and asset management services. Dundon Decl. ¶ 7, 14. The Manager is qualified and experienced in providing such services and helps to ensure that the Debtors' properties have the staffing and resources necessary to provide residents with safe and clean homes. Dundon Decl. ¶ 14. Accordingly, the Debtors believe that the suspension or termination of the Manger's services could have a disastrous impact on the Debtor's ability to maintain and operate their properties. *Id*. As a result, the Debtors have concluded, in the exercise of their business judgment, that assumption of the Amended and Restated Agreements is the best way to ensure that the Debtors maintain the liquidity and services necessary to continue operating their real estate portfolio. Dundon Decl. ¶¶ 15-16.

24. When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract. *See* 11 U.S.C. 365(b)(1)(A). The Debtors and Manager agreed that assumption of the Amended and Restated Agreements would be subject to satisfaction of the Cure Amount, which is payable (i) in cash in the amount of $328,000, within five (5) business days of entry of the Proposed Order, and (ii) as the Manager

Administrative Expense Claim at the conclusion of the chapter 11 cases, unless the Debtors effectuate a sale, recapitalization or reorganization related to the Kelly Hamilton Debtor, in which case the Manager Administrative Expense Claim shall be satisfied as set forth in the *Binding Term Sheet for Senior Secured, Superpriority Debtor-in-Possession Financing,* dated May 26, 2025. Dundon Decl. ¶ 13; *see* DIP Motion, Ex. A at 3.

25. For the reasons set forth herein, the Debtors believe that they have satisfied the requirements for assumption of the Amended and Restated Agreements under section 365 of the Bankruptcy Code. The Debtors therefore submit that the relief requested herein is a condition precedent to, and necessary to secure, the Kelly Hamilton DIP Facility, is in the best interests of their estates, is a sound exercise of their business judgment, and should be approved by the Court.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Waiver of Memorandum of Law

27. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and this motion does not raise any novel issues of law.

### Reservation of Rights

28. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) a waiver of any other party in interest's right to dispute any claim on any grounds; (b) a promise

or requirement to pay any particular claim; (c) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion except as otherwise set forth in the motion; (d) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estate.

**Notice**

29.     The Debtors will provide notice of this motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the DIP Lenders; (c) Lynd Living; (d) the Ad Hoc Group of Holders of Crown Capital Notes; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors conducts their business operations; (h) the U.S. Department of Housing and Urban Development; (i) the counterparties listed on **Exhibit B**; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully requests that the Court enter the Proposed Order granting the relief requested in this motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  June 11, 2025

Respectfully submitted,

*/s/ Andrew Zatz*
**WHITE & CASE LLP**
 Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

- and -

Andrew Zatz
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
           barrett.lingle@whitecase.com

*Proposed Counsel to Debtors and*
*Debtors-in-Possession*


**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Proposed Co-Counsel to Debtors and*
*Debtors-in-Possession*