## Exhibit E

**Forbearance Agreement
dated August 29, 2024**

# FORBEARANCE AGREEMENT

This Forbearance Agreement ("**Agreement**"), dated as of August __29__, 2024, is made by and among Crown Capital Holdings LLC, a Delaware limited liability company (the "**Issuer**"), CBRM Realty Inc., a New York corporation (the "**Parent Guarantor**"), the Subsidiary Guarantors named on Schedule A and on the signature pages hereto (collectively, the "**Subsidiary Guarantors**" and, collectively with the Parent Guarantor, the "Guarantors" and the Guarantors, collectively with the Issuer, the "**Transaction Entities**"), and certain Purchasers (as defined in the Note Purchase Agreements defined below) set forth on the signature pages hereto.

## RECITALS

WHEREAS, the Transaction Entities issued financial obligations to the Purchasers pursuant to (i) a certain Note Purchase Agreement dated as of June 1, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its provisions, the "**6.75% Senior Unsecured Note Purchase Agreement**") pursuant to which certain of the Purchasers purchased 6.75% Senior Unsecured Notes due 2027 issued by the Issuer (the "**6.75% Senior Unsecured Notes**"); (ii) a certain Note Purchase Agreement dated as of June 1, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its provisions, the "**8.00% Senior Unsecured Note Purchase Agreement**") pursuant to which certain of the Purchasers purchased 8.00% Senior Unsecured Notes due 2025 issued by the Issuer (the "**8.00% Senior Unsecured Notes**"); and (iii) a certain Note Purchase Agreement dated as of December 28, 2022 (as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its provisions, the "**12.50% Social Senior Unsecured Note Purchase Agreement**", and collectively with the 6.75% Senior Unsecured Note Purchase Agreement and the 8.00% Senior Unsecured Note Purchase Agreement, the "**Note Purchase Agreements**", and each a "**Note Purchase Agreement**") pursuant to which certain of the Purchasers purchased 12.50% Social Senior Unsecured Notes due 2025 issued by the Issuer (the "**12.50% Social Senior Unsecured Notes**", and collectively with the 6.75% Senior Unsecured Notes and the 8.00% Senior Unsecured Notes, the "**Notes**"). Capitalized terms used herein without definition shall have the meanings ascribed thereto in the Note Purchase Agreements;

WHEREAS, the undersigned Purchasers constitute Required Holders;

WHEREAS, the Issuer is in default under each of the Note Purchase Agreements and Notes;

WHEREAS, CKD Funding LLC is owed $4,081,638.39, DH1 Holdings LLC is owed the amount of $1,360,546.13, and CKD Investor Penn LLC has a contingent guarantee of $26,500,000.00 (together the "**Lender**") as detailed in Schedule C.

WHEREAS, the Transaction Entities have requested that the Required Holders forbear from exercising their rights and remedies under each of the Note Purchase Agreements; and

WHEREAS, the Required Holders are willing to forbear from exercising such rights and remedies for a limited period of time, provided that the Transaction Entities comply with the terms and conditions of this Agreement.

LAKEWIND-00000008

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Acknowledgments of the Transaction Entities. The Transaction Entities acknowledge and agree that:

1.1  Recitals. The above recitals are true and correct.

1.2  Defaults. The following Defaults the ("Existing Defaults") have occurred and are continuing under the Note Purchase Agreements and the Notes:

(a)  Payment Defaults. The issuer has failed to make interest payments that were due and payable under certain of the Notes;

(b)  Financial and Business Information Defaults. The Issuer has failed to provide all financial and business information as required by Section 7.1 of the Note Purchase Agreements; and

(c)  Officer's Certificate Defaults. The Issuer has failed to provide the officer's certificates certifying compliance with the financial covenants as required by Section 7.2 of the Note Purchase Agreements.

1.3  NPA Documents. The Note Purchase Agreements, and all other agreements, instruments, and other documents executed in connection with or relating to the Notes (the "**NPA Documents**") are legal, valid, binding, and enforceable against the Transaction Entities in accordance with their terms.

1.4  Obligations. The obligations of the Transaction Entities pursuant to the Notes are not subject to any setoff, deduction, claim, counterclaim, or defenses of any kind or character whatsoever.

1.5  Default Interest Rate. The Default Rate of interest under Section 1.2(c) of each of the Note Purchase Agreements is in effect as of the earlier of (i) the date calculated pursuant to a given Note Purchase Agreement, and (ii) the Effective Date of this Agreement. For the avoidance of doubt, nothing herein shall affect the Transaction Entities' obligation to pay interest at the Adjusted Interest Rate as required by Sections 1.2(a) and (b) of the Note Purchase Agreements.

1.6  No Waiver of Defaults. Neither this Agreement, nor any actions taken in accordance with this Agreement or the NPA Documents shall be construed as a waiver of or consent to the Existing Defaults or any other existing or future Defaults under the NPA Documents, as to which Purchasers' rights shall remain reserved.

1.7  Preservation of Rights and Remedies. On the Termination Date (defined below), all of Purchasers' rights and remedies under the NPA Documents and at law and in equity shall be available without restriction or modification, as if the forbearance had not occurred.

DMS_US.365842454.9

LAKEWIND-00000009

        1.8    Purchaser Conduct. Purchasers have fully and timely performed all of their obligations and duties in compliance with the NPA Documents and applicable law, and have acted reasonably, in good faith, and appropriately under the circumstances.

        2.    Required Holders' Forbearance.

        2.1    Forbearance Period. Subject to compliance by the Transaction Entities with the terms and conditions of this Agreement, the Required Holders hereby agree to forbear from exercising their rights and remedies against the Transaction Entities under the NPA Documents with respect to the Existing Defaults during the period (the "**Forbearance Period**") commencing on the Effective Date (as defined in Section 3) and ending on the earlier to occur of (i) January 14, 2025 and (ii) the date that any Forbearance Default (as defined in Section 9) occurs. The Required Holders' forbearance, as provided herein, shall immediately and automatically cease without notice or further action on the earlier to occur of (i) or (ii) (the "**Termination Date**"). On and from the Termination Date, the Purchasers may, in their sole discretion, exercise any and all remedies available to them under the NPA Documents by reason of the occurrence of any Events of Default thereunder or the continuation of any Existing Default.

        2.2    Extension of Forbearance Period. In the sole discretion of the Required Holders, and without obligation, after the Termination Date, they may renew or extend the Forbearance Period, or grant additional forbearance periods.

        2.3    Scope of Forbearance. During the Forbearance Period, the Required Holders will not (i) accelerate the maturity of the obligations pursuant to the Notes or initiate proceedings to collect the obligations pursuant to the Notes; or (ii) initiate or join in filing any involuntary bankruptcy petition with respect to the Transaction Entities under the Bankruptcy Code, or otherwise file or participate in any insolvency, reorganization, moratorium, receivership, or other similar proceedings against the Transaction Entities under the laws of the United States.

        3.    Effective Date. This Agreement shall become effective on the date (the "**Effective Date**") that the parties exchange signature pages.

        4.    Representations and Warranties. Each Transaction Entity represents and warrants as to itself that all representations and warranties relating to it contained in the NPA Documents are true and correct as of the Effective Date, except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects as of such earlier date. The Transaction Entities further represent and warrant to the Purchasers as follows:

        4.1    Authorization. The execution, delivery, and performance of this Agreement are within its corporate power and have been duly authorized by all necessary corporate action.

        4.2    Enforceability. This Agreement constitutes a valid and legally binding Agreement enforceable against the Transaction Entities in accordance with its terms, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, and similar laws affecting creditors' rights generally and to general principles of equity.

LAKEWIND-00000010

4.3    No Violation. The execution, delivery, and performance of this Agreement do not and will not (i) violate any law, regulation, or court order to which the Transaction Entities are subject; (ii) conflict with the Transaction Entities' organizational documents; or (iii) result in the creation or imposition of any lien, security interest, or encumbrance on any property of the Transaction Entities or any of their subsidiaries, whether now owned or hereafter acquired, other than liens in favor of the Purchasers.

4.4    Advice of Counsel. The Transaction Entities have freely and voluntarily entered into this Agreement with the advice of legal counsel of their choosing, or have knowingly waived the right to do so.

4.5    Affiliated Loans. The Transaction Entities do not have any outstanding loans or other obligations to any Insider or Affiliate (as that term is defined in 11 U.S.C. sec. 101)

4.6    Information. All documents and information delivered to Purchasers are true, correct, and complete in all material respects as of the date delivered and as of the Effective Date.

4.7    Subsidiary Guarantor. Schedule A is a true and complete list of Subsidiary Guarantors.

5.    Covenants. In addition, in order to induce the Purchasers to forbear from the exercise of their rights and remedies as set forth above, the Transaction Entities hereby covenant and agree that at all times during the Forbearance Period, unless the Purchasers otherwise consent in writing, as follows:

5.1    Reporting of Information.

(a)    Financial and Information Reporting. The Transaction Entities shall promptly provide to the Purchasers, with an ongoing duty to continue to provide and update, the information requests on Schedule B. Such reporting may be provided by Lynd Management Group LLC and/or Mr. Kenneth Munkacy pursuant to a separate agreement between the Transaction Entities, Purchasers, and Lynd Management Group LLC and/or Ken Munkacy.

(b)    Other Financial Information. The Transaction Entities each shall promptly provide to the Purchasers such financial and other information as the Purchasers may reasonably request.

5.2    Compliance with NPA Documents. The Transaction Entities shall continue to perform and observe all covenants, terms, and conditions, and other obligations contained in all of the NPA Documents and this Agreement, except with respect to the Existing Defaults.

5.3    Independent Fiduciary. Within 10 calendar days of the Effective Date, Issuer shall engage, at its own expense, the services of an individual (reasonably satisfactory to the Required Holders, on terms and conditions satisfactory to Required Holders) to function as an independent fiduciary (the "Independent Fiduciary") with authority to make all decisions on behalf of the Transaction Entities and, through appropriate corporate governance mechanisms, all of the Transaction Entities (the "Fiduciary Agreement"). The parties expressly agree that Mr. Kenneth

DMS_US.365842454.9

LAKEWIND-00000011

Munkacy is reasonably acceptable to the Purchasers. Any engagement by any of the Transaction Entities of a manger, operator or the like for the properties and/or assets of any of the Transaction Entities (specifically including Lynd Management Group LLC ("Lynd") and any companies affiliated with him) shall be on terms and conditions similar to other Property Management Agreements effective as of the date of this Agreement. Property Management Agreements effective as of the date of this Agreement are satisfactory to the Required Holders.

5.4     Sale or Encumbrance of Assets/Loans. The Transaction Entities shall not sell, convey, transfer, assign, lease, abandon, or otherwise dispose of, or grant, pledge or allow the fixing of any lien, charge, mortgage or any other encumbrance upon, any of its assets, tangible or intangible (including but not limited to sale, assignment, discount, or other disposition of accounts, contract rights, chattel paper, or general intangibles with or without recourse), or borrow any money, whether in a new loan, a new draw on an existing loan, or refinancing, without the Required Holders' prior written consent after the Required Holders review of a "sources and uses" statement with regard to the sale proceeds and such other information as the Required Holders may reasonably request.  Notwithstanding the foregoing, subject to the terms and conditions of the Fiduciary Agreement, Transaction Entities shall be permitted to borrow one time up to Twenty Five Million and No/100 Dollars ($25,000,000.00) under a new loan approved by the Independent Fiduciary (after reviewing all requested financial due diligence and, specifically, a sources and uses statement) as advised or arranged by Lynd and Concord Summit Capital, which loan may be secured by the following properties owned by the Transaction Entities: Carmel Brook, Carmel Spring, Laguna Creek, and Laguna Reserve (together "NOLA-4"), provided that (i) such sums are used in furtherance of the operation, maintenance, and improvement of the property, or repayment of senior secured debt, owned by the Transaction Entities (individually or collectively, a "Stabilization Loan"), (ii) a sources and uses statement is provided to the Required Holders within 14 calendar days before the closing of such Stabilization Loan, and (iii) the funding of the loan is not in any way connected to or originated by the Lender or those that invest in or are otherwise affiliated with the Lender.

5.5     Professional Fees. The Transaction Entities shall pay the professional fees of the Purchasers as provided in Section 11.12 of this Agreement.

5.6     Notice of Adverse Claims. If the Transaction Entities shall become aware that any person or entity is asserting any lien, encumbrance, security interest, or adverse claim (including any writ, garnishment, judgment, warrant of attachment, execution, or similar process or any claim of control) against any of them or any of their property which exceeds $100,000 in value (each, an **"Adverse Claim"**), they shall promptly notify the Purchasers in writing thereof, and provide to the Purchasers all documentation and other information it may request regarding such Adverse Claim.  Specifically, and without limiting the forgoing, the Transaction Entities shall promptly provide, but in no event less than 48 hours after becoming aware of any such activities, complete information regarding any and all collection activities of Acquiom Agency Services LLC, the Plaintiff in the lawsuit in the Supreme Court of the State of New York, Country of New York, Index No. 652265/2024 No. (or any entity acting or purporting to act on its behalf).

5.7     Payments to Affiliates.  The Transactions Entities shall not make any payments to any insiders or affiliates (as those terms are defined in title 11 of the United States

LAKEWIND-00000012

Code) of any of the Transaction Entities, including Mark Silber and any entities controlled by him, without the Required Holders' prior written consent.

5.8    Maintenance of Computers.    The Transaction Entities shall retain possession of and otherwise maintain their existing computers, hard drives and other information storage devices. The Independent Fiduciary shall be granted access to all such information and Mark Silber's access shall be terminated.

5.9    Further Assurances. Promptly upon the request of the Purchasers, the Transaction Entities shall take any and all actions of any kind or nature whatsoever, and execute and deliver additional documents, that relate to this Agreement and the transactions contemplated herein.

5.10    Resolution with the Lender.    The Transaction Entities shall not resolve any loan with the Lender through a deed in lieu of foreclosure or similar process.

6.    Reaffirmation of Guaranty. Each Guarantor hereby ratifies and reaffirms (i) the validity, legality, and enforceability of the Guarantee; (ii) that its reaffirmation of the Guarantee is a material inducement to the Purchasers to enter into this Agreement; and (iii) that its obligations under the Guarantee shall remain in full force and effect until all the obligations pursuant to the Notes have been paid in full.

7.    Release of Claims and Waiver of Defenses. In further consideration of the Required Holders' execution of this Agreement, the Transaction Entities, on behalf of themselves and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, agents, and attorneys hereby forever, fully, unconditionally and irrevocably waive and release Purchasers and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, attorneys, and agents (collectively, the "**Releasees**") from any and all claims, liabilities, obligations, debts, causes of action (whether at law or in equity or otherwise), defenses, counterclaims, setoffs, of any kind, whether known or unknown, whether liquidated or unliquidated, matured or unmatured, fixed or contingent, directly or indirectly arising out of, connected with, resulting from, or related to any act or omission by any Purchaser or any other Releasee with respect to the NPA Documents, other than any Purchaser's willful acts or omissions, on or before the date of this Agreement (collectively, the "**Claims**"). The Transaction Entities further agree that Issuer shall not commence, institute, or prosecute any lawsuit, action, or other proceeding, whether judicial, administrative, or otherwise, to collect or enforce any Claim.

8.    Indemnification. The Transaction Entities hereby expressly acknowledge, agree, and reaffirm their indemnification obligations to Purchasers and the other Indemnitees as set forth in Section 15 of each of the Note Purchase Agreements. The Transaction Entities further acknowledge, agree, and reaffirm that all such indemnification obligations set forth in Section 15 of each of the Note Purchase Agreements shall survive the expiration of the Forbearance Period and the termination of this Agreement, each of the Note Purchase Agreements, the other NPA Documents, and the payment in full of the obligations pursuant to the Notes. Notwithstanding the foregoing, such indemnity shall not be available to the extent that such claims, damages, losses,

DMS_US.365842454.9

LAKEWIND-00000013

liabilities, or related expenses result solely from a Purchaser or other Releasee's gross negligence or willful misconduct.

9.    <u>Forbearance Default</u>. The occurrence of one or more of the following shall constitute a "**Forbearance Default**" under this Agreement:

9.1    The occurrence of the Termination Date.

9.2    The Transaction Entities shall fail to abide by or observe any term, condition, covenant, or other provision contained in this Agreement or any document related to or executed in connection with this Agreement.

9.3    A default or event of default shall occur under any NPA Document or any document related to or executed in connection with this Agreement or any of the NPA Documents (other than the Existing Defaults).

9.4    Any Guarantor ceases to exist or revokes or terminates its liability under its Guarantee, or challenges the validity or enforceability of its Guarantee, or denies any further liability or obligation thereunder.

9.5    Any Transaction Entity:

(a)    Intentionally Omitted

(b)    (i) commences any case, proceeding, or other action under any existing or future Requirement of Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking (A) to have an order for relief entered with respect to it, or (B) to adjudicate it as bankrupt or insolvent, or (C) reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition, or other relief with respect to it or its debts, or (D) appointment of a receiver, trustee, custodian, conservator, or other similar official for it or for all or any substantial part of its assets, or (ii) makes a general assignment for the benefit of its creditors;

(c)    has commenced against it in a court of competent jurisdiction any case, proceeding, or other action of a nature referred to in clause (c) above which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged, unstayed, or unbonded for 60 days; or

(d)    ceases to conduct business in the ordinary course.

9.6    Any Transaction Entity, or any of their respective creditors commences a case, proceeding, or other action against any Purchaser relating to any of the obligations pursuant to the Notes, NPA Documents, this Agreement, or any action or omission by Purchasers or their agents in connection with any of the foregoing.

9.7    Any representation or warranty of the Transaction Entities made herein shall be false, misleading, or incorrect in any material respect when made.

LAKEWIND-00000014

9.8    Any entity takes any collection action, including without limitation garnishing of bank accounts, levy and execution against personal property, recording or otherwise imposing of liens against real or personal property, and foreclosure proceedings (whether or not by way of court proceeding), against any of the assets or other property of any of the Transaction Entities that seeks to collect on a debt in excess of $100,000.

9.9    Any Transaction Entity takes an action, or any event or condition occurs or exists, which Purchasers reasonably believe in good faith is inconsistent in any material respect with any provision of this Agreement, or impairs, or is likely to impair, the prospect of payment or performance by Issuer of its obligations under this Agreement or any of the NPA Documents.

9.10    A default or event of default shall occur under any obligation owed to the Lender.

10.    Remedies. Immediately upon the occurrence of a Forbearance Default:

10.1    The Forbearance Period shall immediately and automatically cease without notice or further action without notice to, or action by, any party.

10.2    The Purchasers shall be entitled to exercise any or all of their rights and remedies under the NPA Documents, this Agreement, or any stipulations or other documents executed in connection with or related to this Agreement or any of the NPA Documents, or applicable law, including, without limitation, the appointment of a receiver.

11.    Miscellaneous.

11.1    Notices. Any notices with respect to this Agreement shall be given in the manner provided for in Section 18 of each of the Note Purchase Agreements.  The Transaction Entities shall promptly provide any updates to those notice provisions.

11.2    Integration; Modification of Agreement. This Agreement and the NPA Documents embody the entire understanding between the parties hereto and supersedes all prior agreements and understandings (whether written or oral) relating to the subject matter hereof and thereof. The terms of this Agreement may not be waived, modified, altered, or amended except by agreement in writing signed by all the parties hereto. This Agreement shall not be construed against the drafter hereof.

11.3    Severability. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

11.4    Full Force and Effect. The NPA Documents shall remain unchanged, in full force and effect and continue to govern and control the relationship between the parties hereto, except to the extent they are inconsistent with, superseded, or expressly modified herein. To the extent of any inconsistency, amendment, or superseding provision, this Agreement shall govern and control.

DMS_US.365842454.9

LAKEWIND-00000015

11.5    Successors and Assigns. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, and assigns, provided that the Transaction Entities' rights under this Agreement are not assignable. The Purchasers may assign their rights and interests in this Agreement, the NPA Documents, and all documents executed in connection with or related to this Agreement or the NPA Documents, at any time without the consent of or notice to the Transaction Entities.

11.6    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles thereof.

11.7    No Waiver. No failure to exercise and no delay in exercising, on the part of the Purchasers any right, remedy, power, or privilege hereunder or under the NPA Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. Further, the Purchasers' acceptance of payment on account of the obligations pursuant to the Notes or other performance by the Transaction Entities after the occurrence of an Event of Default shall not be construed as a waiver of such Event of Default, any other Event of Default, or any of the Purchasers' rights or remedies.

11.8    Cumulative Rights. The rights, remedies, powers, and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers, and privileges provided by law.

11.9    Recommendation of Counsel. The Transaction Entities acknowledge that the Purchasers have recommended that they each consult with counsel prior to execution of this Agreement and represent that they either have done so or have knowingly waived the right to do so despite the express recommendation of the Purchasers.

11.10    Consent to Jurisdiction; Venue; Service of Process.

(a)    **Consent to Jurisdiction.** The Transaction Entities each hereby irrevocably and unconditionally consent to the exclusive jurisdiction of the United States District Court for the Southern District of New York and of all New York state courts, for the purpose of bringing any litigation, actions, or proceedings in any manner relating to or arising out of this Agreement or any of the NPA Documents. Nothing herein or in any NPA Document shall affect any right that the Purchasers may otherwise have to bring any action or proceeding relating to this Agreement or any NPA Document against the Transaction Entities or its properties in the courts of any jurisdiction.

(b)    **Waiver of Venue.** The Transaction Entities hereby each waive any objection they may now or hereafter have to the laying of venue in such court and irrevocably waive, to the fullest extent permitted by applicable law, the defense of forum non conveniens to the maintenance of such action or proceeding in any such court.

(c)    **Service of Process.** The Transaction Entities each hereby irrevocably consent to the service of process by certified or registered mail sent to the address

DMS_US.365842454.9

LAKEWIND-00000016

provided for notices in Section 11.1 and agree that nothing herein will affect the right of the Purchasers to serve process in any other manner permitted by applicable law.

11.11 <u>Waiver of Jury Trial</u>. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR ANY NPA DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE, OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS AGREEMENT.

11.12 <u>Reimbursement of Costs and Expenses</u>. Each of the Transaction Entities agree to pay all reasonable costs, fees, and expenses of the Purchasers (including attorneys' fees), expended or incurred by the Purchasers in connection with the negotiation, preparation, administration, and enforcement of this Agreement, the NPA Documents, the Notes, and all fees, costs, and expenses incurred in connection with any bankruptcy or insolvency proceeding (including, without limitation, any adversary proceeding, contested matter, or motion brought by the Purchasers or any other person). Without in any way limiting the foregoing, the Transaction Entities hereby reaffirm their agreement under the applicable NPA Documents to pay or reimburse the Purchasers for certain costs and expenses incurred by the Purchasers. In addition, and for the avoidance of doubt, the Transaction Entities shall promptly pay (i) the reasonable attorneys' fees and costs incurred by Faegre Drinker Biddle & Reath LLP, as counsel to the Purchasers, from March 1, 2024 and continue to pay such fees and costs on a monthly basis and (ii) the reasonable fees and costs incurred by IslandDundon, as financial advisor to the Purchasers, from June 1, 2024 and continue to pay such fees and costs on a monthly basis. Furthermore, and for the avoidance of doubt, the Transaction Entities and the Purchasers acknowledge that the engagement letter (the "Piper Sandler Engagement Letter") entered into among the Issuer, the Parent Guarantor and Piper Sandler & Co. ("Piper Sandler"), dated as of March 4, 2024, shall remain in full and effect, and the Transaction Entities shall promptly pay any fees and/or expenses due and payable to Piper Sandler pursuant to such Piper Sandler Engagement Letter. The Transaction Entities are jointly and severally liable for their obligations under this Section 11.12 and, anything to the contrary herein notwithstanding, each of Faegre Drinker, Biddle & Reath LLC, IslandDundon and Piper Sandler are third party beneficiaries of this provision of this Agreement.

11.13 <u>Headings</u>. The section headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

11.14 <u>Counterparts; Electronic Execution</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

DMS_US.365842454.9

## SCHEDULE A
## SUBSIDIARY GUARANTORS

RH NEW ORLEANS HOLDINGS MM LLC
NBA NEW ORLEANS HOLDINGS LLC
BERGENFIELD INVESTORS LLC
STONEBRIDGE PARTNER LLC
RAYLBNT LLC
PAR MANAGER I LLC
RSBRM APTS LLC
RNBF HOLDINGS LLC
SUMMERSET VILLAS MM LLC
CROWN CAPITAL PARTNERS LLC

CARRIAGE HOUSE APTS MM LLC
RE STERLINGWOOD APTS MM LLC
RHODIUM CT GP LLC
RHODIUM CT LP LLC
RHODIUM FC CT LP
RH FC 14 CT GP LLC
CROWN CAPITAL HOLDINGS SPV LLC
SYCAMORE MEADOWS APTS PARTNER LLC
CHAPEL RIDGE APTS MM LLC
SLIDELL APARTMENTS MM LLC
HIGHLAND PARK APTS MM LLC
EVERGREEN APTS PARTNER LLC

COVINGTON PARK APTS LLC
COPPER RIDGE APTS MM LLC
MAGNOLIA TRACE APTS MM LLC
MAIDEN HOLDINGS LLC
RECTOR INVESTMENTS LLC
LAUREL HOLDCO LLC
TRINITY PARTNER LLC
GREYSTONE APTS MM LLC

DMS_US.365842454.9

LAKEWIND-00000018