| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-1** | |
| In re:<br><br>CBRM Realty Inc. *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 25–15343 (MBK)<br>(Jointly Administered) |

# AMENDED SCHEDULES OF ASSETS AND LIABILITIES FOR CBRM REALTY INC. (CASE NO. 25-15343)

Amended Herein:

- Schedule D: Creditors Who Have Claims Secured by Property
- Schedule E/F: Creditors Who Have Unsecured Claims
- Summary of Assets and Liabilities for Non-Individuals

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (1115), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951). The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty, Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email:  gregory.pesce@whitecase.com

- and -

Andrew Zatz
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:  azatz@whitecase.com
            barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-Possession*

|  |  |
|---|---|
| In re:<br><br>CBRM Realty Inc., *et al.*<br><br>            Debtors.[1] | Chapter 11<br><br>Case No. 25–15343 (MBK)<br>(Jointly Administered) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (1115), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

1

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY
AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

## <u>INTRODUCTION</u>

The above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") hereby file their respective Schedules of Assets and Liabilities (the "<u>Schedules</u>") and Statements of Financial Affairs (the "<u>Statements</u>" and, with the Schedules, the "<u>Schedules and Statements</u>") in the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>").  The Debtors, with the assistance of their advisors and professionals, prepared the Schedules and Statements in accordance with section 521 of title 11 of chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and rule 1007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

These *Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "<u>Global Notes</u>") pertain to, are incorporated by reference in, and comprise an integral part of the Schedules and Statements.[2]

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("<u>GAAP</u>"), nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment and reflects the Debtors' commercially reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.  **The Schedules and Statements and these Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

While the Debtors have made all reasonable efforts to ensure that the Schedules and Statements are accurate and complete as possible based on the information that was available and accessible at the time of preparation, subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred.  The subsequent receipt, discovery, or review of any additional information not used in preparation of the Schedules and Statements may result in changes to the financial data and other information contained in such Schedules and Statements.  Accordingly, the Debtors reserve all rights to amend or supplement the Schedules and Statements in all respects, as may be necessary or appropriate.  Notwithstanding any subsequent information or discovery, the Debtors and their agents, attorneys, and financial advisors do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re- categorized. In no event shall the

---

[2]     These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements.  The fact that the Debtors may reference an individual Debtor's Schedules and Statements and not those of another Debtor should not be interpreted as a decision by the Debtors to exclude the applicability of such reference to any of the Schedules and Statements of any other Debtor, as applicable.

Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or unforeseeable and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

The Debtors indirectly own a large real estate portfolio (the "Crown Capital Portfolio"), which was formed by Moshe "Mark" Silber ("Silber") and certain affiliated parties consisting of dozens of multifamily housing projects across the United States, with nearly 10,000 individual units. The Crown Capital Portfolio's multifamily housing projects have been historically funded, at least in part, by the federal government's housing assistance programs, such as Section 8. Ultimately, the Crown Capital Portfolio raised hundreds of millions of dollars of financing, including (i) over $200 million from the sale of bonds issued by Debtor Crown Capital Holdings LLC ("Crown") and guaranteed by Debtors CBRM and RH New Orleans MM LLC (the "Notes") and (ii) approximately $450 million of property-level mortgage loans provided by myriad financing sources.

Silber and certain of his co-investors, including Frederick Schulman (together with Silber, the "Former Principals of Crown Capital"), have been targets of extensive investigations by the federal government and certain state authorities in connection with certain transactions unrelated to the Crown Capital Portfolio. On April 17, 2024, Silber entered into a plea agreement in connection with an affordable housing project (which does not have a presently identified connection to the Debtors or to their past or present activities) with the Fraud Section of the Department of Justice and the United States Attorney for the District of New Jersey for conspiracy to commit wire fraud affecting an institution pursuant to 18 U.S.C. § 371. Schulman also entered into a plea agreement around the same time. Silber was sentenced to thirty months in prison and Schuman was sentenced to twelve months and one day in prison, to be followed by nine months of home confinement. Both have agreed to restitution, including but not limited to relinquishing ownership of the Crown Capital Portfolio. Once Silber's plea became public, Silber, as a convicted felon, was effectively disqualified from continuing to manage the Crown Capital Portfolio. The Crown Capital Portfolio's stakeholders, including investors who purchased the Notes (the "Noteholders") expressed concern about these developments because the Crown Capital Portfolio's value supported the payment of principal and interest under the Notes. Following discussions between Mr. Silber's counsel and the Noteholders' counsel (Faegre Drinker Biddle & Reath LLP) and financial advisers (at the time, IslandDundon), on August 29, 2024, the parties entered into a forbearance agreement (the "Forbearance Agreement"). The Forbearance Agreement addressed various matters involving pending defaults under the Notes and Mr. Silber's go-forward involvement with the portfolio and established a process to ensure the Crown Capital Portfolio had sufficient fiduciary oversight. The Forbearance Agreement, among other things, required Mr. Silber to appoint an independent fiduciary acceptable to the Noteholders as the sole director of CBRM and Crown and provide that individual with an irrevocable proxy for so long as the obligations under the Forbearance

3

Agreement remained pending.

Thereafter, the Noteholders' advisors identified numerous potential candidates to serve as independent fiduciary as required by the Forbearance Agreement.  On September 26, 2024, the bondholders party to the Forbearance Agreement consented to the appointment of Ms. Elizabeth A. LaPuma—a restructuring professional who for over 20 years has worked as an investment banker and corporate director, including for companies in distress—as the independent fiduciary for CBRM and Crown (the "Independent Fiduciary").  Since that time, Ms. LaPuma has acted in a fiduciary capacity for those entities and the dozens of other entities directly or indirectly owned by CBRM, including the Debtors.

IslandDundon has been engaged by the Debtors as their financial adviser and will soon file its retention application with the Court. IslandDundon has reviewed and reconciled the Debtors' financial records with the assistance of The Lynd Group ("Lynd Living"), a Texas-based real estate management organization engaged as the property manager and asset manager for several of the Debtors' and non-Debtor affiliates' real estate properties.  Due to the nature of fraud involving the Former Principals of Crown Capital, there can be no assurance that the data contained in the financials, books and records, and information received by Lynd Living in its capacity as property manager and asset manager is complete and accurate.  For example, several accounts related to the Debtors' general ledger are missing supporting documentation, which are discussed in greater detail herein.

## GENERAL DISCLOSURES APPLICABLE TO SCHEDULES AND STATEMENTS

1.  **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may have occurred.  The Debtors reserve all rights to: (i) amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to the description, designation, or the Debtor against which any claim (each, a "Claim")[3] is asserted; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or (iv) to object to the extent, validity, enforceability, priority or allowance of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated").  Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" shall not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated."  Listing a Claim shall not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the other Debtors. Further, nothing contained in the Schedules and Statements or these Global Notes shall constitute a waiver of any of the Debtors' rights with respect to their chapter 11 cases including, but not limited to, any issues involving Claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts, assumption or rejection of contracts

---

[3]    For the purpose of these Global Notes, the term "Claim" shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

under the provisions of chapter 3 of the Bankruptcy Code and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable laws to recover assets or avoid transfers. Moreover, the Debtors reserve their rights to amend or supplement the voluntary petition filed by Debtor RH Lakewind East LLC subject to the Court's hearing on *Cleveland International Fund – NRP West Edge, Ltd.'s Motion to Dismiss the Chapter 11 Case of RH Lakewind East LLC* [Docket No. 87]. Any specific reservation of rights contained elsewhere in these Global Notes shall not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

2. **Description of the Cases and "As Of" Information Date**. On May 19, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.

On May 27, 2025, the Court entered the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 51] (the "Joint Administration Order"). The Joint Administration Order authorized the joint administration of the Debtors' chapter 11 cases under lead case number 25-15343 for procedural purposes only. Accordingly, each Debtor has filed its own Schedules and Statements.

The income, loss, and asset and liability information provided in the Schedules and Statements is presented as of the Petition Date. The amounts of the Debtors' funded debt obligations and certain amounts related to the Debtors' requests for "first day" relief are also represented as of the Petition Date. Procedures are in place to clearly delineate pre- and post-petition liabilities.

3. **Net Book Value of Assets**. In many instances, current market valuations are neither maintained by nor readily available to the Debtors. It would be prohibitively expensive and unduly burdensome to obtain current market valuations of the Debtors' property interests that are not maintained or readily available. Accordingly, unless otherwise indicated, the Schedules and Statements reflect the net book values ("NBV"), rather than current market values, of the Debtors' assets as of the Petition Date and may not reflect the net realizable value. For this reason, amounts ultimately realized will vary, at times materially, from net book value.

4. **No Admission**. Nothing contained in the Schedules and Statements is intended, or should be construed as, an admission or stipulation of the validity of any Claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any Claim or assert any cause of action or defense against any party.

5. **Insiders**. For purposes of the Schedules and Statements, the Debtors define "insiders" pursuant to section 101(31) of the Bankruptcy Code. However, parties referenced as "insiders" have been included for informational purposes only and such listing is not intended to be nor should be construed as a legal characterization of such party as an insider and does not act as an admission of any fact, claim, right or defense, and all such rights, claims, and defenses are hereby expressly reserved. The Debtors have attempted to identify parties who could properly be considered "insiders" at any point during the applicable periods identified in the Schedules and Statements. The Debtors were inclusive in their interpretation of what may constitute an

"insider."   However, the Debtors do not take any position with respect to (a) such person's influence over the control of the Debtors, (b) the management responsibilities or functions of such individual, (c) the decision-making or corporate authority of such individual or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.

6. **Liabilities.**   The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as is necessary or appropriate. The liabilities listed on the Schedules do not reflect a complete analysis of Claims rights to be treated as an administrative claim under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted administrative Claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

7. **Excluded Assets and Liabilities**. Liabilities resulting from accruals and/or estimates of long-term liabilities do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules and Statements.  Additionally, certain deferred charges, accounts or reserves recorded for GAAP reporting purposes only and certain assets with a net book value of zero are not included in the Debtors' Schedules.  Excluded categories of assets and liabilities include accrued expenses.  Other immaterial assets and liabilities may also have been excluded.

8. **Summary of Significant Reporting Policies**. The following is a summary of certain significant reporting policies:

a. **Setoffs**. To the extent the Debtors incurred any ordinary course setoffs from customers/vendors such ordinary course setoffs are excluded from the Schedules and Statements.

b. **Credits and Adjustments**.  Claims of creditors are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to same.

c. **Holdco Debtors**.  For the purpose of these reports, and since separate financials for all non-operating Debtors, CBRM Realty Inc., Crown Capital Holdings LLC, Kelly Hamilton Apts MM LLC, RH New Orleans Holdings LLC, and RH New Orleans Holdings MM LLC (collectively, the "Holdco Debtors" and each, a "Holdco Debtor"), do not exist, financials were not rolled up and/or consolidated for the Holdco Debtors. Instead, the only asset of each respective Holdco Debtor is such Holdco Debtor's equity interests in its respective subsidiary.

**9.  Undetermined Amounts**.  Where a description of an amount is left blank or listed as "unknown," "undetermined," or "to be determined," such response is not intended to reflect upon the materiality of such amount.

**10. Estimates**. The preparation of the Schedules and Statements required the Debtors to make certain estimates and assumptions that affected the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities, and the reported amounts of revenue and expenses.  Actual reports could differ materially from these estimates.  Further, certain immaterial assets and liabilities may have been excluded from the Schedules and Statements.  The Debtors reserve all rights to amend the reported amounts of assets, liabilities, reported revenue and expenses to reflect changes in those estimates and assumptions.

**11.  Recharacterization**. The Debtors have made reasonable efforts to properly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items.  Accordingly, the Debtors reserve their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate.

**12.  Classifications**. Listing a Claim (a) on Schedule D as "secured," (b) on Schedule E as "priority," (c) on Schedule F as "unsecured priority," or (d) listing a contract or lease on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of any claimant, or a waiver of the Debtors' rights to recharacterize or reclassify any Claim or contract or to setoff such Claims.  For the avoidance of doubt, the Debtors reserve all rights to dispute the amount and/or the priority status of any Claim on any basis at any time

**11.  Claims Description**. Any failure to designate a Claim on a given Debtor's Schedule as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated."  The Debtors reserve all rights to dispute, or to assert any offsets or defenses to, any claim reflected on their respective Schedules on any grounds including, without limitation, amount, liability, validity, priority or classification, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules accordingly.

**12.  Contingent Assets and Causes of Action**.  Each of the Debtors hold significant potential Claims and causes of action, including Claims and causes of action under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law, against Silber, Frederick Schulman, Piper Sandler & Co., Mayer Brown LLP, Rhodium Asset Management LLC and its affiliates,[4] Syms Construction LLC, Rapid Improvements LLC, NB Affordable Foundation Inc., title agencies, independent real estate appraisal firms, other current or former insiders of the Debtors,

---

[4]    Based on the Debtors' books and records, non-Debtor affiliates owned and controlled by the Former Principals of Crown Capital purportedly include but may not be limited to: Rhodium Asset Management LLC; Rhodium Capital Advisors, LLC; Rhodium Management; Rhodium Development, LLC; Rhodium Group; RHODIUM CT GP LLC; RHODIUM CT LP LLC; RHODIUM FC CT LP; and RH FC 14 CT GP LLC.

and each of the aforementioned entities' affiliates, partners, members, managers, officers, directors, and agents. The Debtors may not have listed all of their respective causes of action or potential causes of action against third parties as assets in their Schedules and Statement, including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any causes of action, avoidance actions, controversy, right of set-off, cross claim, counterclaim, or recoupment, and any Claim in connection with any contract, breach of duty imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertible directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such Claims.

**13.  Executory Contracts**. Although efforts have been made to accurately reflect each Debtor's executory contracts in the Schedules and Statements, inadvertent errors or omission may have occurred. Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using reasonable efforts. Listing a contract or agreement in the Schedules and Statements does not constitute an admission that such contract or agreement (a) is an executory contract, (b) was in effect on the Petition Date, or (c) is valid or enforceable. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.

Although the Debtors made diligent attempts to attribute each executory contract to the correct Debtor, the Debtors may have inadvertently failed to do so. Certain confidentiality and non-compete agreements may not be listed on Schedule G. The contracts and agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments and other documents that may not be listed despite the Debtors' use of reasonable efforts to identify such documents. Certain of the contracts and agreements listed on Schedule G may also consist of several parts, including purchase orders, letters, and other documents that may not be listed on Schedule G or that may be listed as a single entry. Unless otherwise specified on Schedule G, each executory contract listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, purchase orders, statements of work, requests for service, or other agreements made directly or indirectly. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract, a single or integrated contract or agreement, multiple contracts or agreements, or severable or separate contracts or agreements.

The Debtors expressly reserve their rights, Claims, and causes of actions with respect to the executory contracts, including the right to dispute or challenge the characterization of any agreement on Schedule G as executory.

**14.  <u>Guarantees</u>**: The Debtors have used their reasonable best efforts to locate and identify guarantees and other secondary liability Claims (collectively, "<u>Guarantees</u>") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other similar agreements. Where such Guarantees have been identified, they have been included in the relevant Schedules of the Debtor or Debtors affected by such Guarantees. Where a Guarantee exists, co-obligors are listed on a Debtor's Schedule H to the extent the Debtor is either the primary obligor or the guarantor of the relevant obligation. To the extent that a Debtor is a guarantor, such Guarantees are also listed on its Schedule D or E/F, as appropriate, and listed as "contingent" and "unliquidated" unless otherwise specified. Further, it is possible that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted. Thus, the Debtors reserve their rights to amend the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to recharacterize, reclassify, add, or remove any such contract or Claim.

**15.  <u>Duplication.</u>** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

**15. <u>Confidentiality</u>**: There are instances within the Schedules and Statements where names, addresses, or amounts have been left blank. Due to the nature of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtors may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

**16. <u>First Day Orders</u>**: The Court has authorized (each, a "<u>First Day Order</u>") the Debtors to pay, in whole or in part, various outstanding prepetition Claims, including but not limited to, payments relating to prepetition tenant reimbursements and utilities.  Given that certain of these Claims are anticipated to be paid in accordance with the First Day Orders, such Claims may not be listed in the Schedules, or may otherwise be listed as "unknown" or "to be determined." Accordingly, the scheduled Claims may not reflect those prepetition expenses that have been or will be paid in accordance with the First Day Orders and other orders of the Court.

**17. <u>Signatory</u>**. The Schedules and Statements have been signed by Elizabeth LaPuma, in her capacity as Independent Fiduciary.  In reviewing and signing the Schedules and Statements, she has necessarily relied upon the efforts, statements and representations of various of the Debtors' personnel and professionals.  She has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors and their addresses.

**18. <u>Limitation of Liability.</u>** The Debtors and their officers, employees, agents, attorneys, and financial advisors do not guarantee or warrant the accuracy, completeness, or correctness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused, in whole or in part, by the acts, errors, or omissions, whether negligent or otherwise, in

procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. The Debtors and their officers, employees, agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or, except to the extent required by applicable law or an order of the Court, to notify any third party should the information be updated, modified, revised, or re-categorized. In no event shall the Debtors or their officers, employees, agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential Claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused.

### SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' SCHEDULES

1.    **Schedule A/B Assets—Real and Personal Property**. Each Debtor's assets in Schedule A/B are listed at net book value as of the Petition Date, unless otherwise noted, and may not necessarily reflect the market or recoverable value of these assets as of the Petition Date.

o   The Debtors' balance sheet indicates that multiple operating accounts exist at each Debtor entity. Certain bank accounts that appear on the Debtors' financial statements are not listed in the Schedules as such bank accounts were inherited from the Debtors' previous ownership and the Debtors do not believe that any such bank account existed as of the Petition Date or currently exists. After the Petition Date, the Debtors opened several new bank accounts, which accounts are not listed on the Debtors' Schedules.

o   The Debtors' accounts receivable from tenants are collected in the ordinary course of business, and due to the nature of the books and records, IslandDundon is still in the process of classifying accounts receivable from tenants based on days outstanding. Therefore, IslandDundon has currently classified all account receivables from tenants as less than 90 days outstanding.

o   There also exist outstanding accounts receivable from when the Debtors were managed by the Former Principals of Crown Capital, for which there is no substantive detail. The Debtors do not believe any of these receivables are collectable and hence have all been classified as over 90 days outstanding.

o   Equity interests in all of the Debtors are reflected as undetermined.

o   All real personal property and improvements for each applicable Debtor is listed on an individualized basis and represents the NBV of the respective building and building improvement. It would be prohibitively expensive and unduly burdensome to obtain current market valuations of the Debtors' property interests that are not maintained or readily available.

    o   Rhodium Asset Management LLC booked intercompany accounts receivables between the Debtor entities for which no supporting documentation exists. These entries have been maintained, but the Debtors do not believe that any of these intercompany accounts receivables are collectable.

2. **Schedule D — Creditors Holding Secured Claims**.  Except as otherwise agreed pursuant to a stipulation, agreed order or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve their right to dispute or challenge the amount, validity, perfection, priority or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D.  Further, although the Debtors may have scheduled Claims of various creditors as secured Claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken. The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.  The descriptions provided in Schedule D are intended to be only a summary.

Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of liens.  Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Matthew Dundon, Principal of IslandDundon LLC, in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 44].

Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.  Except as specifically stated on Schedule D, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.  The Debtors reserve all of their rights to amend Schedule D to the extent that the Debtors determine that any Claims associated with such agreements should be reported on Schedule D.  Nothing herein shall be construed as an admission by the Debtors of the legal rights of any claimant or a waiver of the Debtors' rights to recharacterize or reclassify such Claim or contract.  Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

3. **Schedule E/F—Creditors with Priority Unsecured Claims**.  Pursuant to the *Interim Order Authorizing the Debtors to Continue Their Prepetition Business Operations, Policies, and Practices and Pay Related Claims in the Ordinary Course of Business on a Postpetition Basis* [Docket No. 136], the Debtors have been granted the authority to pay certain tax liabilities that accrued prepetition.  Accordingly, any priority unsecured Claim based upon prepetition tax accruals that have been paid pursuant to such order are not listed on Schedule E.  To the extent the Debtors have listed the Claims or potential Claims of various taxing authorities, such listing of a Claim on Schedule E does not constitute an admission by the Debtors that such Claim is entitled to priority under section 507 of the Bankruptcy Code. The Debtors reserve the right to dispute the priority status of any claim on any basis.

4. **Schedule E/F— Creditors with Nonpriority Unsecured Claims**.  The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made reasonable efforts to set forth their unsecured obligations, but the actual Claims and amounts against the Debtors may differ from the liabilities listed on Schedule E/F Part 2.  In certain instances, the date or dates on which a Claim listed on Schedule E/F, Part 2, arose, accrued, or was incurred are unknown to the Debtors or subject to dispute. Where the determination of the date on which a Claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such Claim. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claim.  In addition, certain Clams listed on Schedule F may be entitled to priority under 11 U.S.C. § 503(b)(9).

The Debtors have made best efforts to include all creditors on Schedule F; however, the Debtors believe there may be instances where vendors have yet to provide proper invoices for prepetition goods or services.  While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates.

5. **Schedule G—Executory Contracts**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively the "Agreements"), a review of such Agreements is ongoing and inadvertent errors, omissions or over-inclusion may have occurred. For example, Lynd Living is still gathering and reconciling contracts related to Debtor Kelly Hamilton Apts LLC. Pursuant to the *Order Authorizing the Assumption of Certain Amended and Restated Property Management Agreements and Asset Management Agreement* [Docket No. 171], the Court has approved the Debtors' assumption of certain executory contracts with Lynd Living, which contracts are included on the Debtors' Schedules. The Debtors may have entered into various Agreements in the ordinary course of their business, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements, which may not be set forth in Schedule G. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements.  Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed on Schedule G.

Any and all of the Debtors' rights, claims and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to: (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G; (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's Claim, including, but not limited to, the Agreements listed on Schedule G; and (iii) amend or supplement such Schedule as necessary.

## NOTES TO THE DEBTORS' STATEMENTS

1.    **Statement Part 1, Question 1: Revenue**.  Revenue is shown for the fiscal years ending 2023, 2024, and 2025 through the Petition Date.

2.    **Statement Part 2, Question 4(a): Payments to Insiders**.  The Debtors' listing of individuals as "insiders" is subject to the methodology and reservations of rights described in paragraph 5 hereof.  In the interest of disclosure, the Debtors have listed all payments during the applicable period to parties that may have qualified as an insider at any point during such period. On April 30, 2025, White & Case LLP, on behalf of Crown Capital Holdings LLC, paid certain expenses owed to the Independent Fiduciary.  The Debtors' records reflect multiple categories of payments made to Lynd Living and certain of its affiliated entities prior to the Petition Date for a range of operational and administrative functions undertaken in its capacity as property manager and real estate asset manager. These payments include: (i) payroll disbursements for on-site and shared services personnel employed or administered through Lynd Living-affiliated entities; (ii) management fees paid pursuant to pre-existing property management agreements; and (iii) reimbursements for accounts receivable related to third-party expenses Lynd Living initially paid on the Debtors' behalf. The reimbursed expenses include, but are not limited to, postage and mail handling, software licenses, marketing expenditures, and other general administrative overheads incurred during the normal course of operations.

3.    **Statement Part 6, Question 11: Payments Related to Bankruptcy.**  On April 23, 2025, the Debtors deposited with White & Case LLP, proposed counsel to the Debtors, a retainer of $141,680.00.  On April 30, 2025, White & Case LLP paid certain expenses of the Debtors in the amount of $60,000.00 from such retainer. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications.

4.    **Statement Part 3, Question 7: Legal Actions**. The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors.  The Debtors also reserve their right to assert that neither the Debtors nor any affiliates of the Debtors are an appropriate party to such actions or proceedings. The Debtors have made reasonable best efforts to identify all current pending litigation involving the Debtors; however, certain omissions may have occurred.  In the ordinary course of business, the Debtors file unlawful detainer or forcible entry and detainer actions, as necessary, against individual tenants.  The Debtors may have been involved in a number of such actions in the year preceding the Petition Date, but no such action has been listed on the Debtors' Statements.

5.    **Statement Part 7, Question 14: Previous Addresses.** Due to the consolidated nature of the Debtors' operations, the same address may be listed on the schedules of multiple Debtors.

6.    **Statement Part 13, Question 26(b): Firms or Individuals Who Have Audited, Compiled, or Reviewed Debtors' Books**.  The Debtors have not engaged any auditors within the two years preceding the Petition Date.  The most recent party involved in preparing the Debtors' financial information was the tax preparer responsible for the 2022 return.  While a

draft 2023 return was reportedly completed, it has not been released to the Debtors due to nonpayment. As of the date hereof, the Debtors have been unable to verify whether the 2023 return was finalized or filed with the appropriate reporting agencies. Other third parties may have audited, compiled, or reviewed the Debtors' books but are not included in the Debtors' responses to Statement Question 26(b).

**7.      Statement Part 13, Question 26(c): Firms or Individuals in Possession of Debtor's Books of Account and Records**. Lynd Living assumed primary responsibility for maintaining the books and records for the Debtor Borrowers under the NOLA DIP Facility[5] and Debtor Kelly Hamilton Apts LLC in 2025. This transition occurred after the Former Principals of Crown Capital became the subject of a federal investigation described at length earlier herein. Prior to this transition, the Debtors' book and records were exclusively managed by non-debtor affiliates owned and controlled by the Former Principals of Crown Capital, including Rhodium Asset Management LLC, whose Chief Financial Officer temporarily assisted Lynd Living during the early phases of the transition.  Lynd Living has continued to manage the Debtors' books and records through the Petition Date.  The current books and records in the Debtors' possession represent the extent of the information that it has for the Crown Capital Portfolio.  Other third parties besides those listed may possess a subset of the Debtors' books and records but are not included in the Debtors' responses to Statement Question 26c.

---

[5]    "Debtor Borrowers" and "NOLA DIP Facility" shall have the meaning ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 110].

**Fill in this information to identify the case:**

Debtor Name: In re : CBRM Realty Inc.

United States Bankruptcy Court for the:  District of New Jersey

Case number (if known): 25-15343 (MBK)

☑ Check if this is an amended filing

Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals                 12/15

## Part 1:   Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

    1a. **Real property:**

       Copy line 88 from *Schedule A/B* ..................................................................................................

       $ 0.00

    1b. **Total personal property:**

       Copy line 91A from *Schedule A/B* ................................................................................................

       $ 0.00

    1c. **Total of all property:**

       Copy line 92 from *Schedule A/B* ..................................................................................................

       $ 0.00

## Part 2:   Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)

    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D* ....................................

    $ 0.00 *

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**

       Copy the total claims from Part 1 from line 5a of *Schedule E/F* ..................................................

       $ 0.00

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**

       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ...................................

       + $ 222,520,452.6 *

4. **Total liabilities**

    Lines 2 + 3a + 3b ..................................................................................................................

    $ 222,520,452.6 *

\* Amended Herein: Updated

**Fill in this information to identify the case:**

Debtor Name: In re : CBRM Realty Inc.

United States Bankruptcy Court for the:  District of New Jersey

Case number (if known): 25-15343 (MBK)

☑ Check if this is an amended filing

## Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☑ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

**Column A**
Amount of claim
Do not deduct the value of collateral.

**Column B**
Value of collateral that supports this claim

**2.1 Creditor's name**

Describe debtor's property that is subject to a lien

$ _____    $ _____

Creditor's Name

**Creditor's mailing address**

Describe the lien

Notice Name

Street

**Is the creditor an insider or related party?**

☐ No

☐ Yes

City    State    ZIP Code

Country

**Is anyone else liable on this claim?**

☐ No

**Creditor's email address, if known**

☐ Yes. Fill out *Schedule H: Codebtors(Official Form 206H).*

**Date debt was incurred**

**As of the petition filing date, the claim is:**
Check all that apply.

**Last 4 digits of account number**

☐ Contingent

☐ Unliquidated

**Do multiple creditors have an interest in the same property?**

☐ Disputed

☐ No

☐ Yes. Have you already specified the relative priority?

    ☐ No. Specify each creditor, including this creditor, and its relative priority.

    ☐ Yes. The relative priority of creditors is specified on lines

**3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**

$ _____

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| NONE | Line | |
| Name | | |
| NONE | | |
| Notice Name | | |
| | | |
| Street | | |
| | | |
| | | |
| City                    State                    ZIP Code | | |
| | | |
| Country | | |

**Fill in this information to identify the case:**

Debtor Name: In re : CBRM Realty Inc.

United States Bankruptcy Court for the:  District of New Jersey

Case number (if known): 25-15343 (MBK)

☑ Check if this is an
amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**

☑ No. Go to Part 2.

☐ Yes. Go to Line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  | Total claim | Priority amount |
|---|---|---|
| 2.1 **Priority creditor's name and mailing address** | As of the petition filing date, the claim is: $ _____ | $ _____ |

*Check all that apply.*

Creditor Name

☐ Contingent

Creditor's Notice name

☐ Unliquidated

☐ Disputed

Address

**Basis for the claim:**

City          State          ZIP Code

Country

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**

☐ No

**Specify Code subsection of PRIORITY unsecured**

☐ Yes

**claim:** 11 U.S.C. § 507(a) ()

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | Amount of claim |
|---|---|

3.1 **Nonpriority creditor's name and mailing address**

As of the petition filing date, the claim is:    $              $222,520,452.60
*Check all that apply.*

See Amended Schedule E/F Part 2

Creditor Name

☐  Contingent

☐  Unliquidated

Creditor's Notice name

☐  Disputed

**Basis for the claim:**

Address

_____

City          State          ZIP Code

Country

**Date or dates debt was incurred**              **Is the claim subject to offset?**

☐  No

**Last 4 digits of account**                    ☐  Yes

**number**

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---|---|

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| Spano Investor LLC<br>Name | Line 3.1 of Amended Schedule E/F Part 2<br>☐ Not Listed.Explain | |
| One Riverfront Plaza<br>Street | | |
| Newark　　NJ　　07102<br>City　　State　　ZIP Code | | |
| Country | | |

**Part 4:**    **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | | | Total of claim amounts |
|---|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | $ | 0.00 |
| 5b. | **Total claims from Part 2** | 5b. **+** | $ | $222,520,452.60* |
| 5c. | **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | $222,520,452.60* |

     * Amended Herein: Updated

| Fill in this information to identify the case: |
|---|
| Debtor Name: In re : CBRM Realty Inc. |
| United States Bankruptcy Court for the:  District of New Jersey |
| Case number (if known): 25-15343 (MBK) |

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- [ ] *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- [ ] *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- [ ] *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- [ ] *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- [ ] *Schedule H: Codebtors* (Official Form 206H)
- [ ] *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- [x] Amended *Schedule*   Schedule D: Creditors Who Have Claims Secured by Property, Schedule E/F: Creditors Who Have Unsecured Claims, Summary of Assets and Liabilities for Non-Individuals
- [ ] *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- [ ] Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    07/01/2025
                MM / DD / YYYY

✖ / s / Elizabeth LaPuma
Signature of individual signing on behalf of debtor

Elizabeth LaPuma
Printed name

Independent Fiduciary
Position or relationship to debtor

In re: CBRM Realty Inc.

**Case No. 25-15343**

AMENDED Schedule E/F, Part 2
Creditors Who Have NONPRIORITY Unsecured Claims

| Line | Nonpriority Creditor's Name | Creditor Notice Name | Address 1 | City | State | Zip | Date incurred | Account number (last 4 digits) | Basis for claim | Subject to offset (Y/N) | Contingent | Unliquidated | Disputed | Amount of claim | Amendment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3.1 | Acquiom Agency Services LLC | | 950 17TH St, Ste 1400 | Denver | CO | 80202-2831 | 9/5/2024 | | Judgment Lien | N | X | X | X | $21,020,452.60 | Amended Herein: Added |
| 3.2 | Adams Bank & Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $2,000,000.00 | |
| 3.3 | Adams Bank & Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $3,000,000.00 | |
| 3.4 | Adams Bank & Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $7,000,000.00 | |
| 3.5 | AmeriServ Financial Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,000,000.00 | |
| 3.6 | Andrew D. Baker | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $100,000.00 | |
| 3.7 | Bar Harbor Bank and Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.8 | Bar Harbor Bank and Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $8,000,000.00 | |
| 3.9 | Catholic Holy Family Society | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $500,000.00 | |
| 3.10 | Cattaraugus County Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.11 | Cattaraugus County Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $500,000.00 | |
| 3.12 | CFBank NA | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $4,000,000.00 | |
| 3.13 | CFBank NA | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $3,000,000.00 | |
| 3.14 | Cincinnati Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $5,000,000.00 | |
| 3.15 | Cincinnati Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $4,000,000.00 | |
| 3.16 | Cincinnati Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $11,000,000.00 | |
| 3.17 | Cincinnati Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $2,000,000.00 | |
| 3.18 | Cincinnati Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $3,000,000.00 | |
| 3.19 | Cincinnati Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $4,000,000.00 | |
| 3.20 | Citizens State Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.21 | Citizens State Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,500,000.00 | |
| 3.22 | Concert Group Holding Inc. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $200,000.00 | |
| 3.23 | Concert Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $200,000.00 | |
| 3.24 | Concert Specialty Insurance Company | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $200,000.00 | |
| 3.25 | Customers Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $20,000,000.00 | |
| 3.26 | Customers Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $4,000,000.00 | |
| 3.27 | Customers Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $17,500,000.00 | |
| 3.28 | Edward S. Stein | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $300,000.00 | |
| 3.29 | Evergreen National Indemnity Company | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $300,000.00 | |
| 3.30 | Federated Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $3,000,000.00 | |
| 3.31 | Federated Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $4,000,000.00 | |
| 3.32 | Federated Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $7,000,000.00 | |
| 3.33 | Federated Mutual Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $5,000,000.00 | |
| 3.34 | Federated Mutual Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $4,000,000.00 | |
| 3.35 | Federated Mutual Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $7,000,000.00 | |
| 3.36 | Federated Reserve Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $500,000.00 | |
| 3.37 | Federated Service Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.38 | First Catholic Slovak Union | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $2,000,000.00 | |
| 3.39 | First Dakota National Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.40 | First Dakota National Bank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $2,000,000.00 | |
| 3.41 | First Missouri Bancshares Inc. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $500,000.00 | |
| 3.42 | Gramercy Risk Management, LLC | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $100,000.00 | |
| 3.43 | Granite Re Inc. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $500,000.00 | |
| 3.44 | Great American Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $2,500,000.00 | |
| 3.45 | Gulf Coast Bank & Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $2,000,000.00 | |
| 3.46 | Hood Family Trust | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $100,000.00 | |
| 3.47 | Jacques de Saint Phalle | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.48 | John Beckelman | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.49 | LL Mortgage Fund LP | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $2,000,000.00 | |
| 3.50 | LL Mortgage Fund LP | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $2,800,000.00 | |
| 3.51 | Luso-American Financial | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $500,000.00 | |
| 3.52 | National Security Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $500,000.00 | |
| 3.53 | National Slovak Society of the USA | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $5,000,000.00 | |
| 3.54 | NexBank | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $5,000,000.00 | |
| 3.55 | Norcal Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $800,000.00 | |
| 3.56 | Norcal Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $1,000,000.00 | |
| 3.57 | Norcal Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,300,000.00 | |
| 3.58 | Polish Roman Catholic Union of America | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,000,000.00 | |
| 3.59 | ProAssurance Indemnity Company Inc. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $800,000.00 | |
| 3.60 | Royal Bridge Master Fund LP | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $300,000.00 | |
| 3.61 | Sagicor Reinsurance Bermuda | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 8% Notes due 2025 | N | X | | | $1,500,000.00 | |

In re: CBRM Realty Inc.

Case No. 25-15343

AMENDED Schedule E/F, Part 2

Creditors Who Have NONPRIORITY Unsecured Claims

| Line | Nonpriority Creditor's Name | Creditor Notice Name | Address 1 | City | State | Zip | Date incurred | Account number (last 4 digits) | Basis for claim | Subject to offset (Y/N) | Contingent | Unliquidated | Disputed | Amount of claim | Amendment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3.62 | Sagicor Reinsurance Bermuda | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $14,000,000.00 | |
| 3.63 | SPJST | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,000,000.00 | |
| 3.64 | Stillwater Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $1,500,000.00 | |
| 3.65 | Stillwater Property and Casualty Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $500,000.00 | |
| 3.66 | Strada Philanthropy, Inc. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,500,000.00 | |
| 3.67 | The Ohio State Life Insurance Co. | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $2,000,000.00 | |
| 3.68 | Thompson Bond Fund | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 12/28/2022 | | 12.5% Notes due 2025 | N | X | | | $7,000,000.00 | |
| 3.69 | Ukrainian National Association | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,000,000.00 | |
| 3.70 | Western Catholic Union | James H. Millar | 1177 Avenue of the Americas, 41st Fl | New York | NY | 10035 | 6/1/2022 | | 6.75% Notes due 2027 | N | X | | | $1,000,000.00 | |
| | | | | | | | | | | | | | TOTAL: | $222,520,452.60 | |