# EXHIBIT 1

| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1** |
| **WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: gregory.pesce@whitecase.com<br><br>-and-<br><br>Andrew Zatz<br>Samuel P. Hershey (admitted *pro hac vice*)<br>Barrett Lingle (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email:  azatz@whitecase.com<br>           sam.hershey@whitecase.com<br>           barrett.lingle@whitecase.com<br><br>*Counsel to Debtors and Debtors-in-Possession*<br><br>**KEN ROSEN ADVISORS PC**<br>Kenneth A. Rosen<br>80 Central Park West<br>New York, New York 10023<br>Telephone: (973) 493-4955<br>Email: ken@kenrosenadvisors.com<br><br>*Co-Counsel to Debtors and Debtors-in-Possession* |

| | |
|---|---|
| In re:<br><br>CBRM REALTY INC., *et al*.<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 25-15343 (MBK)<br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

# DEBTORS' MOTION FOR ENTRY
# OF AN ORDER AUTHORIZING EMPLOYMENT AND PAYMENT OF
# PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (the "**Debtors**") respectfully state as follows in support of this motion:

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), authorizing the Debtors (i) to retain both the Initial Ordinary Course Professionals and Additional Ordinary Course Professionals (each as defined below and, together, the "**Ordinary Course Professionals**") without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional, and (ii) to pay each Ordinary Course Professional for postpetition services rendered and expenses incurred, including, if necessary, advancing any reasonable postpetition retainer to the Ordinary Course Professional, subject to certain limits set forth below, without the necessity of additional court approval.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court entering a final order.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The predicates for the relief requested herein are sections 105(a), 363(c), and 503(b) of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and rule 9013-1 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Rules**").

**Background**

5.  On May 19, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases are jointly administered pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

6.  Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to these chapter 11 filings is contained in the *Declaration of Matthew Dundon, Principal of IslandDundon LLC, in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [Docket No. 44].[2]

7.  Prior to the Petition Date, the Debtors employed the professionals identified on Exhibit 1 attached to the Order (the "**Initial Ordinary Course Professionals**"). The Initial Ordinary Course Professionals perform services, including legal and accounting matters, that are not intrinsically related to these chapter 11 cases. The Debtors require the services of the Initial Ordinary Course Professionals regardless of the pendency of these chapter 11 cases, and the services do not significantly impact the direction of the Debtors' reorganization. To the best of the Debtors' knowledge, the Initial Ordinary Course Professionals have no interest materially

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the First Day Declaration.

3

adverse to the Debtors and their estates.

8.  In contrast, individual retention applications will be required for any professionals that the Debtors seek to employ in connection with the administration of the chapter 11 cases or other special matters not appropriate for ordinary course treatment (the "**Chapter 11 Professionals**"). The Chapter 11 Professionals will be permitted to be compensated and reimbursed only in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the chapter 11 cases governing professional compensation and reimbursement for services rendered and expenses incurred.

## Proposed Retention and Payment Procedures

**A.    Proposed OCP Procedures**

9.  The Debtors propose the following procedures (the "**OCP Procedures**") in recognition of the importance of providing information regarding Ordinary Course Professionals to the Court and the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**").

10. The Debtors propose they be permitted to continue to employ and retain the Initial Ordinary Course Professionals. Within thirty (30) calendar days of the later of (i) the entry of an order granting the relief requested in this motion and (ii) the date on which each retained Initial Ordinary Course Professional commences services for the Debtors, each Initial Ordinary Course Professional will be required to provide to the Debtors and their counsel a declaration, substantially in the form attached to the Order as Exhibit 2, certifying, among other things, that the Initial Ordinary Course Professional does not represent or hold any interest adverse to the Debtors or their estates with respect to the matter(s) on which such professional is to be employed (each, an "**OCP Declaration**"), and a completed retention questionnaire substantially in the form

4

attached to the Order as <u>Exhibit 3</u> (the "**Retention Questionnaire**") for filing with the Court. Upon receipt of an OCP Declaration and Retention Questionnaire, the Debtors will file the same with the Court and serve a copy on: (a) the Debtors, CBRM Realty Inc., c/o White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Elizabeth LaPuma (elapuma.crowncapital@gmail.com); (b) counsel to the Debtors, White & Case LLP, 111 South Wacker Drive, Chicago, IL 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and Barrett Lingle (barrett.lingle@whitecase.com); (c) co-counsel to the Debtors, Ken Rosen Advisors PC, 80 Central Park West, New York, NY 10023, Attn: Kenneth A. Rosen (ken@kenrosenadvisors.com); (d) the Office of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey Sponder (Jeffrey.M.Sponder@usdoj.gov) and Lauren Bielskie (Lauren.Bielskie@usdoj.gov); (e) counsel to the Kelly Hamilton DIP Lender, McCarter & English LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102, Attn: Joseph Lubertazzi (jlubertazzi@mccarter.com); (f) co-counsel to the Kelly Hamilton DIP Lender, Lippes Mathias, LLP, 54 State Street, Suite 1001, Albany, NY 12207, Attn: Leigh A. Hoffman (lhoffman@lippes.com); (g) counsel to the NOLA DIP Lender, ArentFox Schiff LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Brett D. Goodman (brett.goodman@afslaw.com); (h) Lynd Living, 4499 Pond Hill Road, San Antonio, TX 78231, Attn: Justin Utz (jutz@lynd.com); (i) counsel to the Ad Hoc Group of Holders of Crown Capital Notes, Faegre Drinker Biddle & Reath LLP, 600 Campus Drive, Florham Park, NJ 07932, Attn: Michael P. Pompeo (michael.pompeo@faegredrinker.com) and James H. Millar (james.millar@faegredrinker.com); (j) counsel to any statutory committee appointed in these chapter 11 cases; and (k) those parties that have filed a notice of appearance and request for service

5

of pleadings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**OCP Notice Parties**").

11. The OCP Notice Parties will have fourteen (14) days after the later of (i) the entry of the Order, or (ii) the service of an OCP Declaration and Retention Questionnaire (the "**Objection Deadline**") to object to the retention of an Initial Ordinary Course Professional. Any such objection must be filed with the Court and served upon the OCP Notice Parties and the subject Initial Ordinary Course Professional by the Objection Deadline. If any such objection cannot be resolved or withdrawn fourteen (14) days after service, the matter will be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the Initial Ordinary Course Professional, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, or if any objection submitted is timely withdrawn or resolved, the Debtors will be authorized to retain and employ the Initial Ordinary Course Professional as a final matter without further order of the Court, effective as of the (i) the Petition Date or (ii) the date of engagement.

12. The Debtors also request that they be authorized to employ and retain additional ordinary course professionals not currently listed as Initial Ordinary Course Professionals as future circumstances require (the "**Additional Ordinary Course Professionals**"), without the need to file individual retention applications or provide further hearing or notice to any party, by filing with the Court a supplement to <u>Exhibit 1</u> to the Order (the "**Supplement**") and serving copies of both the Supplement and the Retention Questionnaire upon the OCP Notice Parties.

13. The Debtors propose that, as with the Initial Ordinary Course Professionals, each Additional Ordinary Course Professional be required to provide to the Debtors and their counsel, for filing with the Court and for service upon the OCP Notice Parties, both an OCP Declaration

and a Retention Questionnaire, within thirty (30) days after the filing of the Supplement. The OCP Notice Parties will have fourteen (14) days after service of each required OCP Declaration to object to the retention of the Additional Ordinary Course Professional in question. Any objection would be handled as set forth in paragraph 11 above. If no objection is timely submitted, the objection is withdrawn, or the objection submitted is timely resolved, the Debtors would be authorized to retain the Additional Ordinary Course Professional as a final matter without further order, effective as of the date of filing the Supplement or the applicable date of engagement.

14. The Debtors will not pay any fees or expenses to any Ordinary Course Professional (nor shall any such Ordinary Course Professional draw down on any existing retainer) unless: (i) such Ordinary Course Professional has submitted its OCP Declaration to the Debtors and such OCP Declaration is filed with the Court and, along with the Retention Questionnaire, served on the OCP Notice Parties; (ii) the applicable Objection Deadline has expired; and (iii) no timely objection is pending. If a timely objection is received, no payment will be made until such objection is resolved, withdrawn, or otherwise overruled by the Court.

**B.     Proposed Payment Procedures**

15. After the Debtors retain an Ordinary Course Professional in accordance with the OCP Procedures, the Debtors may pay such Ordinary Course Professional 100% of the postpetition fees and expenses incurred upon submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and expenses actually incurred (without prejudice to the Debtors' right to dispute any such invoices); *provided*, *however*, that the Debtors may not pay fees to an Ordinary Course Professional in any amount in excess of the respective cap for such Ordinary Course Professional (as set forth under Exhibit 1 attached to the Order or in any Supplement) per month on average over any three (3) month period on a rolling

basis (the "**OCP Cap**").

16. The Debtors request the authority to change the OCP Cap applicable to any given Ordinary Course Professional upon seven (7) calendar days' notice to the OCP Notice Parties, subject to objection by the OCP Notice Parties.

17. The Debtors propose that payments to a particular Ordinary Course Professional would become subject to Court approval based upon an application for allowance of fees and expenses under sections 330 and 331 of the Bankruptcy Code, under the same procedures that are established for Chapter 11 Professionals, only if such payments exceed the OCP Cap; *provided, however*, that the applicable Ordinary Course Professional shall be entitled to interim payment of its requested fees and expenses up to the OCP Cap pending the Court's allowance of those requested fees and expenses in excess of the OCP Cap.

18. In the ordinary course of business, as a routine matter, the Debtors review all invoices received from the Ordinary Course Professionals to assess the reasonableness of the fees charged and the necessity of the expenses incurred. This type of review will continue postpetition and, coupled with the proposed OCP Cap, will protect the Debtors' estates against excessive and improper billings.

**C.    Periodic Payment Statements**

19. Within thirty (30) days after the end of, and with respect to, each full three-month period after the Petition Date (including any initial partial month in the first period), the Debtors shall file with the Court and serve on the OCP Notice Parties a statement that shall include the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; (b) the aggregate amounts paid as fees for services rendered and reimbursement of expenses incurred by the Ordinary Course Professional during the statement period; and (c) a

general description of the services rendered by such Ordinary Course Professional. The obligation to file summary statements will terminate upon confirmation of a plan in these chapter 11 cases.

**Basis for Relief**

20.   The Debtors seek the relief requested in this motion to avoid any later controversy about employing and paying the Ordinary Course Professionals during the pendency of these chapter 11 cases. The Debtors believe that their decision to employ the Ordinary Course Professionals is appropriate under section 363(c)(1) of the Bankruptcy Code because the employment and compensation of the Ordinary Course Professionals are matters that relate to the ordinary course of the Debtors' business. "The Code takes cognizance of the fact that if a debtor had to seek court approval to pay for every expense incurred during the normal course of its affairs, the debtor would be in court more than in business." *Bagus v. Clark* (*In re Buyer's Club Mkts.*), 5 F.3d 455, 457–58 (10th Cir. 1993).

A.   **The Debtors Employ the Ordinary Course Professionals in the Ordinary Course of the Debtors' Business.**

21.   Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors, as debtors in possession, are authorized to operate their businesses. 11 U.S.C. §§ 1107(a), 1108. Section 363(c)(1) further defines the scope of a debtor's authority and provides that, unless the court orders otherwise, a debtor in possession may enter into transactions, including the use, sale, or lease of estate property in the ordinary course of business without notice and a hearing. 11 U.S.C. § 363(c)(1). "The framework of section 363 is designed to allow a trustee (or debtor in possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). "Neither the Bankruptcy Code nor its legislative history provide a framework for analyzing

9

whether particular transactions are in the ordinary course of a debtor's business for the purposes of section 363." *Id.*

22. To determine whether a transaction falls in the ordinary course of business, many courts have adopted a two-step inquiry: the "vertical dimension" or "creditor's expectation" test, and the "horizontal dimension" or "industry-wide" test. *See id.* (citations omitted); *see also N.J. Mobile Dental Prac., P.A. v. Cont'l Assocs. Ltd.* (*In re N.J. Mobile Dental Prac., P.A.*), No. 05-17772 (DHS), Adv. No. 07-1988 (DHS), 2008 Bankr. LEXIS 1184 at *14 (Bankr. D.N.J. Apr. 7, 2008) (explaining that "the Third Circuit adopted a two-step approach consisting of a horizontal and a vertical dimension").

23. Under the vertical dimension test, courts "analyze[] the transactions 'from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.'" *In re Roth Am.*, Inc., 975 F.2d at 953 (citations omitted). A debtor's "pre-petition business practices and conduct" are the primary focus of the vertical analysis. *Id.* Under the horizontal dimension test, courts analyze "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *Id.*

24. Application of the vertical and horizontal tests to the Debtors' employment and compensation of the Ordinary Course Professionals demonstrates that the Debtors' actions should be considered ordinary course transactions pursuant to section 363(c)(1) of the Bankruptcy Code. With regard to the vertical dimension test, the Debtors' employment and compensation of the Ordinary Course Professionals is consistent with the Debtors' prepetition business practices. The Debtors utilize the services of each of the Initial Ordinary Course Professionals in connection with the day-to-day operation of the Debtors' businesses. Further, the Debtors' creditors may

reasonably assume that the operation of the Debtors' businesses requires the assistance of various non-bankruptcy professionals in connection with legal, tax, accounting, regulatory, and other matters.

25. With regard to the horizontal dimension test, it is standard practice for companies in the residential real estate industry to utilize the services provided by the Ordinary Course Professionals in connection with day-to-day operations. Therefore, employment and compensation of the Ordinary Course Professionals satisfies both the horizontal and vertical tests and is consistent with section 363(c)(1) of the Bankruptcy Code.

**B.     The Ordinary Course Professionals are not Professional Persons Under Section 327 of the Bankruptcy Code.**

26. The Ordinary Course Professionals are not "professional persons" within the meaning of section 327(a) of the Bankruptcy Code and, therefore, should not be subject to its requirements. Under section 327(a), a debtor "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, *or other professional persons* . . . to represent or assist the [debtor] *in carrying out the [debtor's] duties under this title*." 11 U.S.C. § 327(a) (emphasis added).

27. "[N]ot all individuals normally considered as professionals are deemed professionals for purposes of section 327." *U.S. ex rel. Kraft v. Aetna Cas. & Sur. Co.*, 43 B.R. 119, 121 (M.D. Tenn. 1984); *see also*, *e.g.*, *In re Napoleon*, 233 B.R. 910, 913 (Bankr. D.N.J. 1999) (explaining that "it is not enough that the party be a professional by education or training" but that "he or she must also play an integral role in the administration of the bankruptcy case" to be considered a "professional person" under section 327(a)). Section 327(a) only requires the court's approval of a professional "to represent or assist the trustee in carrying out the trustee's duties under this title." Therefore, courts have required that the professional person's employment

11

must specifically relate to the administration of the bankruptcy case, as opposed to the ordinary course operation of the debtor's business. *See*, *e.g.*, *In re Napoleon*, 233 B.R. at 913.

28. Furthermore, the professional person's employment must be "central" to the administration of the estate, and section 327(a) should only apply if the professional will play an intimate role in the reorganization of the debtor's estate. *In re Napoleon*, 233 B.R. at 913; *see also*, *e.g.*, *In re Livore*, 473 B.R. 864, 870 (Bankr. D.N.J. 2012) (holding that the employed party was not a professional person requiring retention under section 327(a) because he "did not play an integral role in the administration of the bankruptcy case"); *In re Zais Inves. Grade Ltd. VII*, No. 11-20243 (RTL), 2011 WL 4543215, at *2 (Bankr. D.N.J. Sept. 26, 2011) ("This court is of the opinion that court approval is not required for the Debtor to engage Cayman Islands counsel for such non-bankruptcy legal services and to compensate the professional in accordance with prior practices.").

29. If the debtor is not seeking to employ a professional because of a need that arose incident to the bankruptcy, section 327 of the Bankruptcy Code should not apply, regardless of whether the professional's services are important to the debtor's business. *See In re Livore*, 473 B.R. at 870 (holding that the employed party was not a professional person requiring retention under section 327(a) because he "did not play an integral role in the administration of the bankruptcy case"); *In re Zais Inves. Grade Ltd. VII*, 2011 WL 4543215, at *2 ("This court is of the opinion that court approval is not required for the [d]ebtor to engage Cayman Islands counsel for such non-bankruptcy legal services and to compensate the professional in accordance with prior practices."); *see also In re Johns–Manville Corp.*, 60 B.R. 612, 621 (Bankr. S.D.N.Y. 1986) (lobbyists retained to perform services in the ordinary course of debtor's business "performed a function completely external to the reorganization process" and therefore were not professional

12

persons requiring retention under section 327(a)); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (holding that maritime engineers employed in the course of Debtor's business would "play an important role in the mechanics of [Debtor's] operation," but were not professionals requiring retention under section 327(a) because their retention would not "affect the administration of [Debtor's] reorganization").

30. Although the Ordinary Course Professionals provide valuable services for the Debtors, their employment is not central to the reorganization of the Debtors' businesses. Furthermore, it could hinder the administration of the Debtors' estates if the Debtors were required to (a) submit to the Court an application, declaration, and proposed retention order for each Ordinary Course Professional, (b) wait until such order is approved before such Ordinary Course Professional continues to render services, and (c) withhold payment of the normal fees and expenses of the Ordinary Course Professionals until they comply with the compensation and reimbursement procedures applicable to Chapter 11 Professionals.

31. Under such conditions, there is a risk that some Ordinary Course Professionals would be unwilling to provide services, and that others would suspend services pending a specific court order authorizing the services. Since many of the matters for which the Ordinary Course Professionals provide services are active on a day-to-day basis, any delay or need to replace professionals could have adverse consequences on the Debtors' estates. For example, if the expertise and background knowledge of the Ordinary Course Professionals with respect to the particular matters for which they were responsible prior to the Petition Date were lost, the estates undoubtedly would incur additional and unnecessary expenses because the Debtors would have to retain other professionals without such background and expertise, at potentially higher rates. It is therefore in the best interest of the Debtors' estates to avoid any disruption to the professional

services required.

32. Moreover, the requested relief will allow the Debtors to avoid additional fees that such Ordinary Course Professionals would charge in connection with preparing and prosecuting numerous interim fee applications. Likewise, the procedures set forth above will relieve the Court, the U.S. Trustee, and other interested parties of the burden of reviewing a multitude of fee applications involving relatively small amounts of fees and expenses.

33. To the best of the Debtors' knowledge, none of the Initial Ordinary Course Professionals represents or holds any interest materially adverse to the Debtors or to their estates with respect to the matter in which the Debtors employ such Ordinary Course Professional(s). Although certain of the Initial Ordinary Course Professionals may hold unsecured claims against one or more of the Debtors, the Debtors do not believe that any of such claims constitute interests materially adverse to the Debtors, their estates, their creditors, or other parties in interest.

34. Courts in this district have consistently granted similar relief in other chapter 11 cases. *See e.g.*, *In re New Rite Aid, LLC*, No. 25-14861 (MBK) (Bankr. D.N.J. Jun. 9, 2025) (approving the retention of professionals utilized in the ordinary course of business) [Docket No. 770] (same); *In re Sam Ash Music Corp.*, No. 24-14727 (SLM) (Bankr. D.N.J. June 5, 2024) [Docket No. 199] (same); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. May 9, 2024) [Docket No. 466] (same); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 4, 2024) [Docket No. 300] (same); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Feb. 29, 2024) [Docket No. 329] (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023) [Docket No. 1138] (same).

C. **Retroactive Relief Is Appropriate.**

35. The Debtors request that the employment of the Ordinary Course Professionals be

14

approved retroactively to the Petition Date, or in the case of Additional Ordinary Course Professionals, retroactively to the date of the filing of the Supplement or the applicable date of the engagement. The Debtors filed this motion as a precautionary measure to avoid any later controversy about employing and paying the Ordinary Course Professionals during the pendency of these chapter 11 cases. Therefore, granting the relief requested in this motion retroactive to the Petition Date will not prejudice any party in interest. Furthermore, even if the Ordinary Course Professionals were subject to the requirements of section 327 of the Bankruptcy Code, the Court would have the authority to approve retroactive relief. *See, e.g.*, *In re Arkansas Co., Inc.*, 798 F.2d 645, 648 (3d Cir. 1986) (holding "that the bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power"). While the Arkansas case limits *nunc pro tunc* approval to cases involving extraordinary circumstances, courts have recognized that such "heightened showing" of extraordinary circumstances only applies "when there has been a months-long delay before seeking approval." *City of Rockford v. Mallinckrodt Plc* (*In re Mallinckrodt Plc*), No. 21-398-LPS, 2022 WL 906451, at *22 (Bankr. D. Del. March 28, 2022); *see also*, *e.g.*, *In re Sound Radio, Inc.*, 145 B.R. 193, 205 n.18 (Bankr. D.N.J. 1992) (explaining that another court "held that thirty days from the commencement of the case . . . is the outer limit" for obtaining court approval and after that, "the applicant must show a reasonable explanation for the delay") (citing *In re Martin*, 102 B.R. 653 (Bankr. W.D. Tenn. 1989)).

36. Based on the foregoing facts and circumstances, the Debtors submit that the employment and compensation of the Ordinary Course Professionals in the manner set forth above and in the proposed Order is supported by sound business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

### Waiver of Memorandum of Law

37. The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and this motion does not raise any novel issues of law.

### No Prior Request

38. No prior request for the relief sought in this motion has been made to this or any other court.

### Reservation of Rights

39. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion except as otherwise set forth in the motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

16

**<u>Notice</u>**

40. The Debtors will provide notice of this motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Kelly Hamilton DIP Lender; (c) the NOLA DIP Lender; (d) Lynd Living; (e) the Ad Hoc Group of Holders of Crown Capital Notes; (f) the United States Attorney's Office for the District of New Jersey; (g) the Internal Revenue Service; (h) the attorneys general in the states where the Debtors conduct their business operations; (i) the U.S. Department of Housing and Urban Development; (j) the U.S. Department of Justice; (k) the Ordinary Course Professionals; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested in this motion and such other and further relief as the Court deems appropriate under the circumstances.

Dated: July 8, 2025

Respectfully submitted,

/s/ *Andrew Zatz*

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

- and -

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
         sam.hershey@whitecase.com
         barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*


**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-Possession*