UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

-and-

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:   azatz@whitecase.com
         sam.hershey@whitecase.com
         barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and
Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CBRM Realty Inc., *et al.*, | Case No. 25–15343 (MBK) |
| Debtors.[1] | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), RH New Orleans Holdings MM LLC (1951), and Laguna Reserve Apts Investor LLC (N/A). The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) PURSUANT TO BANKRUPTCY RULE 1014(B) TRANSFERRING VENUE OF *IN RE MOSHE SILBER*, CASE NO. 25-22890-SHL (BANKR. S.D.N.Y.) TO THE DISTRICT OF NEW JERSEY AND (II) RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on September 19, 2025, Moshe Silber filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of New York (the "**New York Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that, in light of the foregoing, the Debtors have filed the attached *Debtors' Motion for Entry of an Order (I) Pursuant to Bankruptcy Rule 1014(b) Transferring Venue of* In re Moshe Silber, *Case No. 25-22890-SHL (Bankr. S.D.N.Y.) to the District of New Jersey and (II) Related Relief* (the "**Motion**"), seeking an immediate determination of the proper venue of Mr. Silber's chapter 7 case under Rule 1014 of the Federal Rules of Bankruptcy Procedure.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion, will be held on **October 7, 2025, at 11:00 a.m.** (prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "**Hearing**") before the Honorable Chief Judge Michael B. Kaplan, via Zoom:

Zoom Link: https://njb-uscourts.zoomgov.com/j/1605462580?pwd=VlJETVNtTk5QSW5GUnFud2FvR0FWQT09 ,
Meeting ID: 160 546 2580
Passcode: 962296

**PLEASE TAKE FURTHER NOTICE** that the Motion sets forth the relevant factual basis upon which the relief requested should be granted. A proposed Order granting the relief requested in the Motion, was attached as Exhibit A to the Motion.

**PLEASE TAKE FURTHER NOTICE** that objections or responses, if any, to the relief requested in the Motion shall: (a) be in writing; (b) state with particularity the basis of the

objection; and (c) be filed with the Clerk of the United States Bankruptcy Court electronically so as to be received prior to the commencement of the Hearing, by: (i) the undersigned counsel to the debtors and debtors-in-possession; (ii) the United States Trustee, One Newark Center, Suite 2100 Newark, New Jersey 07102, Attn: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov); (iii) and counsel to any Official Committee; and (iv) all parties requesting or entitled to notice in these cases.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered. Failure to file a timely objection may result in entry of an order granting the Motion as requested.

*[Remainder of page intentionally left blank]*

Dated: September 25, 2025

Respectfully submitted,

*/s/ Andrew Zatz*
**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

- and -

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
         sam.hershey@whitecase.com
         barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-Possession*

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

-and-

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:   azatz@whitecase.com
          sam.hershey@whitecase.com
          barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and
Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CBRM Realty Inc., *et al.*, | |
| Debtors.[1] | Case No. 25–15343 (MBK)<br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), RH New Orleans Holdings MM LLC (1951), and Laguna Reserve Apts Investor LLC (N/A).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) PURSUANT TO BANKRUPTCY RULE 1014(B) TRANSFERRING VENUE OF *IN RE MOSHE SILBER*, CASE NO. 25-22890-SHL (BANKR. S.D.N.Y.) TO THE DISTRICT OF NEW JERSEY AND (II) RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this motion (this "**Motion**") for entry of an order determining, pursuant to Rule 1014(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), that the bankruptcy case of Moshe Silber (the "**Silber Bankruptcy Case**") filed by Mr. Silber in the United States Bankruptcy Court for the Southern District of New York (the "**New York Bankruptcy Court**") should proceed in this court (the "**New Jersey Bankruptcy Court**"), where the Debtors' related bankruptcy proceedings (the "**CBRM Bankruptcy Cases**") are pending.  In support of this motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Moshe Silber created the Crown Capital Portfolio to hold multi-family housing projects and other similar properties. Mr. Silber failed to capitalize those properties appropriately, mismanaged them, and, based on the Debtors' investigation to date, extracted tens of millions (if not hundreds of millions of dollars) of value from those properties for his own benefit. The foregoing prevented the Debtors from finding any capital providers outside of chapter 11 process who were willing to invest in the portfolio. This necessitated the Debtors to file for these chapter 11 cases. Since filing, the Debtors have worked diligently to sell the Debtors' assets and obtain financing. A portion of the proceeds will go toward funding litigation against Mr. Silber for the benefit of the Debtors' estates and their creditors.  The Debtors were on the eve of commencing an adversary proceeding against Mr. Silber, when Mr. Silber filed for bankruptcy protections in the New York Bankruptcy Court.

2.      There is no basis to have these chapter 11 cases and Mr. Silber's bankruptcy case

proceed in separate venues and in front of different judges.   The interest of justice dictate that the Silber Bankruptcy Case be transferred to the New Jersey Bankruptcy Court because (i) the administration of Mr. Silber's estate is inextricably linked with the administration of the Debtors' estates and recoveries under the Plan, (ii) the disposition of Mr. Silber's assets and equity interests implicates the Debtors' estates and may affect the corporate structure of the Debtors, and (iii) this Court has overseen previous attempts by the Debtors to engage substantively with Mr. Silber on Rule 2004 examinations, understanding the relevant discovery at play in these cases.  Additionally, transfer is warranted because it would be convenient for all parties-in-interest if the Silber Bankruptcy Case was overseen by the New Jersey Bankruptcy Court, given the familiarity of this Court with the parties, assets, and complex legal issues present in both cases.

## **BACKGROUND**

### I.    **Mr. Silber is the Sole Equity Holder of CBRM Realty Inc.**

3.    As the Court well knows, the Debtors are part of a real estate portfolio (the "**Crown Capital Portfolio**") indirectly owned by ultimate parent company CBRM Realty Inc. ("**CBRM**"). The Crown Capital Portfolio was formed by Mr. Silber, a real estate investor who managed the Debtors, and certain affiliated parties to hold dozens of multifamily housing projects across the United States, with nearly 10,000 individual units.  Mr. Silber is the sole shareholder of CBRM, which is the ultimate equity holder of each Debtor entity. *See Voluntary Petition for CBRM Realty Inc.* [Dkt. No. 1]; *Declaration of Matthew Dundon, Principal of Islanddundon LLC, in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 44] (the "**Dundon Declaration**"), Ex A.  Mr. Silber himself does not dispute this.  *Motion of Party in Interest Moshe ("Mark") Silber for Appointment of an Equity Security Holders Committee or, in the Alternative, Appointment of Counsel* [Docket No. 348] ¶ 6 (the "**Silber Equity Motion**") ("I am the sole shareholder of CBRM, the top-level entity in the real estate portfolio I assembled and managed for

years.").

4.       As of May 19, 2025 (the "**Petition Date**"), the Crown Capital Portfolio faced

various challenges.  Units belonging to the Debtors' properties were in extremely poor condition

and needed significant upgrades and repairs. There were critical gaps in the properties'

administrative and record-keeping processes that posed significant risks to both operational

efficiency and financial accuracy. The property faced significant "bad debt" and numerous vacant

or unoccupied units.  *Declaration of Justin Utz in Support of Final Approval of the Disclosure

Statement and Confirmation of the Amended Joint Chapter 11 Plan of CBRM Realty Inc. and

Certain of its Debtor Affiliates* [Dkt. No. 472] (the "**Utz Declaration**") ¶ 10.

## II.       Mr. Silber Pleads Guilty to Fraud, Leading to His Resignation and the Appointment of Ms. LaPuma as the Independent Fiduciary

5.       Mr. Silber and a few of his co-investors were targets of an extensive investigation

by the federal government related to Williamsburg of Cincinnati, a property that Mr. Silber states

is within the Crown Capital Portfolio.  Silber Equity Motion ¶ 8**.**  On April 17, 2024, Mr. Silber

entered into a plea agreement with the Fraud Section of the Department of Justice and the United

States Attorney for the District of New Jersey in connection with a charge of conspiracy to commit

wire fraud affecting an institution, pursuant to 18 U.S.C. § 371. *See* Plea Agreement with Mark

Silber, *USA v. Silber*, No. 3:24-cr-00446 (D.N.J. Jul 09, 2024), Dkt. No. 6 at 7. Mr. Silber was

charged with using a related party to purchase a property at market value ($70,000,000) before

selling or flipping the property to a co-conspirator at an inflated price ($95,850,000).  *See*

Information, *USA v. Silber*, No. 3:24-cr-00446 (D.N.J. Jul 09, 2024), Dkt. No. 1 ¶¶ 10-12. The co-

conspirator would then finance the loan at the inflated price and keep the inflated loan proceeds

generated by the fraudulently obtained loan.  *See id.*  The activity of the conspiracy was alleged to

have occurred from 2018 to 2020.  *See id.* ¶ 8.

6.      Mr. Silber was sentenced to 30 months in prison and agreed to pay restitution. *See USA v. Silber*, No. 3:24-cr-00446 (D.N.J. Jul 09, 2024), Dkt. No. 56 at 2, 6. Mr. Silber was also subject to various state law charges, such as receiving stolen property, dealing in proceeds of illegal activity, conspiracy to commit theft by unlawful taking and making a public nuisance. *See Pennsylvania v. Silber*, CP-02-CR-0002361-2025 (Pa. Ct. Common Pleas Feb. 4, 2025).

7.      Mr. Silber was effectively disqualified from continuing to manage the Debtors following his guilty plea. Dundon Decl. ¶ 11. Pursuant to a forbearance agreement entered between Mr. Silber and certain noteholders on August 29, 2024 (the "**Forbearance Agreement**"), Mr. Silber was required to appoint an independent fiduciary acceptable to the noteholders as the sole director of CBRM and Crown Capital Holdings LLC ("**Crown**"), providing that individual with an irrevocable proxy for so long as the obligations under the forbearance agreement remained pending. *Id.* ¶¶ 11-12.

8.      On September 26, 2024, the Noteholders party to the Forbearance Agreement consented to the appointment of Elizabeth LaPuma as the Independent Fiduciary (the "**Independent Fiduciary**"). *Id.* ¶ 13. The Debtors and the Crown Capital Portfolio did not have sufficient capital and liquidity to manage the portfolio or pay interest payments to the Noteholders at that time. *Supplemental Declaration of Matthew Dundon, Principal of Islanddundon LLC, in Support of (I) Debtors' Objection to Motion of Party in Interest Moshe ("Mark") Silber for Appointment of an Equity Security Holders Committee or, in the Alternative, Appointment of Counsel and (II) Debtors' Limited Objection to Motion of Party in Interest Moshe ("Mark") Silber for Issuance of a Subpoena Duces Tecum Pursuant to Fed. R. Bankr. P. 2004(C) and 9016* [Dkt. No. 376] (the "**Dundon Supplemental Declaration**") ¶ 6.

9.      Many of the properties were in a state of disrepair and required substantial capital

5

to improve and maintain. *Id.* Many properties had low occupancy rates and accordingly weak or

negative cash flow even before costs of debt service. *Id.* ¶ 7. Units in such poor repair as to be

uninhabitable were common. *Id.* Enforcement action by or on behalf of defaulted-upon mortgagees

was occurring at many properties. *Id.*

10.     Soon after Ms. LaPuma's appointment, Mr. Silber began to unwind the existing

management structure for the Crown Capital Portfolio, including laying off many of his

employees. *Id.* ¶ 8. Mr. Silber's actions caused turnover issues, a lack of continuity in (or, in some

cases, a complete absence of) employees, and a lapse in company recordkeeping, thus undermining

the portfolio's ability to maintain its value. *Id.* For example, for certain entities, the Debtors'

advisors received organizational charts that were inaccurate or did not receive any organizational

charts at all. *Id.* This lapse in information made it difficult for the new advisors to manage the

Crown Capital Portfolio. *Id.*

11.     The portfolio's situation was exacerbated by the guilty pleas by Mr. Silber and his

co-conspirator, Mr. Schulman, which made obtaining financing for the Debtors and the Crown

Capital Portfolio nearly impossible. *Id.* ¶ 10. Mr. Silber himself admits this. Silber Equity Motion

¶ 13 ("My guilty plea precipitated a crisis for my real estate business by making CBRM, Crown,

and their dozens of subsidiaries unbankable while I remained in control of them."). As a general

matter, lenders and other financing parties do not want to provide capital or financing to

counterparties controlled by parties with felony convictions. Dundon Supplemental Decl. ¶ 9. Mr.

Silber is the sole equityholder of CBRM. Additionally, Mr. Silber, and in some instances, Mr.

Schulman, had direct or indirect equity interests in many of the entities of the Crown Capital

Portfolio. *Id.* As such, Mr. Silber's and Mr. Schulman's felony convictions and refusal to forfeit

their equity interests made it impossible for the Debtors and other entities within the Crown Capital

Portfolio to obtain prepetition financing. *Id.* Additionally, Mr. Silber and Mr. Schulman still retained control of multiple managing member entities within the Crown Capital Portfolio and did not give that control of such entities to the Independent Fiduciary. *Id.* This retention of control by Mr. Silber and Mr. Schulman caused serious issues with obtaining financing from lenders and funding from the Department of Housing and Urban Development, with respect to certain properties within the Crown Capital Portfolio. *Id.*

### III.     The Debtors File for Chapter 11 Protection

12.     On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered [Bankr. Dkt. No. 51].   These filings were necessitated by severe operational, financial, and governance challenges stemming from mismanagement of the broader Crown Capital Portfolio and the criminal conviction of its ultimate equity owner, Mr. Silber.  *See Declaration of Matthew Dundon, Principal of Islanddundon LLC, in Support of Final Approval of the Disclosure Statement and Confirmation of the Amended Joint Chapter 11 Plan of CBRM Realty Inc. and Certain of its Debtor Affiliates* [Dkt. No. 471] (the "**Dundon Confirmation Declaration**") ¶ 8.   These issues precipitated liquidity constraints, declining property performance, and increasing creditor enforcement actions across the portfolio. *See id.*

### IV.     Mr. Silber Selectively Participates in the CBRM Bankruptcy Cases but Resists the Debtors' Rule 2004 Examinations

13.     Mr. Silber has selectively participated in the CBRM Bankruptcy Cases.  When Mr. Silber wanted to increase his own recoveries as an equity holder of the Debtors, Mr. Silber submitted *pro se* motions.  However, when the Debtors sought Rule 2004 examinations of Mr. Silber related to the Debtors' governance, the location of the Debtors' assets, and the location of

Mr. Silber's assets, he resisted and ignored these court-ordered discovery efforts.

14.     On July 18, 2025, Mr. Silber filed the *Motion of Party in Interest Moshe ("Mark")*

*Silber for Issuance of a Subpoena Duces Tecum Pursuant to Fed. R. Bankr. P. 2004(c) and 9016*

[Docket No. 298] (the "**Silber 2004 Motion**"). The Debtors, while objecting to Mr. Silber's

inability to establish "cause" for such discovery and to the overbroad scope and relevance of Mr.

Silber's requests, offered in good faith to produce a subset of financial documents to Mr. Silber.

*See Debtors' Limited Objection to Motion of Party in Interest Moshe ("Mark") Silber for Issuance*

*of a Subpoena Duces Tecum Pursuant to Fed. R. Bankr. P. 2004(c) and 9016* [Dkt. No. 375]. The

Court accepted the Debtors' good faith proposal and allowed the Debtors to make a document

production consistent with such proposal. *See Order Granting in Part and Denying in Part Motion*

*of Moshe Silber for Authority to Issue Subpoena Pursuant to Federal Rules of Bankruptcy 2004*

*and 9016* [Dkt. No. 495] (the "**Silber 2004 Order**"). The Court denied the Silber 2004 Motion in

all other respects, explaining that "[t]he Court finds that [Mr. Silber] has not established good

cause for the sweeping discovery requested . . . and the vague allegations of mismanagement do

not justify an expansive fishing expedition, particularly where Movant's own misconduct

contributed to the Debtors' distress." Silber 2004 Order at 4.

15.     On July 25, 2025, Mr. Silber filed the Silber Equity Motion seeking appointment

of an equity committee in these chapter 11 cases or, in the alternative, the appointment of counsel

for Mr. Silber pursuant to 28 U.S.C. § 1915(e)(1). Mr. Silber pleaded that it was "not too late for

[him] to make a valuable contribution to this case that . . . assists creditors in securing a full

recovery[.]" Silber Equity Motion ¶ 5. Mr. Silber's motion was objected to by both the Debtors

and the U.S. Trustee. *See Debtors' Objection to Motion of Party in Interest Moshe ("Mark")*

*Silber for Appointment of an Equity Security Holders Committee or, in the Alternative,*

*Appointment of Counsel* [Dkt. No. 374]; *United States Trustee's Objection to Motion of Party in Interest Moshe ("Mark") Silber for Appointment of an Equity Security Holders Committee or, in the Alternative, Appointment of Counsel* [Dkt. No. 377].  The Court denied the Silber Equity Motion.  *See Order Denying Motion for the Appointment of an Equity Security Holders Committee or, in the Alternative, Appointment of Counsel* [Dkt. No. 496] (the "**Silber Equity Order**").  The Court explained that "[r]equiring the estates to fund [Mr. Silber's] litigation would be inappropriate, especially where his own misconduct contributed substantially to these proceedings."  Silber Equity Order at 4.

16.     Mr. Silber has filed various proofs of claim in the CBRM Bankruptcy Cases.  The Debtors moved to disallow Mr. Silber's claims in their entirety [Dkt. No. 372] and the Court sustained the objection, disallowing and expunging the claims in their entirety. *Order Sustaining the Debtors' Objection to Proof of Claim Nos. 216, 229, and 230 of Moshe Mark Silber* [Dkt. No. 556] ¶ 2.

17.     Despite Mr. Silber's activity in the CBRM Bankruptcy Cases, he has failed to respond substantively to the Debtors' Rule 2004 Examinations. On July 29, 2025, the Debtors served a Rule 2004 subpoena on Mr. Silber, seeking discovery in the form of document requests regarding, among other things, the location of assets, information regarding mortgages, and transfers between Mr. Silber and CBRM and its subsidiaries. See Dkt. No. 337-1 (the "**Initial Requests**").  Mr. Silber did not produce documents in response to this subpoena.

18.     Subsequently, the Debtors sought an order to conduct a Rule 2004 examination of Mr. Silber in person at the place of his incarceration.  The Court authorized a Rule 2004 examination, and Mr. Silber was deposed on September 2, 2025. *Order Granting Debtors' Motion for Entry of an Order (I) Granting Leave for the Debtors to Conduct Rule 2004 Examination or,*

*in the Alternative, for Leave Pursuant to Federal Rule of Civil Procedure 30(A)(2)(B), to Depose*

*Moshe "Mark" Silber, (II) Approving Related Procedures, and (III) Granting Related Relief* [Dkt.

No. 415] (the "**Rule 2004 Order**").  However, at the Deposition, Mr. Silber asserted his Fifth

Amendment right against self-incrimination and refused to answer all substantive questions—even

basic questions concerning the organizational structure of the Debtors.

## V.    The Plan Preserves Causes of Action Against Mr. Silber

19.    On September 4, 2025, the Court approved the Plan for Debtors CBRM Realty Inc.,

Kelly Hamilton Apts LLC, and Kelly Hamilton Apts MM LLC.[2]  *See Order (I) Approving the*

*Disclosure Statement, (II) Confirming the Amended Joint Chapter 11 Plan of CBRM Realty Inc.*

*and Certain of its Debtor Affiliates (With Technical Modifications), and (III) Granting Related*

*Relief* [Dkt. No. 525] (as amended or supplemented from time to time, the "**Plan**").  The Plan does

not release Mr. Silber; his conspirators, indicted, convicted or otherwise; any of his family; or any

of their respective transferees.  Plan Art. I.A.57 (defining "Excluded Party" to include "Moshe

(Mark) Silber" and various associates and noting that "[n]otwithstanding anything to the contrary

in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any

capacity hereunder").  To the contrary, the Plan carefully preserves the Estates' Causes of Action

(as defined in the Plan) against such non-releasees, establishes the Creditor Recovery Trust (as

defined in the Plan) to, among other things, efficiently and effectively investigate and prosecute

preserved Causes of Action for investigation and prosecution.  Dundon Confirmation Decl. ¶ 42;

Plan Art IV.D (establishing Creditor Recovery Trust, which may pursue certain estate causes of

action).

---

[2] The proposed plan of reorganization of the remaining Debtors has been filed with the Court.

## VI.    Mr. Silber Files a Bankruptcy Petition in the New York Bankruptcy Court

20.    On September 19, 2025, Mr. Silber filed a chapter 7 bankruptcy petition in the New York Bankruptcy Court. *See In re Moshe Silber*, Case No. 25-22890-shl (Bankr. S.D.N.Y., filed Sept. 19, 2025).  Despite Mr. Silber's 2022 financial statement showing tens of millions in cash, millions in jewelry, cars, and an aircraft, and more than $1 billion in stated gross value, *see CBRM Realty Inc. v. Spano Investor LLC (In re CBRM Realty Inc.),* No. 25-01295-MBK, Dkt. No. 1-1 at 133, Mr. Silber's chapter 7 petition does not list any assets or liabilities, nor does it list interests in CBRM or the Crown Capital Portfolio.  *See In re Moshe Silber*, Case No. 25-22890-shl, Dkt. No. 1 (Bankr. S.D.N.Y., filed Sept. 19, 2025)

## JURISDICTION

21.    The New Jersey Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated as of September 18, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent to entry of a final order by the New Jersey Bankruptcy Court in connection with this motion to the extent it is later determined that the New Jersey Bankruptcy Court, absent the consent of the parties, cannot enter final orders of judgments in connection herewith consistent with Article III of the United States Constitution.

22.    Venue is proper in the New Jersey Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

23.    The statutory and legal predicates for the relief requested herein are 28 U.S.C. § 1408 and Bankruptcy Rule 1014(b).

## RELIEF REQUESTED

24.    By this motion, the Debtors seek entry of an order pursuant to Bankruptcy Rule 1014(b) determining that the Silber Bankruptcy Case should proceed in the District of New Jersey

Bankruptcy Court.

**BASIS FOR RELIEF**

25.     Pursuant to Bankruptcy Rule 1014(b), "[i]f petitions commencing cases . . . are filed in different districts by, regarding, or against . . . a debtor and an affiliate . . . [t]he court in the district where the first petition is filed may determine the district or districts in which the cases should proceed in the interest of justice or for the convenience of the parties."  Section 101(2)(A) of the Bankruptcy Code defines "affiliate" as a "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C. § 101(2)(A).  The definition of "entity" under the Code includes natural persons. *See* 11 U.S.C. § 101(15).

26.     Mr. Silber is an "affiliate" of the Debtors pursuant to 11 U.S.C. § 101(2)(A).  Mr. Silber owns, directly or indirectly, twenty percent or more of the Debtors.  *See* Dundon Decl., Ex A; *Voluntary Petition for CBRM Realty Inc.* [Dkt. No. 1] (Silber is the sole shareholder of CBRM, ultimate equity holder of each Debtor entity); *see also* Silber Equity Motion ¶ 6 ("I am the sole shareholder of CBRM[.]").

27.     "Rule 1014(b), tracking the language of [28 U.S.C. §] 1412, sets forth a flexible, dual-track test" for courts to determine the venue in which cases should proceed based on "(1) the interest of justice *or* (2) the convenience of the parties." *In re Caesars Entm't Op. Co.*, No. 15-11047 (KG), 2015 WL 495259, at *5 (Bankr. D. Del. Feb. 2, 2015) (emphasis in original).  Because this test is written in the disjunctive, transfer of venue if appropriate "*either* in the interest of justice *or* for the convenience of the parties, and . . . this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded." *Id.* (emphasis in original).  Under either prong, the overriding consideration is the efficient economic administration of the estate. *See id.* at *7 (holding that the "interest of justice" prong "contemplates a consideration of whether

transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness"); *In re Restaurant Acquisition I, LLC*, No. 15-12406 (KG), 2016 WL 855089, at *2 (Bankr. D. Del. Mar. 4, 2016) (holding that the most important factor in the "convenience of the parties" analysis is "the promotion of the economic and efficient administration of the estate").

28.     The most efficient way to administer any bankruptcy estate is to centralize all proceedings relating to the estate as opposed to holding disparate proceedings that may result in contradictory or ambiguous results regarding the same property or disputes.  Indeed, one of the primary policies underlying bankruptcy law is the centralization of disputes and claims over the debtor's property. *See, e.g.*, *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005); *see also In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999) ("[O]ne of the core purposes of bankruptcy . . . is to 'allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'" (quoting *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990)))*; In re Cuyahhoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (describing "the strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court").

I.      **Transfer of the Silber Bankruptcy Case to the New Jersey Bankruptcy Court Is in the Interest of Justice**

29.     "The 'interest of justice' component of Section 1412 is a broad and flexible standard which must be applied on a case-by-case basis.  It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *In re Caesars Entm't Op. Co.*, 2015 WL 495259, at *7 (citing *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012)).  Courts in and

outside of the Third Circuit have long held that the "existence of a related action in the transferor or transferee district is a strong factor in a transfer decision where judicial economy can be achieved . . ." *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1317 (E.D. Pa. 1982); *see also Del. Tr Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 520 (S.D.N.Y. 2015).

30.     *First,* the administration of Mr. Silber's estate is inextricably linked with the administration of the Debtors' estates and recoveries under the Plan.  The Creditor Recovery Trust, which is tasked by this Court to investigate and prosecute causes of action for the Debtors' estates, has a fiduciary duty to investigate causes of action against Mr. Silber on behalf of the Debtors' creditors.  Dundon Confirmation Decl. ¶ 42; Plan Art IV.D.  The Plan expressly reserved causes of action against Mr. Silber.  *See* Plan Art. I.A.57.[3]  Mr. Silber pled guilty to a criminal scheme involving a portfolio property and has been investigated for other alleged criminal activities such as receiving stolen property, dealing in proceeds of illegal activity and conspiracy to commit theft by unlawful taking.  *See USA v. Silber*, No. 3:24-cr-00446 (D.N.J. Jul 09, 2024)*; Pennsylvania v. Silber*, CP-02-CR-0002361-2025 (Pa. Ct. Common Pleas Feb. 4, 2025).  Additionally, as the sole shareholder of the CBRM, the ultimate equity holder of each Debtor entity who ran the company for many years, Mr. Silber's conduct relating to his management of the Debtors must be investigated for the benefit of creditor recoveries.  Therefore, given the importance of the Creditor Recover Trust's investigation of Mr. Silber and how the administration of Mr. Silber's estate invariably affects the CBRM Bankruptcy Cases and the Debtors' estates, for the sake of fairness

---

[3]     The New Jersey Bankruptcy Court retained jurisdiction under the Plan with respect to the causes of action related to the CBRM Bankruptcy Court. *See* Plan Art. XI ("the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to . . . . adjudicate, decide, or resolve any and all matters related to Causes of Action"); *id.* Art I.A.15 ("Causes of Action" defined to include "any . . . causes of action . .. of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, . . . whether arising before, on, or after the Petition Date" and for the avoidance of doubt to include "any avoidance actions arising under chapter 5 of the Bankruptcy Code or under any local, state, federal, or foreign statutes and common law, including fraudulent transfer laws").

and efficiency, the New Jersey Bankruptcy Court should preside over the Silber Bankruptcy Case.

31.     *Second*, since Mr. Silber was the sole shareholder of the CBRM, the ultimate equity holder of each Debtor entity and several in the Crown Capital Portfolio, the disposition of Mr. Silber's assets and equity interests implicates the Debtors' estates and may affect the corporate structure of the Debtors. *See In re Emerson Radio Corp.,* 173 B.R. 490, 494 (D.N.J. 1994) (finding in interest of justice to transfer case under FRBP 1014 when "FIL, the foreign debtor in the ancillary case, has been pivotal to Emerson's reorganization; indeed, prior to Emerson's filing date, FIL was the controlling shareholder of Emerson.").  This is critically important because, by Mr. Silber's own doing, Mr. Silber's actions caused significant turnover issues and a lapse in company recordkeeping.   Dundon Supplemental Decl. ¶ 8. For certain entities, the Debtors' advisors received inaccurate organizational charts or did not receive any organizational charts at all. *Id.*  The New Jersey Bankruptcy Court is familiar with the Debtors' corporate structure and governance throughout these cases and would be well-positioned to consider any issues in the Silber Bankruptcy Case that implicates corporate structure and governance in the CBRM Bankruptcy Cases.   This arrangement promotes efficiency rather than having the New York Bankruptcy Court try to understand the complicated corporate structure and governance details of Debtors.  Moreover, Mr. Silber has failed to disclose the existence of these equity interests in the Silber Bankruptcy Case.   The New Jersey Bankruptcy Court's familiarity with Mr. Silber's relationship with the Debtors is of the utmost importance here.

32.     *Third,* despite Mr. Silber's claim that he wants to help "assist[] creditors in securing a full recovery" (Silber Equity Motion ¶ 5), he has failed to engage substantively with the Debtors' Rule 2004 Examinations.  The aims of the Debtors' Rule 2004 discovery of Mr. Silber were crucial to the administration of the Debtors' estates: understanding the Debtors' organization, the

identification of further Debtor assets, transfers between Mr. Silber and the Debtors, and Mr. Silber's assets.  The Debtors' Initial Requests, served in July, have gone unanswered.  The Debtors then sought and received a Court order for an in-person Rule 2004 examination.  *See* Rule 2004 Order.  Mr. Silber refused to answer any substantive questions, stating that he would not answer any questions while not represented by counsel.  Mr. Silber is now represented by counsel and has subjected himself to the bankruptcy process, including a Rule 2004 examination.  The New Jersey Bankruptcy Court is familiar with the parties, their disputes regarding this discovery, and the relevance of such discovery.   Therefore, the New Jersey Bankruptcy Court can fairly and efficiently decide them.

33.     *Fourth,* Mr. Silber's chapter 7 petition does not list any assets or liabilities, *see Chapter 7 Petition of Moshe Silber*, No. 25-22890-shl, Dkt. No. 1. Mr. Silber's petition raises alarming concerns.  This is a stark contrast to his 2022 financial statement, which shows tens of millions in cash, millions in jewelry, cars and an aircraft, and more than 1 billion in stated gross value, *see CBRM Realty Inc. v. Spano Investor LLC (In re CBRM Realty Inc.),* No. 25-01295-MBK, Dkt. No. 1-1 at 133 (personal financial statement of Mark Silber). As affiliates, parties in interest and creditors of Mr. Silber, the Debtors deserve to investigate Mr. Silber's estate with a court that is familiar with these facts and circumstances.

34.     The New Jersey Bankruptcy Court is accordingly the most efficient court to oversee the Silber Bankruptcy Case.

## II.     It Would Be Convenient for the Parties if the Silber Bankruptcy Case Proceeded in New Jersey

35.     Transferring the Silber Bankruptcy Case to the New Jersey Bankruptcy Court is also warranted because it would be convenient for all parties-in-interest if it was overseen by the New Jersey Bankruptcy Court. In determining whether a venue transfer would serve the

convenience of the parties, courts generally examine six factors:

> 1. the proximity of creditors of every kind to the Court;
>
> 2. the proximity of the debtor to the Court;
>
> 3. the proximity of the witnesses necessary to the administration of the estate;
>
> 4. the location of the assets;
>
> 5. the economic administration of the estate; and
>
> 6. the necessity for ancillary administration if liquidation should result.

*In re Restaurants Acquisition I, LLC*, No. 15-12406 (KG), 2016 WL 855089, at *2 (Bankr. D. Del. Mar. 4, 2016) (collecting cases).

36.     Of the six factors, "the factor given the most weight is the promotion of the economic and efficient administration of the estate." *Id.* (quoting *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002). And, as detailed above, the economic and efficient administration of Mr. Silber's and the Debtors' estates heavily favors transfer to the New Jersey Bankruptcy Court.

37.     Courts have also noted that transfers to other courts would be convenient if the transferee court was "familiar with the general and specific disputes, and is currently overseeing a swiftly proceeding bankruptcy with which the present dispute is intertwined." *See e.g.*, *Del. Tr. Co.*, 534 B.R. at 521. As the New Jersey Bankruptcy Court is aware, the Debtors' cases are financially and legally complicated. The familiarity of the New Jersey Bankruptcy Court with the issues and parties involved cannot be overlooked and it would be highly inefficient and unfair to the Debtors and their constituents for Mr. Silber's case—which will present issues that are inextricably intertwined with the Debtors' cases—to proceed anywhere but New Jersey.

38.     With regard to the other convenience factors, the Debtors submit that those factors no more weigh in favor of New York than they do New Jersey.  The New York Bankruptcy Court

and New Jersey Bankruptcy Court are geographically close and therefore the proximity of the debtors, creditors, or witnesses to either court is similar.  As to the location of assets, Mr. Silber operated his business, CBRM Realty Inc., out of New Jersey.  CBRM Realty Inc., the parent company for many of Mr. Silber's ventures has its principal place of business in Somerset, New Jersey.  *Voluntary Petition for CBRM Realty Inc.* [Dkt. No. 1] at 1; *id.* at 7 (address of equity security holder Mark Silber listed as Somerset, NJ).[4]  Various other Debtors' and Mr. Silber's assets are located throughout the country.  Accordingly, the New Jersey Bankruptcy Court provides the most convenient forum for the Silber Bankruptcy Case.

## NOTICE

39.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustees in these chapter 11 cases and in the Silber Bankruptcy Case; (ii) those entities entitled to notice under Bankruptcy Rule 2002(a) in these chapter 11 cases and in the Silber Bankruptcy Case; (iii) all parties that, as of the filing of this Motion, have requested notice in these chapter 11 cases and in the Silber Bankruptcy Case pursuant to Bankruptcy Rule 2002; and (iv) Moshe Silber and his proposed counsel.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

40.     For the reasons set forth above, the New Jersey Bankruptcy Court is the proper forum for the Silber Bankruptcy Case because it will provide the best means to economically and efficiently administer the Debtors' and Mr. Silber's estates while also providing the most convenience for all parties in interest. Accordingly, the Debtors respectfully request that the New

---

[4]     "The inquiry about possible ancillary administration as a factor in a venue determination is only rarely afforded significant weight, and, when it is, the inquiry focuses on the location of a debtor's assets." *In re Genever Holdings LLC*, No. 20-12411 (JLG), 2022 WL 16703185, at *12 (Bankr. S.D.N.Y. Nov. 3, 2022) (citation omitted).

Jersey Bankruptcy Court determine that the Silber Bankruptcy Case should proceed under the New

Jersey Bankruptcy Court's guidance pursuant to Bankruptcy Rule 1014.

41.     WHEREFORE, the Debtors request entry of the proposed form of order attached

hereto as **<u>Exhibit A</u>**, granting the relief requested herein and such other and further relief as is just

and proper.

*[Remainder of page intentionally left blank]*

Dated: September 25, 2025

Respectfully submitted,

*/s/ Andrew Zatz*

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

- and -

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
        sam.hershey@whitecase.com
        barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-Possession*

## <u>EXHIBIT A</u>

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

In re:

CBRM Realty Inc., *et al.*,

Debtors.[1]

Chapter 11

Case No. 25– 15343 (MBK)
(Jointly Administered)

### ORDER DETERMINING THAT MOSHE SILBER'S BANKRUPTCY CASE SHOULD PROCEED IN THE DISTRICT OF NEW JERSEY

The relief set forth on the following page, numbered 2, is hereby **ORDERED**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), RH New Orleans Holdings MM LLC (1951), and Laguna Reserve Apts Investor LLC (N/A).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

(Page 2)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER DETERMINING THAT SILBER'S BANKRUPTCY CASE SHOULD PROCEED IN THE DISTRICT OF NEW JERSEY |

Upon consideration of the *Debtors' Motion for Entry of an Order (I) Pursuant to Bankruptcy Rule 1014(b) Transferring Venue of* In re Moshe Silber*, Case No. 25-22890-SHL (Bankr. S.D.N.Y.) to the District of New Jersey and (II) Related Relief* (the "**Motion**"),[1] and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated as of September 18, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      Pursuant to Bankruptcy Rule 1014(b), this Court determines that the District of New Jersey is the proper venue for the Silber Bankruptcy Case.

3.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

---

[1]      All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.