**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

In re:

CBRM REALTY INC., *et al.*

Debtors.[1]

Order Filed on October 23, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Chapter 11

Case No. 25-15343 (MBK)
(Jointly Administered)

REVISED
**ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE
MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND
CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through fifty-eight (58), is

**ORDERED**.

**DATED: October 23, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), RH New Orleans Holdings MM LLC (1951), and Laguna Reserve Apts Investor LLC (N/A).  The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

(Page 2):

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter

11 cases (the "**Chapter 11 Cases**") having:[2]

a. commenced the Chapter 11 Cases on May 19, 2025 (the "**Petition Date**")[3] by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**");

b. continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on August 17, 2025, (i) the *Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 389], (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 390],[4] and (iii) the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement for the NOLA Debtors, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 391];

d. filed, on August 1, 2025, the *Debtors' Motion for Entry of an Order (I) Approving (A) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof for the NOLA Properties, (B) Process for Selecting a Stalking Horse Bidder and Offering Bid Protections, and (C) Assumption and Assignment Procedures, and (II) Granting Related Relief* [Docket No. 350];

e. obtained, on August 15, 2025, entry of the *Order (I) Approving (A) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof for the NOLA Properties, (B) Process for Selecting a Stalking Horse Bidder and Offering*

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Modified Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates*, attached hereto as **Exhibit A**.

[3]   The Petition Date for Debtor Laguna Reserve Apts Investor LLC is August 17, 2025.

[4]   The Debtors subsequently filed solicitation versions of the Plan [Docket No. 501] and *Disclosure Statement for the Modified Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 503] (including all exhibits and supplements thereto and as may be amended, supplemented, or modified, the "**Disclosure Statement**") on September 3, 2025.

(Page 3)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

Bid Protections, and (C) Assumption and Assignment Procedures, and *(II) Granting Related Relief* [Docket No. 382] (the "**Bidding Procedures Order**");

f.   obtained, on September 5, 2025, entry of the *Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement for the NOLA Debtors, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 522] (the "**Disclosure Statement Order**"), (i) conditionally approving the Disclosure Statement, (ii) approving the following solicitation materials (collectively, the "**Solicitation Materials**"): the solicitation, voting, and tabulation procedures (the "**Solicitation and Voting Procedures**"), the solicitation packages (the "**Solicitation Packages**"), the Ballot, the combined hearing notice (the "**Combined Hearing Notice**"), the publication notice (the "**Publication Notice**"), the notice of non-voting status and disputed claims (the "**Notice of Non-Voting Status**"), and other related notices, (iii) setting deadlines in connection with confirmation, and (iv) scheduling a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan (the "**Combined Hearing**");

g.   caused the Solicitation Materials to be distributed beginning on or about September 12, 2025, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the District of New Jersey (the "**Local Rules**"), the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by, among other things, the *Certificate of Service* [Docket No. 598] (the "**Solicitation Affidavit**");

h.   caused the Publication Notice of the Combined Hearing to be published in *The New Orleans Advocate* on September 15, 2025, as evidenced by the *Affidavit of Publication* [Docket No. 576] (the "**Publication Affidavit**");

i.   filed the *Notice of Filing of Plan Supplement* [Docket No. 587] and the *Second Notice of Filing of Plan Supplement* [Docket No. 603] (together, as may be amended, supplemented, or modified, the "**Plan Supplement**");

j.   filed, on October 17, 2025, the *Declaration of Andres A. Estrada with Respect to the Solicitation and the Tabulation of Votes on the Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 617] (the "**Voting Report**");

k.   filed, on October 17, 2025, the declaration of Matthew Dundon, in support of the Plan and Disclosure Statement [Docket No. 619];

(Page 4)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

l.      filed, on October 18, 2025, the *Further Modified Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 622], a copy of which is attached hereto as **Exhibit A** (including all exhibits and supplements thereto and as may be amended, supplemented, or modified, the "**Plan**"); and

the Court having:

a.      entered the Disclosure Statement Order on September 5, 2025;

b.      set October 10, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "**Voting Deadline**");

c.      set October 10, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections to final approval of the Disclosure Statement and confirmation of the Plan (the "**Combined Objection Deadline**");

d.      set October 22, 2025, at 11:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing;

e.      reviewed the Plan, the Plan Supplement, the Solicitation Affidavit, the Publication Affidavit, the Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses, and comments regarding the Disclosure Statement and confirmation of the Plan, including all objections, statements, reservations of rights, and the Confirmation Stipulation filed by parties in interest on the docket of these Chapter 11 Cases;

f.      held the Combined Hearing on October 22, 2025;

g.      heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and confirmation of the Plan;

h.      considered all oral representations, live testimony, proffered testimony, exhibits, documents, filings and other evidence presented at the Combined Hearing; and

i.      made rulings on the record at the Combined Hearing.

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order (collectively, this "**Order**"):

(Page 5)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY FOUND, DETERMINED, ADJUDGED, DECREED, AND ORDERED THAT:**

### A.    Findings and Conclusions

1.    The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### B.    Jurisdiction and Venue

2.    Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively, and to enter a final order with respect thereto.

### C.    Commencement and Joint Administration of the Chapter 11 Cases

3.    On the Petition Date, the Debtors commenced the Chapter 11 Cases, and on June 30, 2025, the Court entered an order authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  *See* Docket No. 51.  The Debtors have

(Page 6)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases and no official committees have been appointed or designated.

**D.     Judicial Notice**

4.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Court, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

**E.     Objections**

5.      All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objections to final approval of the Disclosure Statement and confirmation of the Plan and such objections, if any, have been fully and fairly litigated or resolved.

**F.     Plan Supplement**

6.      On September 30, 2025 and October 8, 2025, the Debtors filed the Plan Supplement with the Court. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended in accordance with the Plan as of the date hereof) complies with the terms of the Plan. The Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. All documents included in the Plan Supplement are integral to, part of, and incorporated by

(Page 7)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

reference into the Plan. No other or further notice is or will be required with respect to the Plan Supplement.

**G.     Modifications to the Plan**

7.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan made after the entry of the Disclosure Statement Order, including those described or set forth in this Order, constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim or Interest under the Plan. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Materials served pursuant to the Disclosure Statement Order and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan is properly before this Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

**H.     Adequacy of the Disclosure Statement**

8.     The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.

(Page 8)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## I.      Disclosure Statement Order and Notice

9.      On September 5, 2025, the Court entered the Disclosure Statement Order.  As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the record in the Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Plan and Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the Plan Supplement, the settlement, release, exculpation, and injunction provisions contained in the Plan, the Combined Hearing, the Voting Deadline, the Combined Objection Deadline, and any other applicable bar dates described in the Disclosure Statement Order, in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3016, 3017, 3019, and 3020(b), the Local Rules, the Solicitation and Voting Procedures, and the Disclosure Statement Order.  No other or further notice is or shall be required.

## J.      Solicitation

10.      The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Solicitation and Voting Procedures, the Local Rules, and all other applicable rules, laws, and regulations.  Transmission and service of the Solicitation Packages by the Debtors was timely, adequate, and sufficient under the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or shall be required.

(Page 9)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

### K.    Service of Opt-In Form

11.    The Ballots and Notice of Non-Voting Status included a form for opting to grant the Third-Party Release (as defined below) (the "**Opt-In Form**") and instructions for opting to grant the Third-Party Release through the submission of the Opt-In Form to the Claims and Noticing Agent for recording by the Combined Objection Deadline.  The process described in the Disclosure Statement Order, the Solicitation and Voting Procedures, and the Solicitation Affidavit that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which to serve the Ballots and Notice of Non-Voting Status and to distribute the Opt-In Form was reasonably calculated to ensure that each of the Holders of Claims and Interests was informed of (i) its ability to opt to grant the Third-Party Release or (ii) that it would be consenting to grant the Third-Party Release by voting to accept the Plan.  Transmission and service of the Opt-In Forms was timely, adequate, and sufficient under the facts and circumstances of the Chapter 11 Cases. No other or further notice is or shall be required.

### L.    Voting Report

12.    The Voting Report was admitted into evidence during the Combined Hearing without objection.  The procedures used to tabulate Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

13.    As set forth in the Plan, Holders of Claims in Class 3, Class 4, Class 5, Class 6, and Class 7 (the "**Voting Classes**") were eligible to vote to accept or reject the Plan in accordance with the Solicitation and Voting Procedures.  As evidenced by the Voting Report, all Voting Classes

(Page 10)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

aside from Class 4 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**M.     Bankruptcy Rule 3016**

14.     The Plan and all modifications thereto are dated and identify the entities submitting them, satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Plan and Disclosure Statement with the Court, satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Plan and Disclosure Statement describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, satisfying Bankruptcy Rule 3016(c).

**N.     Burden of Proof**

15.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation.  Further, to the extent applicable, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.  Each witness who testified (by declaration, proffer, or otherwise) on behalf of the Debtors in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

16.     Based on the following findings of fact and conclusions of law, the Plan, all pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the

(Page 11)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

Combined Hearing, all requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code have been satisfied.

**1.     Section 1129(a)(1): Compliance with Applicable Provisions of the Bankruptcy Code**

17.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**a.     Sections 1122 and 1123(a)(1): Proper Classification**

18.     The Plan designates all Claims and Interests, other than the Claims of the type described in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code, into fourteen Classes. The Claims or Interests in each designated Class have the same or substantially similar rights as the other Claims or Interests in such Class. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**b.     Section 1123(a)(2): Specification of Unimpaired Classes**

19.     The Plan specifies that Class 1 Other Priority Claims, Class 2A Other Secured Claims, Class 2B Akiri Mortgage Loan Claims, and Class 2C CKD Penn Mortgage Claims are Unimpaired (the "**Presumed Accepting Classes**") within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

20.     Additionally, Article II of the Plan specifies that Allowed General Administrative Claims, Professional Compensation Claims, Priority Tax Claims, and NOLA DIP Claims will be

(Page 12)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

### c.    Section 1123(a)(3): Specification of Treatment of Impaired Classes

21.    The Plan specifies that Claims or Interests in the following Classes are Impaired within the meaning of section 1124, and specifies the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

| Class | Claims and Interests |
|---|---|
| 3 | CIF Mortgage Loan Claim |
| 4 | NOLA Go-Forward Trade Claims |
| 5 | Other NOLA Unsecured Claims |
| 6 | Crown Capital Unsecured Claims |
| 7 | RH New Orleans Unsecured Claims |
| 8 | Intercompany Claims |
| 9 | Intercompany Interests |
| 10 | Crown Capital Interests |
| 11 | RH New Orleans Interests |
| 12 | Section 510(b) Claims |

### d.    Section 1123(a)(4): No Disparate Treatment

22.    The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable

(Page 13)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

treatment on account of such Claim or Interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

### e. Section 1123(a)(5): Adequate Means for Plan Implementation

23.     The Plan, the various documents included in the Plan Supplement, and the terms of this Order provide adequate and proper means for the implementation of the Plan, including, among other things: (a) the satisfaction of Claims and Interests; (b) the sources of consideration for Distributions under the Plan; (c) the consummation of the NOLA Sale Transaction; (d) the appointment of the Wind-Down Officer to, among other things, (1) implement the Wind-Down as expeditiously as reasonably possible and administer the liquidation of the post-Effective Date Debtors and their Estates and of any assets held by the post-Effective Date Debtors and their Estates after consummation of the NOLA Sale Transaction, (2) resolve any Disputed Wind-Down Claims and undertake a good faith effort to reconcile and settle Disputed Wind-Down Claims, (3) make distributions on account of Allowed Wind-Down Claims in accordance with the Plan, (4) file appropriate tax returns, and (5) otherwise administer the Plan, in each case to the extent set forth in the Wind-Down Agreement; and (e) the appointment of the Creditor Recovery Trustee to, among other things, liquidate the NOLA Debtor Contributed Creditor Recovery Trust Assets, including the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action, in accordance with the Plan, this Order, and Creditor Recovery Trust Agreement. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(Page 14)
| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

### f.   Section 1123(a)(7): Directors, Officers, and Trustees

24.     The Creditor Recovery Trustee was appointed under the CBRM Plan and the identity of the Creditor Recovery Trustee is disclosed in the Plan Supplement.  The Creditor Recovery Trustee shall also serve as the Wind-Down Officer.  Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### g.   Sections 1123(a)(6) and 1123(a)(8): Inapplicable Provisions

25.     The Plan does not provide for the issuance of new equity interests and, therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable.  Additionally, none of the Debtors are individuals and, therefore, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

### h.   Section 1123(b): Discretionary Contents of the Plan

26.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b) of the Bankruptcy Code.

### 1.   Impairment/Unimpairment of Any Class of Claims or Interests

27.     In accordance with section 1123(b)(1) of the Bankruptcy Code, each Class of Claims and Interests is either Impaired or Unimpaired under the Plan.

### 2.   Assumption and Rejection of Executory Contracts and Unexpired Leases

28.     In accordance with section 1123(b)(2) of the Bankruptcy Code, the Plan provides that, on the Effective Date, except as otherwise provided therein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code effective as of

(Page 15)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

the Confirmation Date, unless such Executory Contract or Unexpired Lease is subject to a motion to reject, assume, or assume and assign pending as of the Effective Date.

29.    The Debtors' determinations regarding the rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases. Entry of this Order by the Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 3.  Compromise and Settlement

30.    To the extent provided by the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, certain provisions of the Plan shall constitute a good-faith compromise and settlement of certain Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

### 4.  Preservation of Estate Claims and Causes of Action

31.    In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides that (i) the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action shall vest in the Creditor Recovery Trust in accordance with the Creditor Recovery Trust Agreement, and (ii) the Wind-Down Retained Causes of Action shall vest in the post-Effective Date Debtors under the authority of the Wind-Down Officer.  The Plan and the Plan Supplement, including the Schedule of Retained Causes of Action, provide adequate disclosure with respect to the NOLA

(Page 16)
Debtors:           CBRM REALTY INC., *et al.*
Case No.           25-15343 (MBK)
Caption of Order:  ORDER   (I) APPROVING   THE   DISCLOSURE   STATEMENT,
                   (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF
                   CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR
                   AFFILIATES, AND (III) GRANTING RELATED RELIEF

Debtor Contributed Creditor Recovery Trust Causes of Action and the Wind-Down Retained

Causes of Action that the Creditor Recovery Trust and the post-Effective Date Debtors shall retain,

respectively.   The Plan and Plan Supplement, including the descriptions of the NOLA Debtor

Contributed Creditor Recovery Trust Causes of Action and the Wind-Down Retained Causes of

Action as contained in the Plan and the Schedule of Retained Estate Claims, are specific and

unequivocal with respect to Causes of Action to be preserved and retained by the Creditor

Recovery Trust and the post-Effective Date Debtors and comply with the standard set forth in

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988).   All parties in

interest received adequate notice with respect to such NOLA Debtor Contributed Creditor

Recovery Trust Causes of Action and Wind-Down Retained Causes of Action.   The provisions

regarding NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and Wind-Down

Retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their

respective Estates, and Holders of Claims and Interests.

### 5.  Debtor Release

32.     Article VIII.C of the Plan (the "**Debtor Release**") describes certain releases granted

by the Debtors and their Estates.   Such releases are a necessary and integral element of the Plan,

and are fair, reasonable, and in the best interests of the Debtors, their Estates, and Holders of

Claims and Interests.   The Debtor Release is: (a) in exchange for the good and valuable

consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the

Claims released by the Debtor Release; (c) given and made after due notice and opportunity for

hearing; (d) appropriately tailored under the facts and circumstances of the Chapter 11 Cases; and

(Page 17)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

(e) a bar to any of the Debtors and their Estates asserting any Cause of Action released by the Debtor Release against the Released Parties or their property. Accordingly, the Debtor Release is approved.

33. The Debtors have satisfied their burden with respect to the propriety of the Debtor Release. The Debtor Release appropriately offers protection to parties that provided consideration to the Debtors and that participated in the Debtors' restructuring process. The Released Parties made significant concessions and contributions to the Chapter 11 Cases, including by actively supporting the NOLA Sale Transaction, the Plan, and the Chapter 11 Cases. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.

### 6. Release by Holders of Claims and Interests

34. Article VIII.D of the Plan (the "**Third-Party Release**") describes certain releases granted by the Releasing Parties to the Released Parties, which include: (a) the Independent Fiduciary; (b) the NOLA Purchaser; (c) the Asset Manager; (d) the Property Manager; (e) the NOLA DIP Lenders; (f) the Ad Hoc Group of Holders of Crown Capital Notes and each of its members; (g) with respect to each of the foregoing entities in clauses (b) through (f), such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (h) with respect to the Debtors and the Debtors' non-Debtor subsidiaries, White & Case LLP as counsel, IslandDundon LLC as financial advisor, Ken Rosen Advisors PC as New Jersey counsel and co-counsel, and the Claims and Noticing Agent.

(Page 18)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

35.    The Releasing Parties were provided proper and sufficient notice of the Plan, the Third-Party Release, and the Combined Objection Deadline through the service of the Solicitation Materials and the publication of the Publication Notice in *The New Orleans Advocate* on September 15, 2025. No further notice is necessary. The Plan, the Ballots, the Notice of Non-Voting Status, and the Combined Hearing Notice each included the Third-Party Release provision in conspicuous, boldface type. The Ballots informed Holders of Claims in the Voting Classes that they would be a Releasing Party under the Plan and consenting to the Third-Party Release by (i) voting to accept the Plan or (ii) checking the opt-in election box on the Ballot to grant the Third-Party Release. Similarly, the Notice of Non-Voting Status informed Holders of Claims against or Interests in the Non-Voting Classes that they would be irrevocably granting the Third-Party Release by affirmatively opting to grant the Third-Party release by completing and returning the Opt-In Form to the Claims and Noticing Agent by the Voting Deadline. The Plan provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

36.    The Third-Party Release is: (a) consensual with respect to the Releasing Parties; (b) an essential provision of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Causes of Action released by the Third-Party Release; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and important to the overall objectives of the Plan to finally resolve certain Cause of Actions among or against certain parties in interest in the

(Page 19)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

Chapter 11 Cases; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties asserting any Cause of Action released by the Third-Party Release against any of the Released Parties or their property; and (i) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code. Accordingly, the Third-Party Release is approved.

### 7. Exculpation

37.     The exculpation set forth in Article VIII.E of the Plan (the "**Exculpation**") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, is essential to the Plan, and is appropriately limited in scope. The Exculpated Parties relied upon the Exculpation as a material inducement to engage in prepetition and postpetition negotiations with the Debtors that culminated in the Plan and the settlements and compromises therein that maximize value for the Debtors' Estates and their stakeholders. The record in the Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contains appropriate carve outs for actions determined to have constituted willful misconduct or gross negligence. Accordingly, the Exculpation is approved. The Debtors, their Estates, the Independent Fiduciary, and the Debtors' professionals including White & Case LLP, IslandDundon LLC, Ken Rosen Advisors PC, and Kurtzman Carson Consultants, LLC dba Verita Global have, and upon entry of this Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation of the Plan and Distributions pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable

(Page 20)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

at any time for the violation of any applicable law, rule or regulation governing solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

## 8. Injunction

38.    The injunction provisions set forth in Article VIII.F of the Plan (the "**Injunction**") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions.  The Injunction is appropriately tailored to achieve those purposes and is, therefore, approved.

## 9. Additional Plan Provisions

39.    The other discretionary provisions in the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, the treatment of Insurance Policies and the retention of Court jurisdiction.

## 2. Section 1129(a)(2): Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code

40.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.  The Debtors and their agents transmitted the Solicitation Materials and related documents and solicited and tabulated votes with respect to the Plan fairly, in good faith, and in compliance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including, but not limited to, sections 1125 and 1126(b) of the Bankruptcy Code.

(Page 21)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

### 3.  Section 1129(a)(3): Proposal of Plan in Good Faith

41.    The Plan is the product of the open, honest, and good faith process through which the Debtors have conducted their Chapter 11 Cases and reflects extensive, good faith, arm's length negotiations among the Debtors, the NOLA Purchaser, the Ad Hoc Group of Holders of Crown Capital Notes, and the Debtors' other key economic stakeholders.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims.  In addition to achieving a result consistent with the objectives of the Bankruptcy Code, the Plan allows the Debtors' economic stakeholders to realize the highest possible recoveries under the circumstances.  Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates.  Accordingly, the Plan is fair, reasonable, and consistent with sections 1122, 1123, and 1129 of the Bankruptcy Code.  Based on the foregoing, as well as the facts and record of the Chapter 11 Cases, including, but not limited to, the Combined Hearing, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

### 4.  Section 1129(a)(4): Court Approval of Certain Payments as Reasonable

42.    All payments made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been authorized by, approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(Page 22)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**5.      Section 1129(a)(5): Service of Certain Individuals**

43.      The Plan provides that, on the Effective Date, the Wind-Down Officer shall be appointed by the Debtors for the purpose of conducting the Wind-Down and shall succeed to such powers and privileges as would have been applicable to the Debtors' officers and directors. Additionally, the Plan provides that, on the Effective Date, the Creditor Recovery Trustee shall be appointed by the Debtors to govern the Creditor Recovery Trust.

44.      The Creditor Recovery Trustee was selected by the Debtors, in consultation with the Ad Hoc Group of Holders of Crown Capital Notes, the NOLA DIP Lenders, and Spano Investor LLC, in a manner consistent with the interests of Holders of Crown Capital Unsecured Claims and RH New Orleans Unsecured Claims and CBRM Unsecured Claims under the CBRM Plan and with public policy.  The Creditor Recovery Trustee was appointed under the CBRM Plan, and the Debtors disclosed the identity of the Creditor Recovery Trustee in the Plan Supplement.  The Plan provides that, unless otherwise disclosed in the Plan Supplement, the Creditor Recovery Trustee shall serve as the Wind-Down Officer.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**6.      Section 1129(a)(6): Rate Changes**

45.      The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, and, accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

(Page 23)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

### 7.    Section 1129(a)(7): Best Interests of Holders of Claims and Interests

46.    Each Holder of a Claim or Interest either (a) has voted to accept the Plan, (b) is Unimpaired and deemed to have accepted the Plan, or (c) shall receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code. In addition, the liquidation analysis attached as <u>Exhibit C</u> to the Disclosure Statement (the "**Liquidation Analysis**"), as well as the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Combined Hearing, (a) is reasonable, persuasive, credible, and accurate as of the date such analysis or evidence was proffered, adduced, and/or presented, (b) utilizes reasonable and appropriate methodologies and assumptions, (c) has not been controverted by other evidence, and (d) establishes that, with respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or Interest in such Class, unless otherwise agreed to by such Holder, shall receive under the Plan on account of such Allowed Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

47.    Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 8.    Section 1129(a)(8): Acceptance by Certain Classes

48.    The Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code. The Presumed Accepting Classes are Unimpaired under the Plan and are presumed to have

(Page 24)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Voting Classes are Impaired under the Plan and have all voted to accept the Plan except for Class 4. Claims in Classes 8-12 are Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "**Deemed Rejecting Classes**"). Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes and Class 4, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and Class 4 and, thus, satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

**9.     Section 1129(a)(9): Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

49.     The treatment of General Administrative Claims, Professional Compensation Claims, Priority Tax Claims, and Other Priority Claims under the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

**10.     Section 1129(a)(10): Acceptance by Impaired Class**

50.     As evidenced by the Voting Report, without including any acceptance of the Plan by any insider (as defined in the Bankruptcy Code), Holders of Claims in the Voting Classes aside from Holders of Claims in Class 4 voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. As such, there is at least one Impaired Class of Claims that has accepted the Plan and, therefore, section 1129(a)(10) of the Bankruptcy Code has been satisfied.

(Page 25)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## 11.    Section 1129(a)(11): Feasibility of the Plan

51.    The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation (other than as contemplated by the Plan) or the need for further financial reorganization; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.    Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## 12.    Section 1129(a)(12): Payment of Statutory Fees

52.    The Plan provides for the payment of all fees payable under section 1930 of title 28 of the United States Code in accordance with section 1129(a)(12) of the Bankruptcy Code.

## 13.    Sections 1129(a)(13), (14), (15), and (16): Inapplicable Provisions

53.    Section 1129(a)(13) is inapplicable because the Debtors do not maintain any retirement benefits as defined in section 1114 of the Bankruptcy Code.    Section 1129(a)(14) is inapplicable because the Debtors are not required to pay domestic support obligations pursuant to a judicial or administrative order or statute.    Section 1129(a)(15) is inapplicable because the Debtors are not individuals under the Bankruptcy Code.    Section 1129(a)(16) of the Bankruptcy Code is inapplicable because the Debtors are not nonprofit entities or trusts.

(Page 26)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**14.     Section 1129(b): No Unfair Discrimination; Fair and Equitable**

54.     Notwithstanding the rejection of the Plan by the Deemed Rejecting Classes and Class 4, based upon the record before the Court and the treatment provided on account of such Claims and Interests, (a) the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests and (b) the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except for section 1129(a)(8) of the Bankruptcy Code.  The evidence in support of confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Combined Hearing regarding the Debtors' classification and treatment of Claims and Interests and the requirements for confirmation of the Plan under section 1129(b) of the Bankruptcy Code (x) is reasonable, persuasive, credible, and accurate, (y) utilizes reasonable and appropriate methodologies and assumptions, and (z) has not been controverted by other credible evidence.  Accordingly, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes and Class 4.

**15.     Section 1129(c): Only One Plan**

55.     The Plan is the only plan filed in the Chapter 11 Cases for Debtors Crown Capital Holdings LLC, RH New Orleans Holdings LLC, RH New Orleans Holdings MM LLC, Laguna Reserve Apts Investor LLC, RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, and RH Windrun LLC and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

(Page 27)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**16.    Section 1129(d): Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act**

56.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

**17.    Section 1129(e): Not Small Business Cases**

57.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

**P.    Sufficiency of Marketing**

58.    The Debtors and their professionals conducted a fair, open, and adequate prepetition marketing and sale process. The marketing and sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any Entity to make an offer, and the process conducted by the Debtors obtained the highest or best value for the NOLA Properties. There was no other transaction available or presented that would have yielded as favorable an economic result for the Debtors' Estates as that provided by the NOLA Sale Transaction. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective buyers have been afforded a reasonable and fair opportunity to make a higher or otherwise better offer. The marketing and sale process undertaken by the Debtors and their professionals has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all stakeholders in all respects.

(Page 28)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**Q.     Sound Business Purpose; Sale Highest or Best Offer**

59.     Consummation of the NOLA Sale Transaction constitutes a valid and sound exercise of the Debtors' business judgment, and such acts are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  This Court finds that the Debtors have articulated good and sufficient business reasons for the Court to authorize (i) the consummation of the NOLA Sale Transaction pursuant to the terms of the NOLA Purchase Agreement and the Plan, (ii) the assumption and assignment of the Assumed Contracts as set forth herein, in the NOLA Purchase Agreement, and the Plan, and (iii) the assumption of the Assumed Liabilities as set forth herein, in the NOLA Purchase Agreement, and the Plan.

60.     The Debtors have articulated good and sufficient business reasons justifying the sale of the NOLA Properties to the NOLA Purchaser on the terms and conditions set forth in the NOLA Purchase Agreement.  Additionally: (a) the total consideration provided by the NOLA Purchaser pursuant to the NOLA Sale Transaction is the highest or best offer available to the Debtors; (b) the NOLA Sale Transaction presents the best opportunity to realize the maximum value for the Debtors' Estates and avoid a decline and devaluation of the NOLA Properties; (c) there is risk that the value of the NOLA Properties will deteriorate, and the NOLA Purchaser may terminate the NOLA Purchase Agreement, if the NOLA Sale Transaction is not consummated promptly; (d) the NOLA Purchase Agreement and the consummation of the NOLA Sale Transaction will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative; (e) the NOLA Purchaser would not agree to purchase the NOLA Properties if the NOLA Properties remained subject to higher or better offers after the entry of this Order; and (f)

(Page 29)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

the Debtors' consummation of the NOLA Sale Transaction is reasonable and appropriate under the circumstances. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the consummation of the NOLA Sale Transaction.

61. The Debtors' decision to enter into and assume the NOLA Purchase Agreement and consummate the NOLA Sale Transaction constitutes a proper exercise of the fiduciary duties of the Independent Fiduciary. Because entry into the NOLA Purchase Agreement and the consummation of the NOLA Sale Transaction constitutes the exercise of sound business judgment by the Debtors, none of the Debtors, or their respective current and former members, managers, officers, directors, employees, advisors, professionals, or agents in their capacity as such, shall incur or have any liability to the Estates or any Holder of a Claim against or Interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the NOLA Purchase Agreement or the consummation of the NOLA Sale Transaction contemplated thereunder, other than liability arising out of or relating to any act or omission of the Debtors that constitutes a breach of the NOLA Purchase Agreement, willful misconduct, or fraud, in each case as determined by a court of competent jurisdiction.

**R.     Arm's-Length Sale and NOLA Purchaser's Good Faith**

62. The NOLA Purchase Agreement and the NOLA Sale Transaction were negotiated, proposed, and undertaken by the Debtors and the NOLA Purchaser at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The NOLA Purchaser (i) recognizes that the Debtors were free to deal with any other party

(Page 30)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

interested in making an offer, (ii) complied with the procedures governing the Debtors' marketing and sale process in all respects, and (iii) willingly subjected its bid to the competitive marketing and sale process. All payments to be made by the NOLA Purchaser and other agreements or arrangements entered into by the NOLA Purchaser in connection with the NOLA Sale Transaction have been disclosed. As a result of the foregoing, the NOLA Purchaser is a "good faith purchaser" and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including in the event this Order or any portion thereof is reversed or modified on appeal, and the NOLA Purchaser has proceeded in good faith in all respects in connection with the NOLA Sale Transaction specifically and the Chapter 11 Cases generally.

**S.      Authority**

63.     The Debtors have: (i) full power and authority to execute the NOLA Purchase Agreement and all other documents contemplated thereby, (ii) all of the power and authority necessary to consummate the transactions contemplated by the NOLA Purchase Agreement subject to the terms of the Plan and this Order, and (iii) taken all corporate action necessary to authorize and approve the NOLA Purchase Agreement, the sale of the NOLA Properties, and all other actions required to be performed by the Debtors in order to consummate the NOLA Sale Transaction. No consents or approvals, other than those already obtained or expressly provided for in the NOLA Purchase Agreement or this Order, are required for the Debtors to consummate the NOLA Sale Transaction.

(Page 31)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## T. Good Faith

64.     The Debtors and the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation of acceptances of the Plan, their participation in the Chapter 11 Cases and the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## U. Implementation

65.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. Such documents and agreements are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors, the post-Effective Date Debtors, the Wind-Down Officer, the NOLA Purchaser, or the Creditor Recovery Trustee,

31

(Page 32)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

as applicable, are authorized to take any action reasonably necessary or appropriate to implement, effectuate and consummate the Plan, the documents and agreements necessary to implement the Plan, this Order, and the transactions contemplated thereby or hereby, including performance under the NOLA Purchase Agreement, the Wind-Down Agreement, and the Creditor Recovery Trust Agreement.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**A.     Findings of Fact and Conclusions Law**

66.     The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

**B.     Confirmation Stipulation**

67.     The provisions of the Confirmation Stipulation are hereby incorporated by reference as though fully set forth herein.

**C.     Approval of the Disclosure Statement**

68.     The Disclosure Statement is approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

**D.     Confirmation of the Plan**

69.     The Plan, including (a) all modifications to the Plan filed with the Court prior to or during the Combined Hearing and (b) all documents incorporated into the Plan through the Plan Supplement, is approved in its entirety, as modified herein, and confirmed pursuant to section 1129 of the Bankruptcy Code.  All terms of the Plan and the Plan Supplement are incorporated herein

(Page 33)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

by reference and are an integral part of this Order. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

**E.  Objections Overruled**

70.    All objections, responses, statements, reservation of rights, and comments in opposition, if any, to final approval of the Disclosure Statement or confirmation of the Plan that have not been withdrawn, waived, settled, resolved prior to the Combined Hearing or otherwise resolved on the record of the Combined Hearing or in this Order are hereby overruled and denied on the merits, with prejudice. All objections to the entry of this Order or to the relief granted herein that were not timely filed and served prior to the Combined Objection Deadline are deemed waived and forever barred.

**F.  Plan Supplement**

71.    All documents contained in the Plan Supplement are integral to the Plan, in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and are approved by the Bankruptcy Court. The Debtors, the post-Effective Date Debtors, the Creditor Recovery Trustee, and the Wind-Down Officer (as applicable) are authorized to take all actions required under the Plan (including the Plan Supplement as described) to effectuate the Plan, including, for the avoidance of doubt altering, amending, updating, or modifying the Plan Supplement before the Effective Date as necessary to effectuate the Plan, subject to the terms of the Plan.

(Page 34)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## G. Restructuring Transactions

72.     All of the Restructuring Transactions contemplated by the Plan and the Plan Supplement are hereby approved.  The Debtors and the NOLA Purchaser, as applicable, are authorized to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, including the Plan Supplement, prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court without the need for further approval, act or action under any applicable law, order, rule or regulation.

## H. NOLA Sale Transaction

73.     The NOLA Sale Transaction as set forth in the NOLA Purchase Agreement and the Plan, and all of the terms and conditions thereof, are authorized and approved pursuant to sections 105, 363, 365, 1123, and 1141 of the Bankruptcy Code.  The failure to specifically reference any particular provision set forth in the NOLA Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the NOLA Purchase Agreement and all other agreements or arrangements entered into by the NOLA Purchaser and the Debtors in connection with the NOLA Sale Transaction, and each and every provision, term and condition thereof be authorized and approved in its entirety.

74.     The Debtors are authorized to consummate the NOLA Sale Transaction and, among other things, the NOLA Properties shall be transferred to and vest in the NOLA Purchaser free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the NOLA Purchase Agreement and this Order.

(Page 35)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

75.    The NOLA Purchaser shall pay to the Debtors the Sale Proceeds as and to the extent provided for in the NOLA Purchase Agreement.

76.    Neither the NOLA Purchaser nor any of its Affiliates shall be deemed to be a successor to the Debtors.

77.    The Debtors and the NOLA Purchaser have acted in good faith and are entitled to the protections afforded under section 363(m) of the Bankruptcy Code.  No evidence has been presented to the Court indicating that the NOLA Sale Transaction may be avoided pursuant to section 363(n) of the Bankruptcy Code.

78.    The documents related to implementation of the NOLA Transaction may be modified, amended, or supplemented by the parties thereto in non-material ways in accordance with the terms thereof, without further order of the Court.

## I.    Assumed Contracts

79.    Notwithstanding any provision of any Assumed Contract or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of such Assumed Contract, the Debtors are authorized to assume and assign to the NOLA Purchaser the Assumed Contracts pursuant to section 365 of the Bankruptcy Code, which assumption and assignment shall take place on and be effective as of the Effective Date, except as otherwise provided herein.  There shall be no accelerations, assignment fees, increases, or any other fees charged to the Debtor, the post-Effective Date Debtors, or the NOLA Purchaser as a result of the assumption and assignment of the Assumed Contracts, which shall not be a default under any such Assumed Contract.  After the payment or satisfaction of the relevant Cure Cost (if applicable), none of the Debtors, their Estates,

(Page 36)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

the post-Effective Date Debtors, or the NOLA Purchaser shall have any further liabilities under the Assumed Contracts to the non-Debtor counterparties under the Assumed Contracts, other than the obligations under the Assumed Contracts that accrue or become due and payable on or after the Effective Date. Upon assumption and assignment to the NOLA Purchaser of the Assumed Contracts, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order. As of the Effective Date, the NOLA Purchaser shall succeed to the entirety of the Debtors' rights and obligations under each Assumed Contract.

**J.      Valid Transfer; No Liability**

80.      The transfer to the NOLA Purchaser of the Debtors' rights, title, and interest in the NOLA Properties pursuant to the NOLA Purchase Agreement shall be, and hereby is deemed to be, a legal, valid, and effective transfer of the Debtors' rights, title, and interest in the NOLA Properties, notwithstanding any requirement for approval or consent by any person, and all rights, title, and interest of the Debtors in the NOLA Properties shall vest with or will vest in the NOLA Purchaser free and clear of all Claims of any kind or nature whatsoever (other than the Assumed Liabilities).

81.      Except as expressly provided in the NOLA Purchase Agreement, the other documents entered into in connection therewith, the Plan, or by this Order, all Persons and Entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants, non-Debtor parties to the Assumed Contracts, and other persons holding Claims or Liens of any kind

(Page 37)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

or nature whatsoever against or in the Debtors or the Debtors' interests in the NOLA Properties (whether known or unknown, legal, or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise) shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing or taking any other action against the Debtors or the NOLA Purchaser or the Debtors' or the NOLA Purchaser's respective affiliates, successors, assigns, equity holders, directors, officers, employees, or professionals, the NOLA Properties, or the interests of the Debtors or the NOLA Purchaser in the NOLA Properties based on any Claims, Interests, Liens, or other encumbrances to the extent such Claims, Interests, Liens, or encumbrances are released or discharged pursuant to the Plan, including any Claims arising under or out of, in connection with, or in any way relating to, the transfer of the Debtors' interests in the NOLA Properties to the NOLA Purchaser.  Following the Closing, no holder of a Claim against the Debtors (other than Assumed Liabilities) shall interfere with the NOLA Purchaser's title to or use and enjoyment of the Debtors' or the NOLA Purchaser's interest in the NOLA Properties based on or related to such Claim.  All Persons and Entities are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtors to transfer the NOLA Properties in accordance with the terms of the NOLA Purchaser Agreement, the Plan, and this Order.

82.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors'

(Page 38)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

rights, title, and interest in the NOLA Properties or a bill of sale transferring good and marketable title in the NOLA Properties to the NOLA Purchaser, pursuant to the terms of the NOLA Purchase Agreement and the Plan, in each case free and clear of all Claims (other than Assumed Liabilities).

### K.  Wind-Down and Dissolution of the Debtors

83.  The Wind-Down Officer is authorized to implement the Plan and may take any reasonable action necessary to implement the Wind-Down and dissolve the Debtors in, and withdraw the Debtors from, applicable states and provinces to the extent required by applicable law, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental.

84.  Except to the extent necessary to carry out the purposes of the Plan or complete the Wind-Down, from and after the Effective Date, the post-Effective Date Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal (ii) shall be deemed to have cancelled pursuant to the Plan all Interests, and (iii) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

### L.  Creditor Recovery Trust

85.  On the Effective Date, the Creditor Recovery Trust shall be automatically appointed as a representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and

(Page 39)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

(b)(3)(B) of the Bankruptcy Code. From and after the Effective Date, the Creditor Recovery Trust shall succeed to all rights, privileges, and powers of the Debtors and their Estates with respect to the NOLA Debtor Contributed Creditor Recovery Trust Assets, including the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action. The Creditor Recovery Trust shall be substituted and will replace the Debtors and their Estates in all NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and Insurance Causes of Action, whether or not such claims are pending in filed litigation. To the extent that the Effective Date for the CBRM Plan does not occur prior to the Effective Date, the Creditor Recovery Trust shall be established as of the Effective Date as set forth in the CBRM Plan without the requirement of the Effective Date of the CBRM Plan having to occur.

## M.    Vesting of the NOLA Debtor Contributed Creditor Recovery Trust Assets

86.    As of the Effective Date, the NOLA Debtor Contributed Creditor Recovery Trust Assets, including the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action, shall vest in the Creditor Recovery Trust, free and clear of all Liens, Claims, Encumbrances, charges or other interests to the extent permitted by section 1141 of the Bankruptcy Code. The transfer of the NOLA Debtor Contributed Creditor Recovery Trust Assets to the Creditor Recovery Trust shall not diminish, and fully preserves, any defenses the Debtors would have if such assets had been retained by the Debtors. The Creditor Recovery Trust and the Creditor Recovery Trustee, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action vested, transferred, or assigned to such entity on behalf of both the Creditor Recovery Trust. The Creditor

(Page 40)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

Recovery Trust or the Creditor Recovery Trustee, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. For the avoidance of doubt, subject to the provisions of the Plan, the NOLA Debtor Contributed Creditor Recovery Trust Assets will not be deemed property of the Debtors or their Estates and the Creditor Recovery Trust shall not be deemed to be a successor of the Debtors for purposes of any Distribution made by the Creditor Recovery Trust.

### N.     Creditor Recovery Trustee

87.     The Creditor Recovery Trustee shall have the powers, duties and responsibilities vested in the Creditor Recovery Trustee pursuant to the terms of the Creditor Recovery Trust Agreement, including the authority to:  (a) hold, manage, protect, and monetize the NOLA Debtor Contributed Creditor Recovery Trust Assets; (b) carry out the provisions of the Plan relating to the Creditor Recovery Trust, including commencing, prosecuting, and settling all NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and Insurance Causes of Action; and (c) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Creditor Recovery Trust.

88.     The Creditor Recovery Trustee shall report to, and act at the direction of, the Advisory Committee in accordance with the Plan and the Creditor Recovery Trustee Agreement.

| (Page 41) | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

### O. Independent Fiduciary

89.     As of the Effective Date, notwithstanding any agreement, proxy, resolution, shareholders' agreement, or other document to the contrary or the transfer of the Crown Capital Interests to the Creditor Recovery Trust, the Independent Fiduciary shall have the sole authority and power to control the corporate governance actions of Crown Capital and any Entity directly or indirectly owned by Crown Capital; *provided* that, notwithstanding the foregoing, nothing in this Plan shall limit or affect the rights of Cleveland International Fund – AG Crocker Park, Ltd. in connection with that certain Amended and Restated Operating Agreement of Country Club Manor Apts Investor LLC, dated as of July 18, 2023.

### P. Preservation of Rights of Action

90.     On the Effective Date, (i) the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action shall vest in the Creditor Recovery Trust in accordance with the Creditor Recovery Trust Agreement, and (ii) the Wind-Down Retained Causes of Action shall vest in the post-Effective Date Debtors under the authority of the Wind-Down Officer, in each case free and clear of all Claims, Liens, Encumbrances and other interests.  The NOLA Debtor Contributed Creditor Recovery Trust Causes of Action shall become Creditor Recovery Trust Assets and the Wind-Down Retained Causes of Action shall become Wind-Down Assets.  On and after the Effective Date, the Creditor Recovery Trustee shall have sole and exclusive discretion to pursue and dispose of the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and the Wind-Down Officer shall have sole and exclusive discretion to pursue the Wind-Down Retained Causes of Action.

(Page 42)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

91.     No Person or Entity may rely on the absence of a specific reference in the Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtor, and on and after the Effective Date, the Creditor Recovery Trustee, or Wind-Down Officer, as applicable, will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation.  Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Creditor Recovery Trustee, subject to the oversight, approval, consultation and consent of the Advisory Committee as set forth in the Creditor Recovery Trust Agreement, and the Wind-Down Officer, as applicable, shall retain and shall have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

## Q.     Contributed Claims

92.     On the Effective Date, all Contributed Claims will be irrevocably contributed to Creditor Recovery Trust for the Creditor Recovery Trustee to prosecute on behalf of the Contributing Claimants and shall thereafter be Creditor Recovery Trust Assets for all purposes.

93.     No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, this Order, the Creditor Recovery Trust Agreement, the Plan Supplement, or any other document as any indication that the Creditor Recovery Trustee will or will not pursue

(Page 43)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

any and all available Contributed Claims against such Person. The Creditor Recovery Trustee shall have, retain, reserve, and be entitled to assert all Contributed Claims fully to the same extent that the Contributing Claimants could have asserted such claims prior to the Effective Date.

**R.    Closing the Chapter 11 Cases**

94.    Once an estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and/or the Wind-Down Officer shall file a motion with the Court to obtain a final decree to close the Chapter 11 Case. Alternatively, the Court may enter such a final decree on its own motion.

**S.    Treatment of Executory Contracts and Unexpired Leases**

95.    On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases (including all Executory Contracts and Unexpired Leases identified on the Rejected Executory Contract and Unexpired Lease List) will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that previously were assumed or rejected by the Debtors or those that are subject to a pending motion to assume or assign such Executory Contract or Unexpired Lease. Entry of this Order by the Court shall constitute approval of such rejections.

**T.    Insurance Policies**

96.    Notwithstanding anything to the contrary in the Plan, each of the Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; *provided*, *however*, that to the extent any such Insurance

43

(Page 44)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and assign the same to the Creditor Recovery Trust.

97.     Subject to the occurrence of the Effective Date, the entry of this Order shall constitute both approval of the foregoing assumption and assignment pursuant to section 365 of the Bankruptcy Code and a finding by the Court that such assumption.  Each applicable Insurer is prohibited from, and this Order shall constitute an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for any insured Claims or Causes of Action.

98.     From and after the Effective Date, the D&O Liability Insurance Policies shall remain in place on terms for coverage and amounts no less favorable than the Debtors' current directors' and officers' insurance policies.  From and after the Effective Date, the D&O Liability Insurance Policies shall be maintained for the benefit of the beneficiaries thereunder and shall not be transferred to the Creditor Recovery Trust nor become NOLA Debtor Contributed Creditor Recovery Trust Assets.  The Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, and the Independent Fiduciary shall be entitled to the full benefits of any such policy or policies for the full term of such policy or policies.

| (Page 45) | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## U.    General Settlement of Claims and Interests

99.    To the extent provided for by the Bankruptcy Code, and in consideration for the Distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, certain of the provisions of the Plan shall constitute a good-faith compromise and settlement of certain Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

## V.    Crown Capital Noteholder Settlement

100.    In accordance with the Crown Capital Noteholder Settlement, each Holder of an Allowed Crown Capital Unsecured Claim shall hold an Allowed Claim against each Debtor in an amount equal to the amount of such Holder's Allowed Crown Capital Unsecured Claim and shall be deemed to have voted to accept the Plan on account of such Allowed Claim against each Debtor, and the Debtors shall not be required to disseminate a Ballot to the Holders of Allowed Crown Capital Unsecured Claims on account of such Allowed Claims.  Notwithstanding the foregoing, the Crown Capital Noteholder Settlement shall have no effect on the anticipated treatment and projected recovery to be provided to OSL Investment IV, LLC as the Holder of a Class 5 – Other NOLA Unsecured Claim on account of Proofs of Claim 201, 202, 203, 204, and 205 or the Sewerage & Water Board of New Orleans for any Allowed Class 5 – Other NOLA Unsecured Claim arising from the rejection of any Executory Contracts among the Debtors and the Sewerage & Water Board of New Orleans.

(Page 46)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**W.      Release, Injunction, Exculpation, and Related Provisions Under the Plan**

101.    The releases, exculpation, injunction, and related provisions set forth in Article VIII, including Articles VIII.B, VIII.C, VIII.D, VIII.E, and VIII.F of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

**1.      Release of Liens (Article VIII.B)**

102.    **Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised.**

**2.      Releases by the Debtors (Article VIII.C)**

103.    **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors and their Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law,**

(Page 47)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date.

### 3.    Third-Party Release (Article VIII.D)

104.    **As of the Effective Date, except as otherwise provided in the Plan, the Releasing Parties are deemed to have released the Debtors, their Estates, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct Claims held by any of the Releasing Parties against the Debtors, their Estates, and/or the Released Parties or derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party**

(Page 48)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (1) the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (2) except as to any member of the Ad Hoc Group of Holders of Crown Capital Notes who opted to grant the releases contained in Article VIII.D of the Plan, the Ad Hoc Group of Holders of Crown Capital Notes and each of its members (whether or not any such member affirmatively voted to accept the Plan) shall not release nor be deemed to release any claim or cause of action that any such holders may hold against the Asset Manager or the Property Manager and such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, financial

(Page 49)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

    **4.    Exculpation (Article VIII.E)**

    105.    **Except as otherwise specifically provided in the Plan, each Debtor and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects each Debtor and each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan. The Debtors, their Estates, the Independent Fiduciary, and the Debtors' professionals including White & Case LLP, IslandDundon LLC, Ken Rosen Advisors PC, and Kurtzman Carson Consultants, LLC dba Verita Global have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of the Plan and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

    **5.    Injunction (Article VIII.F)**

    106.    **Pursuant to section 362(c)(1) of the Bankruptcy Code, the automatic stay of an act against property of the Debtors' estates will continue until such property is no longer property of the Debtors' estates, and pursuant to section 362(c)(2) of the Bankruptcy Code,**

(Page 50)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

the stay of any other act described in section 362(a) of the Bankruptcy Code continues until the earlier of the closure or dismissal of these Chapter 11 Cases. In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan.

107.    For the avoidance of doubt, the foregoing relief may include (but is not limited to): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claim or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such released,

(Page 51)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

**compromised, settled, or exculpated Claims or Interests; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests.**

108.    **For the avoidance of doubt, Article VIII.F of the Plan shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.**

**X.    Claims Against Related Parties of the Debtors**

109.    No party may assert a Cause of Action against the Debtors, the Independent Fiduciary, and the Debtors' professionals, including White & Case LLP, IslandDundon LLC, Ken Rosen Advisors PC, and Kurtzman Carson Consultants, LLC dba Verita Global, for any Exculpated Claim, except for gross negligence or willful misconduct, without first seeking authority from this Court. Any such request shall be made in writing with notice to all affected parties and shall include a proposed complaint setting forth any alleged Claims and the detailed factual basis in support of such Claims. Further, any such request shall include a proposed attorney fee reserve, subject to Court modification, that will be deposited to the Court's registry to indemnify the Independent Fiduciary and the Debtors' professionals, including White & Case LLP, IslandDundon LLC, Ken Rosen Advisors PC, and Kurtzman Carson Consultants, LLC dba Verita Global, against costs associated with the successful defense of any Claim that is allowed to proceed. This Court reserves jurisdiction to adjudicate any such Claims to the maximum extent provided by applicable law.

(Page 52)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## Y.    Notice of Confirmation and Effective Date

110.    The Debtors or the post-Effective Date Debtors, as applicable, shall serve notice of entry of this Order, of the occurrence of the Effective Date, and of applicable deadlines (the "**Notice of Confirmation**") ten (10) Business Days after the Effective Date on all parties served with the Combined Hearing Notice and such notice shall satisfy Bankruptcy Rules 2002 and 3020(c); *provided* that no notice of any kind shall be required to be mailed or made upon any Person or Entity to whom the Debtors mailed (or emailed) the Combined Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address or email address, as applicable.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

## Z.    Notice of Subsequent Pleadings

111.    Except as otherwise provided in the Plan or in this Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the post-Effective Date Debtors and their counsel; (b) the U.S. Trustee; (c) counsel to the Creditor Recovery Trustee; (d) any party known to be directly affected by the relief sought by such pleadings; and (f) any party that has previously requested notice or who files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Claims and Noticing Agent shall not be required to file updated service lists.

(Page 53)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## AA. Reports

112. After entry of this Order, the Debtors, the post-Effective Date Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and/or the Wind-Down Officer, as applicable, shall have no obligation to file with the Court, serve on any parties, or otherwise provide any party with any other report that the Debtors were obligated to provide under the Bankruptcy Code or an order of the Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in the Chapter 11 Cases, (b) ordinary course professional reports, and (c) monthly or quarterly reports for Professionals; *provided* that the Debtors, the post-Effective Date Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and/or the Wind-Down Officer shall file the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. The Debtors, the post-Effective Date Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and/or the Wind-Down Officer shall have no obligation to file quarterly reports with respect to a Debtor for any periods following the time such Debtor's case is closed, converted, dismissed or a final decree has been entered by the Court.

## BB. Binding Effect

113. Upon the occurrence of the Effective Date, the terms of the Plan and the final versions of the documents contained in the Plan Supplement and this Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the post-Effective Date Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, the Wind-Down Officer, and any and

(Page 54)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, all other parties in interest, and their respective successors and assigns. All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

114. Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed under such prior orders, and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the post-Effective Date Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and the Wind-Down Officer, and each of their respective successors and assigns.

115. The Plan, all documents and agreements executed by the Debtors in connection therewith, this Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases or any successor case or the Wind-Down Officer and/or the Creditor Recovery Trustee.

(Page 55)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## CC.    Post-Confirmation Date Fees and Expenses

116.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Court.

## DD.    Non-Severability

117.    Each term and provision of the Plan, as may have been altered or interpreted by the Court prior to the entry of this Order in accordance with the Plan, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified except in accordance with the Plan, and (c) nonseverable and mutually dependent.

## EE.    Waiver or Estoppel

118.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan or papers filed with the Court before the Confirmation Date.

(Page 56)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## FF.    Authorization to Consummate

119.    The Debtors are authorized to consummate the Plan at any time after the entry of this Order subject to satisfaction or waiver, in accordance with the terms of the Plan, of the conditions precedent to Consummation set forth in Article IX of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## GG.    Injunctions and Automatic Stay

120.    Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

## HH.    Fee Escrow Account

121.    The Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Compensation Claims Allowed by the Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Court.  No Liens, claims, or interests shall encumber the Fee Escrow Account or Cash held in the Fee Escrow Account in any way.  Funds held in the Fee Escrow Account shall not be considered property of the Estates; *provided* that the Debtors' counsel shall be the designated Entity

(Page 57)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

authorized to release funds from the Fee Escrow Account in accordance with the governing escrow agreement.

122.    The Creditor Recovery Trustee shall use Cash from the Creditor Recovery Trust Assets to increase the amount of the Fee Escrow Account to the extent fee applications are Filed in excess of the amount held in the Fee Escrow Account in accordance with Article II.A of the Plan.

## II.    Effectiveness of the Plan

123.    The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

## JJ.    Effect of Non-Occurrence of Conditions to Consummation

124.    If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by the Debtors or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

## KK.    Effect of Conflict Between Plan, the Plan Supplement, and this Order

125.    If there is any inconsistency between the terms of the Plan (including the Plan Supplement) and the terms of this Order, the terms of this Order shall govern and control.  Except as set forth in the Plan, in the event of any inconsistency among the Plan and any document or agreement filed in the Plan Supplement, the Plan Supplement shall control.

(Page 58)

| | |
|---|---|
| Debtors: | CBRM REALTY INC., *et al.* |
| Case No. | 25-15343 (MBK) |
| Caption of Order: | ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (III) GRANTING RELATED RELIEF |

## LL. Retention of Jurisdiction

126. Notwithstanding entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, this Court retains exclusive jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, including the matters set forth in Article XI of the Plan (except as otherwise provided in the Plan).

## MM. Final Order

127. This Order is a final order and the period in which an appeal must be filed will commence upon entry of this Order. In accordance with rule 601.2(e) of the Local Civil Rules of the United States District Court for the District of New Jersey, upon the filing of a notice of appeal of this Order to the United States District Court for the District of New Jersey, this Court shall have the right to file a written opinion in support of this Order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion within ten (10) days of the docketing of the notice of appeal.

## Exhibit A

**Plan**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

-and-

Andrew Zatz
Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
          barrett.lingle@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and
Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>CBRM REALTY INC., *et al.*<br><br>                Debtors.[1] | Chapter 11<br><br>Case No. 25-15343 (MBK)<br>(Jointly Administered) |

---

## MODIFIED JOINT CHAPTER 11 PLAN OF
## CROWN CAPITAL HOLDINGS LLC AND CERTAIN OF ITS DEBTOR AFFILIATES

---

Dated: October 18, 2025

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), RH New Orleans Holdings MM LLC (1951), and Laguna Reserve Apts Investor LLC (N/A). The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**......................................................................1
    A.    Defined Terms......................................................................................1
    B.    Rules of Interpretation.......................................................................13
    C.    Computation of Time.........................................................................14
    D.    Governing Law...................................................................................14
    E.    Controlling Document........................................................................14

**ARTICLE II ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS**.................................................................................................14
    A.    General Administrative Claims.........................................................14
    B.    Professional Compensation Claims...................................................15
    C.    Fee Escrow Account...........................................................................15
    D.    Post-Confirmation Date Fees and Expenses ....................................15
    E.    Priority Tax Claims ...........................................................................16
    F.    NOLA DIP Claims ............................................................................16
    G.    Statutory Fees....................................................................................16

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ......16
    A.    Summary of Classification.................................................................17
    B.    Treatment of Claims and Interests....................................................17
    C.    Elimination of Vacant Classes ..........................................................22
    D.    Voting Classes Where No Valid Votes Are Received ......................22
    E.    Subordinated Claims .........................................................................22

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ...........................................22
    A.    NOLA Sale Transaction, Restructuring Transactions, and Sources of Consideration for Plan Distributions .......................................22
    B.    General Settlement of Claims ...........................................................23
    C.    Crown Capital Noteholder Settlement .............................................23
    D.    Wind Down and Dissolution of the Debtors.....................................24
    E.    Creditor Recovery Trust....................................................................24
    F.    Cancellation of Securities and Agreements......................................26
    G.    Corporate Action ...............................................................................26
    H.    Independent Fiduciary........................................................................27
    I.    Exemption from Certain Taxes and Fees .........................................27
    J.    Preservation of Rights of Action.......................................................27
    K.    Election to Contribute Claims............................................................28
    L.    Contribution of Contributed Claims..................................................28

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**...................................................................................................28
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases................28
    B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases................28
    C.    Treatment of Insurance Policies........................................................29
    D.    Effect of Confirmation on D&O Liability Insurance Policies...........29

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ........................................29
    A.    Timing and Calculation of Amounts to Be Distributed ...................29
    B.    Distribution Agent.............................................................................29
    C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.................30
    D.    Claims Payable by Third Parties .......................................................30
    E.    Distributions to Unsecured Claims ...................................................30
    F.    Allocation Between Principal and Accrued Interest ........................30

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**...................................................................31

A. Allowance of Claims ....................................................................................31
B. Automatic Disallowance and Expungement of Certain Claims ................31
C. Distributions After Allowance ....................................................................31

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS..........................................................................................31**
A. Settlement, Compromise, and Release of Claims and Interests ................31
B. Release of Liens ..........................................................................................32
C. Releases by the Debtor ...............................................................................32
D. Releases by Holders of Claims and Interests .............................................32
E. Exculpation .................................................................................................33
F. Injunction ....................................................................................................33

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..............................34**
A. Conditions Precedent to the Effective Date ...............................................34
B. Waiver of Conditions ..................................................................................34

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........34**
A. Modification and Amendments ...................................................................34
B. Effect of Confirmation on Modifications ...................................................35
C. Revocation or Withdrawal of the Plan .......................................................35

**ARTICLE XI RETENTION OF JURISDICTION ...............................................................35**

**ARTICLE XII MISCELLANEOUS PROVISIONS ..............................................................36**
A. Additional Documents.................................................................................36
B. Payment of Quarterly Fees .........................................................................36
C. Reservation of Rights ..................................................................................36
D. Successors and Assigns...............................................................................36
E. Service of Documents .................................................................................37
F. Term of Injunctions or Stays ......................................................................37
G. Entire Agreement ........................................................................................37
H. Exhibits .......................................................................................................37
I. Nonseverability of Plan Provisions ............................................................37
J. Waiver or Estoppel......................................................................................38

Crown Capital Holdings LLC, RH New Orleans Holdings LLC, RH New Orleans Holdings MM LLC, Laguna Reserve Apts Investor LLC, RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, and RH Windrun LLC propose the following plan pursuant to chapter 11 of title 11 of the United States Code (the "***Plan***").  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Although proposed jointly for administrative purposes, the Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN OR TAKING ANY OTHER ACTION WITH RESPECT TO THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE X OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH UNDER ARTICLE VIII OF THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms.*

As used in the Plan, capitalized terms have the meanings and effect as set forth below.

1.    "***Abandoned Entities***" means all Entities set forth in the Schedule of Abandoned Entities.

2.    "***Administrative Claim***" means a Claim against the Debtors for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Compensation Claims in the Chapter 11 Cases; and (c) fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including U.S. Trustee fees.

3.    "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity was a debtor in a case under the Bankruptcy Code.

4.    "***Akiri Credit Agreement***" means that certain Credit Agreement, dated as of January 1, 2024, between Akiri Funds, LLC and RH Chenault Creek LLC, as the same may be subsequently modified, amended, or supplemented from time to time, together with all instruments and agreements related thereto, including the Secured Promissory Note dated as of January 21, 2024.

5.    "***Akiri Mortgage***" means the mortgage granted by RH Chenault Creek LLC on the Chenault Property to secure the obligations of RH Chenault Creek LLC under the Akiri Credit Agreement, which was recorded on March 13, 2024.

6.　"**Akiri Mortgage Loan Claim**" means any Claim against Debtor RH Chenault Creek LLC arising under or related to the Akiri Credit Agreement and the Akiri Mortgage.

7.　"**Allowed**" means, as to a Claim against a Debtor or an Interest in a Debtor, except as otherwise provided herein, such Claim or Interest (or any portion thereof) that is not Disallowed and (i) with respect to which no objection to the allowance thereof or request for estimation has been Filed; (ii) has been expressly Allowed under the Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; (iii) is both not Disputed and either (a) evidenced by a Proof of Claim timely Filed in accordance with the Claims Bar Date Order (or for which under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed) or (b) listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (iv) is compromised, settled, or otherwise resolved by the Debtors and the Holder of such Claim or Interest; *provided*, that, except as otherwise expressly provided herein, the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code.　"Allow," "Allowance," and "Allowing" shall have correlative meanings.

8.　"**Asset Manager**" means LAGSP, LLC, in its capacity as asset manager pursuant to that certain Amended and Restated Asset Management Agreement, dated as of June 11, 2025.

9.　"**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other similar Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code, including claims brought pursuant to sections 541, 542, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any analogous state, federal, or foreign statutes, common law, or other applicable law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claims, Causes of Action or remedies was commenced prior to the Effective Date.

10.　"**Ballot**" means the form(s) distributed to Holders of Claims and Interests entitled to vote on the Plan to indicate their acceptance or rejection of the Plan and to make an election with respect to the releases by Holders of Claims and Interests provided by Article VIII.

11.　"**Bankruptcy Code**" means title 11 of the United States Code, as amended.

12.　"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the District of New Jersey.

13.　"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended.

14.　"**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.　"**Cash**" means the legal tender of the United States of America or the equivalent thereof.

16.　"**Causes of Action**" means any claims, judgments, interests, damages, remedies, causes of action, crossclaim, third party claim, defense, indemnity claims, reimbursement claims, contribution claims, subrogation claims, rights of recovery, demands, rights, actions, suits, obligations, liabilities, accounts, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or

unsuspected, in contract, tort, statute, law, common law, equity, or otherwise, whether arising before, on, or after the Petition Date.  For the avoidance of doubt, "Causes of Action" include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims or Interests; (c) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) claims for breach of statutory, equitable, or constructive trusts created under applicable law or in equity or the misappropriation of funds held in trust or other causes of action or claims related thereto; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under any local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

17.　"***CBRM***" means Debtor CBRM Realty Inc.

18.　"***CBRM Interests***" means the equity interests of Moshe (Mark) Silber in CBRM.

19.　"***CBRM Plan***" means the *Amended Joint Chapter 11 Plan of CBRM Realty Inc. and Certain of Its Debtor Affiliates (With Technical Modifications)* [Docket No. 500], as may be subsequently modified, amended, or supplemented from time to time.

20.　"***CBRM Unsecured Claims***" means all Unsecured Claims against CBRM.

21.　"***Chapter 11 Cases***" means means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (ii) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court which are styled as *In re CBRM Realty Inc., et al.*, Case No. 25-15343 (MBK) (Bankr. D.N.J.).

22.　"***Chenault Property***" means that certain multifamily assemblage owned by RH Chenault Creek LLC and located in New Orleans, Louisiana.

23.　"***CIF***" means Cleveland International Fund – NRP West Edge, Ltd.

24.　"***CIF Credit Agreement***" means that certain Credit Agreement, dated as of April 23, 2023, between CIF and Laguna Reserve, as the same may be subsequently modified, amended, or supplemented from time to time, together with all instruments and agreements related thereto.

25.　"***CIF Lakewind Mortgage***" means the mortgage granted by RH Lakewind East LLC on the Lakewind Property to secure Laguna Reserve's obligations under the CIF Credit Agreement, which was recorded on December 13, 2024.

26.　"***CIF Mortgage Loan Claim***" means the Claim against Debtors Laguna Reserve and RH Lakewind East LLC arising under or related to the CIF Credit Agreement and the CIF Lakewind Mortgage.

27.　"***CIF Lakewind Mortgage Payment***" means Cash in the amount of $4,500,000 paid by the NOLA Purchaser on the Effective Date of the NOLA Sale Transaction pursuant to the NOLA Purchase Agreement to CIF in satisfaction of the CIF Mortgage Loan Claim.

28.　"***CKD Penn Guaranty***" means CKD Investor Penn LLC's guaranty of the indebtedness of certain loan obligations of non-Debtor Affiliates of the Debtors.

29.　"***CKD Penn Mortgage Claim***" means any Claim against the Debtors arising under or related to the CKD Penn Guaranty and the CKD Penn Prepetition Junior Lien Mortgage.

30.　"***CKD Penn Prepetition Junior Lien Mortgage***" means the junior mortgage granted by the Debtors on each of the NOLA Properties pursuant to a Multiple Indebtedness Mortgage, Pledge of Leases and Rents and Security Agreement, dated as of August 16, 2024.

31.     "***Claim***" means any claim, as defined under section 101(5) of the Bankruptcy Code, against the Debtor.

32.     "***Claims and Noticing Agent***" means Kurtzman Carson Consultants, LLC dba Verita Global, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court [Docket No. 101].

33.     "***Claims Bar Date***" means the last date for Filing a Proof of Claim against the Debtors, as set forth in the Claims Bar Date Order, or such other date(s) as may be designated by the Bankruptcy Court.

34.     "***Claims Bar Date Order***" means the *Order (I) Setting the Claims Bar Dates, (II) Setting the Rejection Damages Bar Date and the Amended Schedules Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 227] (as amended, modified, or supplemented by order of the Bankruptcy Court from time to time).

35.     "***Claims Register***" means the official register of Claims maintained by the Claims and Noticing Agent in the Chapter 11 Cases.

36.     "***Class***" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

37.     "***Common-Interest Communications***" means documents, information, or communications that are subject to the attorney-client privilege, attorney-work product doctrine, joint defense, or other privilege or protection from disclosure, and (a) are in the Debtors' possession, and (b) are shared between or among (i) the Debtors, on the one hand, and (ii) any third-party Entity or its representatives that share a common legal interest with the Debtors, on the other hand, including documents that reflect defense strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation.

38.     "***Confirmation***" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

39.     "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order.

40.     "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation pursuant to section 1129 of the Bankruptcy Code.

41.     "***Confirmation Order***" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

42.     "***Consummation***" means the occurrence of the Effective Date for the Plan.

43.     "***Contributed Claim***" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of the Debtors, including (a) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (b) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided, however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, (iii) any claims that cannot be assigned under applicable law, (iv) any claim of a Holder of a Crown Capital Unsecured Claim against Piper Sandler & Co. or any of its Affiliates or representatives, and (v) any claim or cause of action against the Asset Manager or the Property Manager and such Entity's current and former

subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

44. "*Contributing Claimant*" means any Holder of a Claim or Interest that elects through its Ballot to contribute their Contributed Claims to the Creditor Recovery Trust in order for the Creditor Recovery Trustee to prosecute such Contributed Claims for their benefit.

45. "*Copper Creek Property*" means that certain multifamily assemblage owned by RH Copper Creek LLC and located in New Orleans, Louisiana.

46. "*Creditor Recovery Trust*" means the trust established under the CBRM Plan and the Creditor Recovery Trust Agreement to assume all liability of the Debtors and the Estates for, and to administer, all Crown Capital Unsecured Claims and RH New Orleans Unsecured Claims and CBRM Unsecured Claims under the CBRM Plan, which shall have the powers, duties and obligations set forth in the Creditor Recovery Trust Agreement.

47. "*Creditor Recovery Trust Agreement*" means the Trust Agreement governing the Creditor Recovery Trust, dated as of the Effective Date of the CBRM Plan, as the same may be amended or modified from time to time in accordance with the terms thereof.

48. "*Creditor Recovery Trust Executory Contracts*" means all Executory Contracts set forth in the Schedule of Creditor Recovery Trust Executory Contracts.

49. "*Creditor Recovery Trustee*" means one or more trustees selected and appointed under the CBRM Plan to be the trustee(s) of the Creditor Recovery Trust, who shall be identified in the Plan Supplement and subject to approval of the Bankruptcy Court.

50. "*Crown Capital*" means Debtor Crown Capital Holdings LLC.

51. "*Crown Capital Affiliates DIP Term Sheet*" means that certain Binding Term Sheet for Senior Secured, Superpriority Debtor-in-Possession Financing dated as of October 1, 2025.

52. "*Crown Capital Interests*" means the equity interests in Crown Capital.

53. "*Crown Capital Noteholder Settlement*" means the settlement among the Ad Hoc Group of Holders of Crown Capital Notes and the NOLA Purchaser to implement the matters described in Section 2.2 of the NOLA Purchase Agreement with respect to the Crown Capital Noteholder Settlement Amount, which settlement shall be effectuated on the Effective Date pursuant to an agreement to be entered into on the Effective Date by and among the NOLA Purchaser and the Ad Hoc Group of Holders of Crown Capital Notes. Notwithstanding anything to the contrary in the Plan, the Debtors shall not be parties to such settlement; *provided, however*, that the Creditor Recovery Trust may effectuate a distribution of the proceeds thereof to the Ad Hoc Group of Holders of Crown Capital Notes if expressly requested in writing by the Ad Hoc Group of Holders of Crown Capital Notes.

54. "*Crown Capital Noteholder Settlement Amount*" means Cash in an amount equal to thirty percent (30%) of the Cash proceeds realized by the NOLA Purchaser from any future sale with respect to the NOLA Properties following (i) the payment of all costs and expenses of such transaction, (ii) the repayment of all outstanding liabilities secured by the NOLA Properties, and (iii) the payment in full of all equity capital and accrued equity returns.

55. "*Crown Capital Unsecured Claims*" means all Unsecured Claims against Crown Capital.

56. "*Cure Amount*" means with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed and assigned by the Debtors, the monetary amount, if any, required to cure the Debtors' defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease)

at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

57.    "*Cure and Assumption Notice*" means the notice of proposed assumption of, and proposed Cure Amount payable in connection with, an Executory Contract or Unexpired Lease (and, to the extent the Debtors seek to assume and assign any such Executory Contract or Unexpired Lease pursuant to the Plan, adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code), to be served in accordance with the Plan.

58.    "*D&O Liability Insurance Policies*" means all insurance policies under which the Independent Fiduciary's liability is insured or effective as of the Effective Date.

59.    "*Debtors*" means, for purposes of this Plan, Crown Capital Holdings LLC, RH New Orleans Holdings LLC, RH New Orleans Holdings MM LLC, Laguna Reserve Apts Investor LLC, RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, and RH Windrun LLC.

60.    "*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, that such Claim or Interest, or any portion thereof, is not Allowed.

61.    "*Disclosure Statement*" means the Disclosure Statement for the *Joint Chapter 11 Plan of Crown Capital Holdings LLC and Certain of Its Debtor Affiliates* [Docket No. 390], as the same may be subsequently modified, amended, or supplemented from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, which shall have been prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

62.    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court [Docket No. 522] conditionally approving the Disclosure Statement (as amended, modified, or supplemented by order of the Bankruptcy Court from time to time).

63.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed or Disallowed.

64.    "*Distribution*" means a distribution of property pursuant to the Plan, to take place as provided for herein, and "Distribute" shall have a correlative meaning.

65.    "*Distribution Agent*" means one or more Entities chosen by the Wind-Down Officer, which may include the Claims and Noticing Agent, to make any Distributions at the direction of the Wind-Down Officer.

66.    "*Distribution Date*" means a date, or dates, determined by the Wind-Down Officer, in accordance with the terms of the Plan, on which the Wind-Down Officer makes a Distribution to Holders of Allowed Claims.

67.    "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or as otherwise designated in a Final Order of the Bankruptcy Court.

68.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A have been satisfied or waived (in accordance with Article IX.C of the Plan). Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

69.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

70.    "*Estate*" means, as to a Debtor, the estate created for the Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

6

71. "*Excluded Party*" means each of the following: (a) Moshe (Mark) Silber; (b) Frederick Schulman; (c) Piper Sandler & Co.; (d) Mayer Brown LLP; (e) Rhodium Asset Management LLC; (f) Syms Construction LLC; (g) Rapid Improvements LLC; (h) NB Affordable Foundation Inc.; (i) any title agencies; (j) any independent real estate appraisal firms; (k) any rating agencies; (l) any accounting firms; (m) other current or former Insiders of the Debtors; (n) any party on the Schedule of Excluded Parties; and (o) with respect to each of the foregoing, each Person's or Entity's Affiliates, partners, members, managers, officers, directors, employees, and agents that are not specifically identified in this Plan as a Released Party. Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity hereunder.

72. "*Exculpated Claim*" means any Claim related to any act or omission arising as of or following the Petition Date through the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the Plan, the NOLA Sale Transaction, or Restructuring Transactions, the formulation, preparation, dissemination, negotiation of any document in connection with the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the pursuit of Consummation, the Restructuring Transactions, the administration and implementation of the Plan, or the distribution of property pursuant to the Plan.

73. "*Exculpated Party*" means each of, and in each case, in its capacity as such, (a) each Debtor solely in its capacity as a debtor and debtor in possession following the Petition Date and excluding such Debtor for the period prior to the Petition Date, (b) the Independent Fiduciary, (c) the Asset Manager, (d) the Property Manager, and (e) with respect to the Debtors and the Debtors' non-Debtor subsidiaries, White & Case LLP as counsel, IslandDundon LLC as financial advisor, Ken Rosen Advisors PC as New Jersey counsel and co-counsel, and the Claims and Noticing Agent. For the avoidance of any doubt, no Person or Entity identified on the Schedule of Excluded Parties shall constitute an Exculpated Party for purposes of the Plan.

74. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

75. "*Fee Escrow Account*" means the escrow account established for the benefit of the Independent Fiduciary and the Debtors' Professionals for the purpose of paying Allowed and unpaid Professional Compensation Claims.

76. "*Fee Escrow Amount*" means Cash in an amount of $2,710,000, which equals the sum of (1) the amount funded to the Fee Escrow Account in accordance with the NOLA DIP Credit Agreement, plus (2) $175,000 of the proceeds of the NOLA DIP Facility allocated to capital expenditures of the NOLA Properties under the NOLA DIP Credit Agreement, as provided in the Crown Capital Affiliates DIP Term Sheet, plus (3) $175,000 of additional Cash proceeds of the NOLA Sale Transaction, as provided in the Crown Capital Affiliates DIP Term Sheet.

77. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the clerk of the Bankruptcy Court.

78. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order; *provided, further*, that, with the exception of the Confirmation Order (which is addressed in Article IX of the Plan), the Debtors reserve the right to waive any appeal period; *provided, further*, that, for the avoidance of any doubt, an order or judgment that is subject to appeal shall not constitute a Final Order even if a stay of such order or judgment pending resolution of the appeal has not been obtained.

79.    "*General Administrative Claim*" means any Administrative Claim, other than a Professional Compensation Claim or any fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including Quarterly Fees.

80.    "*General Administrative Claims Bar Date*" means, except for any Professional Compensation Claim or any fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including Quarterly Fees, the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

81.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

82.    "*Holder*" means any Entity holding a Claim or an Interest.

83.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

84.    "*Independent Fiduciary*" means Elizabeth A. LaPuma, in her capacity as the Authorized Party under the Irrevocable Proxy and Agreement, dated as of September 26, 2024, by and among CBRM, Moshe (Mark) Silber as sole stockholder of CBRM, and Elizabeth A. LaPuma.

85.    "*Insider*" means an "insider" as defined in section 101(31) of the Bankruptcy Code.

86.    "*Insurance Company*" means any insurance company, insurance syndicate, coverage holder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

87.    "*Insurance Policies*" means any and all known and unknown insurance policies or contracts that have been issued at any time to, whether expired or unexpired, or that provide coverage to, any of the Debtors or any Affiliate of any Debtor, and all agreements, documents or instruments related thereto, including any agreements with third-party administrators.  Notwithstanding the foregoing, the Insurance Policies shall not include the D&O Liability Insurance Policies, which shall remain with the applicable Debtor and shall not be transferred to the Creditor Recovery Trust on the Effective Date.

88.    "*Intercompany Claim*" means a Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor.

89.    "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor or Affiliate of a Debtor.

90.    "*Interest*" means the common stock or shares, limited liability company interests, limited partnership units, preferred interests, and any other equity, ownership or profits interests of any Debtor and options, warrants, rights or other securities or agreements to acquire the common stock or shares, limited liability company interests, or other equity, ownership or profits interests of any Debtor.

91.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

92.    "*Laguna Reserve*" means Debtor Laguna Reserve Apts Investor LLC.

93.    "*Lakewind Property*" means that certain multifamily assemblage owned by RH Lakewind East LLC and located in New Orleans, Louisiana.

94.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

95.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the District of New Jersey.

96.  "***NOLA Bidding Procedures Order***" means the *Order (I) Approving (A) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof for the NOLA Properties, (B) Process for Selecting a Stalking Horse Bidder and Offering Bid Protections, and (C) Assumption and Assignment Procedures, and (II) Granting Related Relief* [Docket No. 382] (as amended, modified, or supplemented by order of the Bankruptcy Court from time to time).

97.  "***NOLA Debtor Contributed Creditor Recovery Trust Amount***" means, to the extent not expended prior to the Effective Date solely with respect to the development and investigation of Claims and Causes of Action held by the Debtors or their Estates to be pursued for the benefit of creditors, Cash in an amount equal to $1,000,000 of the proceeds of the NOLA DIP Facility, which shall be funded on the Effective Date.

98.  "***NOLA Debtor Contributed Creditor Recovery Trust Assets***" means the (a) the NOLA Debtor Contributed Creditor Recovery Trust Amount, (b) the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action, (c) the NOLA Debtor Contributed Insurance Causes of Action, (d) the Contributed Claims (if any), (e) the Crown Capital Interests, (f) the RH New Orleans Interests, (g) the Transferred Subsidiaries (if any), and (h) to the extent expressly requested in writing by the Ad Hoc Group of Holders of Crown Capital Notes, the Crown Capital Noteholder Settlement Amount (if any).

99.  "***NOLA Debtor Contributed Creditor Recovery Trust Causes of Action***" means Claims or Causes of Action, including Avoidance Actions, held by the Debtors or their Estates as of the Effective Date and the proceeds thereof, other than any Claims or Causes of Action against the Released Parties that are released under Article VIII.  For the avoidance of any doubt, the Creditor Recovery Trust Causes of Action shall include any Claim or Cause of Action, including any Avoidance Action, held by the Debtors or their Estates against any Excluded Party.

100.  "***NOLA Debtor Contributed Insurance Causes of Action***" means Causes of Action of the Debtors related to or arising from the Insurance Policies.

101.  "***NOLA DIP Claim***" means any Claim against the Debtors arising under or related to the NOLA DIP Facility.

102.  "***NOLA DIP Credit Agreement***" means that certain Superpriority Secured Promissory Note and Security Agreement, dated as of July 1, 2025, by and among the Debtors and the NOLA DIP Lenders, and the other parties thereto, as the same may be subsequently modified, amended, or supplemented from time to time, together with all instruments and agreements related thereto.

103.  "***NOLA DIP Facility***" means that certain debtor in possession credit facility entered into pursuant to the NOLA DIP Credit Agreement and approved by the Bankruptcy Court pursuant to the NOLA DIP Order.

104.  "***NOLA DIP Lenders***" means DH1 Holdings LLC, CKD Funding LLC, and CKD Investor Penn LLC.

105.  "***NOLA DIP Order***" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 251].

106.  "***NOLA Go-Forward Trade Claim***" means any Unsecured Claim against Debtors RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, and RH Windrun LLC held by a Holder that provides, and will continue to provide following the consummation of the NOLA Sale Transaction, goods and services necessary to the operation of the NOLA Properties.

107.  "***NOLA Properties***" means, collectively, the Chenault Property, the Copper Creek Property, the Lakewind Property, and the Windrun Property.

108.  "***NOLA Purchase Agreement***" means one or more asset purchase agreements pursuant to which the NOLA Sale Transaction is consummated.

109.    "***NOLA Purchaser***" means the purchaser of one or more of the NOLA Properties, whose bid was selected by the Debtors as the highest or otherwise best bid pursuant to the NOLA Bidding Procedures Order.

110.    "***NOLA Sale Transaction***" means the sale of one or more of the NOLA Properties under section 363 of the Bankruptcy Code or pursuant to this Plan in accordance with the provisions of section 1123 of the Bankruptcy Code as set forth in the NOLA Purchase Agreement.

111.    "***Other NOLA Unsecured Claim***" means any Unsecured Claim against Debtors RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, RH Windrun LLC, RH New Orleans Holdings LLC, and Laguna Reserve Apts Investor LLC that is not a NOLA Go-Forward Trade Claim.

112.    "***Other Priority Claim***" means any Claim entitled to priority in right of payment under section 507 of the Bankruptcy Code, other than (a) a General Administrative Claim; (b) a Priority Tax Claim; (c) a Professional Compensation Claim; or (d) a NOLA DIP Claim.

113.    "***Other Secured Claim***" means any Secured Claim against any Debtor that is not a NOLA DIP Claim or a CIF Mortgage Loan Claim.

114.    "***Person***" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

115.    "***Petition Date***" means May 19, 2025 with respect to the Debtors other than Laguna Reserve Apts Investor LLC, and August 17, 2025 with respect to Laguna Reserve Apts Investor LLC.

116.    "***Plan***" means this *Modified Joint Chapter 11 Plan for Crown Capital Holdings LLC and Certain of Its Debtor Affiliates*, as the same may be subsequently modified, amended, or supplemented from time to time, including the Plan Supplement, which is incorporated in the Plan by reference and made part of the Plan as if set forth in the Plan.

117.    "***Plan Supplement***" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, including (a) to the extent the NOLA Sale Transaction is not approved pursuant to a Sale Order, the NOLA Purchase Agreement, (b) the Rejected Executory Contract and Unexpired Lease List, (c) the Schedule of Retained Causes of Action, (d) the Schedule of Excluded Parties, (e) the Schedule of Transferred Subsidiaries, (f) the Schedule of Abandoned Entities, and (g) the Schedule of Creditor Recovery Trust Executory Contracts.

118.    "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

119.    "***Privileged Information***" means any privileged information of the Debtors, including information protected or purportedly protected by the attorney-client privilege or attorney work product doctrine, including information shared pursuant to any joint defense, common interest, or confidentiality agreement among the Debtors and any Affiliate or Insider, and any Common-Interest Communications.

120.    "***Pro Rata***" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such multiple Classes.

121.    "***Professional***" means an Entity retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

122. "***Professional Compensation Claim***" means any Claim for accrued fees and expenses (including success fees) for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Compensation Claim.

123. "***Proof of Claim***" means a proof of Claim Filed in the Chapter 11 Cases.

124. "***Property Manager***" means Lynd Management Group LLC, in its capacity as property manager pursuant to certain amended property management agreements.

125. "***Quarterly Fees***" means all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code.

126. "***Rejected Executory Contract and Unexpired Lease List***" means the list, as determined by the Debtors of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the provisions of Article V and will be included in the Plan Supplement.

127. "***Released Party***" means each of the following in its capacity as such: (a) the Independent Fiduciary; (b) the NOLA Purchaser; (c) the Asset Manager; (d) the Property Manager; (e) the NOLA DIP Lenders; (f) the Ad Hoc Group of Holders of Crown Capital Notes and each of its members; (g) with respect to each of the foregoing entities in clauses (b) through (f), such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (h) with respect to the Debtors and the Debtors' non-Debtor subsidiaries, White & Case LLP as counsel, IslandDundon LLC as financial advisor, Ken Rosen Advisors PC as New Jersey counsel and co-counsel, and the Claims and Noticing Agent. For the avoidance of any doubt, no Person or Entity identified on the Schedule of Excluded Parties shall constitute a Released Party for purposes of the Plan.

128. "***Releasing Parties***" means each of the following in its capacity as such: (a) the Independent Fiduciary; (b) the NOLA Purchaser; (c) the Asset Manager; (d) the Property Manager; (e) the NOLA DIP Lenders; (f) the Ad Hoc Group of Holders of Crown Capital Notes and each of its members; (g) each Holder of a Claim that affirmatively votes to accept the Plan; (h) each Holder of a Claim in Class 3, Class 4, Class 5, Class 6, and Class 7 who abstains or does not affirmatively vote to accept the Plan but checks the box on such Holder's Ballot indicating that such Holder opts to grant the releases contained in Article VIII of the Plan; (i) each Holder of a Claim in Class 1, Class 2, Class 8, Class 9, Class 10, Class 11, and Class 12 who checks the box on such Holder's Opt-In Form indicating that such Holder opts to grant the releases contained in Article VIII of the Plan; (j) with respect to each of the foregoing entities in clauses (b) through (f), such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (k) with respect to the Debtors and the Debtors' non-Debtor subsidiaries, White & Case LLP as counsel, IslandDundon LLC as financial advisor, Ken Rosen Advisors PC as New Jersey counsel and co-counsel, and the Claims and Noticing Agent.

129. "***Restructuring Documents***" means the Plan, the Disclosure Statement, the Plan Supplement, the NOLA Purchase Agreement, and the various other agreements and documentation formalizing the Plan or the NOLA Sale Transaction.

130. "***Restructuring Transactions***" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors determine to be necessary or desirable to implement the Plan, the Plan Supplement, the Creditor Recovery Trust Agreement, and the Confirmation Order.

131.     "**_RH New Orleans Interests_**" means the equity interests of Moshe (Mark) Silber in RH New Orleans Holdings MM LLC.

132.     "**_RH New Orleans Unsecured Claims_**" means all Unsecured Claims against RH New Orleans Holdings MM LLC.

133.     "**_Sale Order_**" means, to the extent the NOLA Sale Transaction is implemented as a standalone sale under section 363 of the Bankruptcy Code, the order entered by the Bankruptcy Court approving the NOLA Sale Transaction.

134.     "**_Sale Proceeds_**" means all proceeds of the NOLA Sale Transaction.

135.     "**_Schedule of Abandoned Entities_**" means the schedule of Entities in which the Debtors shall be deemed as of the Effective Date to have abandoned pursuant to section 544 of the Bankruptcy Code any equity interest in or other interest with respect to, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.

136.     "**_Schedule of Creditor Recovery Trust Executory Contracts_**" means the list, as determined by the Debtors of Executory Contracts that will be assumed by the Debtors and assigned to the Creditor Recovery Trust pursuant to the provisions of Article IV.D and will be included in the Plan Supplement.

137.     "**_Schedule of Excluded Parties_**" means the schedule of Persons or Entities specifically not to be Released Parties and Exculpated Parties, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

138.     "**_Schedule of Retained Causes of Action_**" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.

139.     "**_Schedule of Transferred Subsidiaries_**" means the schedule of Entities directly or indirectly owned by a Debtor that shall be transferred by the Debtors to the Creditor Recovery Trust or another Entity, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.  Notwithstanding anything to the contrary herein, the Schedule of Transferred Subsidiaries shall not include any Entity set forth in the Schedule of Abandoned Entities.

140.     "**_Section 510(b) Claim_**" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

141.     "**_Secured_**" means any Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order or the Plan, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

142.     "**_Spano Adversary Proceeding_**" means the adversary proceeding captioned _CBRM Realty Inc. v. Spano Investor LLC_, Adv. Pro. No. 25-01295 (Bankr. D.N.J. July 18, 2025).

143.     "**_Transferred Subsidiaries_**" means all Entities set forth in the Schedule of Transferred Subsidiaries.

144.     "**_U.S. Trustee_**" means the Office of the United States Trustee for the District of New Jersey.

145.     "**_Unexpired Lease_**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

146.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

147.    "*Unsecured Claim*" means any Claim that is not Secured and is not: (a) a General Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; or (d) a Professional Compensation Claim.

148.    "*Wind-Down*" means the wind down, dissolution, and liquidation of the Estates following the Effective Date as set forth in Article IV.C of the Plan.

149.    "*Wind-Down Account*" means the bank account or accounts used to fund all expenses and payments required to be made by the Wind-Down Officer, which shall be established on the Effective Date of the CBRM Plan.

150.    "*Wind-Down Agreement*" means, unless otherwise disclosed in the Plan Supplement, the Creditor Recovery Trust Agreement dated as of the Effective Date of the CBRM Plan, as the same may be amended or modified from time to time in accordance with the terms thereof, and which shall be filed with the Plan Supplement.

151.    "*Wind-Down Assets*" means the (a) any amounts necessary to satisfy the Wind-Down Claims (in each case, to the extent Allowed and required to be paid in Cash and, with respect to the Other Secured Claims, to the extent that the Debtors or the Wind-Down Officer, as applicable, elect to satisfy such Claims in Cash), and (b) Wind-Down Retained Causes of Action.  For the avoidance of doubt, the Wind-Down Assets shall not include the NOLA Debtor Contributed Creditor Recovery Trust Assets.

152.    "*Wind-Down Claims*" means the following Claims:  General Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, Akiri Mortgage Loan Claims, and CKD Penn Mortgage Claims.

153.    "*Wind-Down Retained Causes of Action*" means Estate Causes of Action that are counterclaims or defenses with respect to General Administrative Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims.  For the avoidance of doubt, the Wind-Down Retained Causes of Action shall not include any Causes of Action against the Released Parties that are released under Article VIII.

154.    "*Wind-Down Officer*" means, unless otherwise disclosed in the Plan Supplement, the Creditor Recovery Trustee or any successor(s) thereto, who shall be the representative of the Debtors on and after the Effective Date, and who shall have the rights, powers, duties, and responsibilities set forth in this Plan and in the Wind-Down Agreement.

155.    "*Windrun Property*" means that certain multifamily assemblage owned by RH Windrun LLC and located in New Orleans, Louisiana.

B.    *Rules of Interpretation*.

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement;

13

(7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  References in the Plan to the Debtors shall mean the Debtors or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date, as applicable.

C.     *Computation of Time*.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan or Confirmation Order.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.     *Governing Law*.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

E.     *Controlling Document*.

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS

A.     *General Administrative Claims*.

Unless otherwise agreed to by the Holder of an Allowed General Administrative Claim and the Debtors, each Holder of an Allowed General Administrative Claim will receive, in full and final satisfaction of, and, in exchange for such General Administrative Claim, treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or an amount of Cash equal to the unpaid

amount of such Allowed General Administrative Claims in accordance with the following: (a) if such General Administrative Claim is Allowed as of the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such General Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such General Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed General Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim without any further action by the Holder of such Allowed General Administrative Claim, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Unless previously Filed, requests for payment of General Administrative Claims must be Filed and served on the Debtors no later than the General Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that do not File and serve such a request by the General Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors or the Debtors' property and such General Administrative Claims shall be deemed released and compromised as of the Effective Date. For the avoidance of doubt, any Allowed Claim with respect to the reasonable and documented fees and out-of-pocket expenses of counsel to the Ad Hoc Group of Holders of Crown Capital Notes shall be satisfied pursuant to the CBRM Plan.

B.      *Professional Compensation Claims.*

All final requests for payment of Claims of a Professional shall be Filed no later than 45 days after the Effective Date. The amount of Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Fee Escrow Account when such Claims are Allowed by a Final Order.

C.      *Fee Escrow Account.*

The Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Compensation Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Fee Escrow Account or Cash held in the Fee Escrow Account in any way. Funds held in the Fee Escrow Account shall not be considered property of the Estates; *provided* that the Debtors' counsel shall be the designated Entity authorized to release funds from the Fee Escrow Account in accordance with the governing escrow agreement.

The amount of Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors from the funds held in the Fee Escrow Account as soon as reasonably practicable after such Professional Compensation Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations to pay Allowed Professional Compensation Claims shall not be limited nor be deemed limited to funds held in the Fee Escrow Account, and the Creditor Recovery Trustee shall use Cash from the Creditor Recovery Trust Assets (as defined in the CBRM Plan) and the NOLA Debtor Contributed Creditor Recovery Trust Assets to increase the amount of the Fee Escrow Account to the extent fee applications are Filed in excess of the amount held in the Fee Escrow Account in accordance with Article II.A of the CBRM Plan.

D.      *Post-Confirmation Date Fees and Expenses.*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327

through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, no General Administrative Claims, Professional Compensation Claims, or any other post-confirmation fees and expenses shall be paid prior to payment of any Quarterly Fees due and outstanding to the U.S. Trustee.

E.      *Priority Tax Claims*.

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of an Allowed Priority Tax Claim and the Debtors, prior to the Effective Date, each Holder of an Allowed Priority Tax Claim will receive, at the option of the Debtor, in full and final satisfaction, of, and in exchange for, its Allowed Priority Tax Claim, (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim or (b) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. A Priority Tax Claim that becomes Allowed after the Effective Date shall receive such treatment in accordance with the Plan as soon as reasonably practicable after such Priority Tax Claim becomes Allowed.

F.      *NOLA DIP Claims*.

In full and final satisfaction, settlement, and release of and in exchange for release of all Allowed NOLA DIP Claims, on the Effective Date, each Allowed NOLA DIP Claim shall receive payment in full in Cash on the Effective Date or as soon thereafter as reasonably practicable; *provided, however*, that the Debtors shall be entitled to a credit of $175,000 of the amount necessary to satisfy the Allowed NOLA DIP Claims in full in Cash on the Effective Date as provided in the Crown Capital Affiliates DIP Term Sheet. The NOLA DIP Claims shall be Allowed in the aggregate amount outstanding under the NOLA DIP Credit Agreement as of the Effective Date. Upon satisfaction of all NOLA DIP Claims in accordance with the NOLA DIP Credit Agreement (except as modified by the proviso in the first sentence of this paragraph), all Liens and security interests granted by the Debtors to secure the NOLA DIP Claims shall be of no further force or effect.

G.      *Statutory Fees*.

All Quarterly Fees payable on or before the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. After the Effective Date, the Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and the Wind-Down Officer shall pay any and all Quarterly Fees in full in cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and the Wind-Down Officer shall cause to be filed with the Bankruptcy Court post-confirmation quarterly reports for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. The Debtors, the Creditor Recovery Trust, the Creditor Recovery Trustee, and the Wind-Down Officer shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. Notwithstanding anything to the contrary in the Plan, (i) Quarterly Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Claims, Professional Compensation Claims, NOLA DIP Claims, and Priority Tax Claims have not been

classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

*A.      Summary of Classification.*

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, is an Allowed Claim or Allowed Interest, and has not been paid, released, or otherwise satisfied.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Note Entitled to Vote (Presumed to Accept) |
| Class 2A | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2B | Akiri Mortgage Loan Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept ) |
| Class 2C | CKD Penn Mortgage Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | CIF Mortgage Loan Claim | Impaired | Entitled to Vote |
| Class 4 | NOLA Go-Forward Trade Claims | Impaired | Entitled to Vote |
| Class 5 | Other NOLA Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Crown Capital Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | RH New Orleans Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Crown Capital Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 11 | RH New Orleans Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B.      Treatment of Claims and Interests.*

The treatment provided to each Class relating to the Debtors for distribution purposes and voting rights are specified below:

1.      **Class 1 − Other Priority Claims**.

(a)      *Classification*:  Class 1 consists of all Other Priority Claims against any Debtor.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim and the applicable Debtor agree to a less favorable treatment, in full and final satisfaction of and in exchange for such Allowed Other Priority Claim, each such Holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter

as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms in the ordinary course).

(c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claim are not entitled to vote to accept or reject the Plan.

2.     **Class 2A – Other Secured Claims**.

(a)     *Classification*:  Class 2A consists of all Other Secured Claims against any Debtor.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Other Secured Claim and the applicable Debtor agree to a less favorable treatment, including as set forth in the NOLA DIP Order, in full and final satisfaction of and in exchange for such Allowed Other Secured Claim, each such Holder shall receive on the Effective Date or as soon thereafter as reasonably practicable:

(i)     payment in full in Cash of the unpaid portion of such Holder's Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, payment shall be made in accordance with its terms in the ordinary course);

(ii)    the applicable Debtor's interest in the collateral securing such Holder's Allowed Other Secured Claim;

(iii)   reinstatement of such Holder's Allowed Other Secured Claim; or

(iv)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)     *Voting*:  Class 2A is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.     **Class 2B – Akiri Mortgage Loan Claims**.

(a)     *Classification*:  Class 2B consists of all Akiri Mortgage Loan Claims against Debtor RH Chenault Creek LLC.

(b)     *Treatment:*  In full and final satisfaction of and in exchange for such Allowed Akiri Mortgage Loan Claim, each Holder of an Allowed Akiri Mortgage Loan Claim shall receive reinstatement of such Allowed Akiri Mortgage Loan Claim as a Claim against Debtor RH Chenault Creek LLC.  For the avoidance of doubt, following the Effective Date, the Holder of such Allowed Akiri Mortgage Loan Claim shall not have a Claim against the NOLA Purchaser or a Lien on the NOLA Properties, which shall be transferred to the NOLA Purchaser free and clear of Liens, Claims, and encumbrances, to the maximum extent permissible under applicable law as provided in the NOLA Purchase Agreement.

(c)     *Voting*:  Class 2B is Unimpaired under the Plan.  Each Holder of an Allowed Akiri Mortgage Loan Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders

of Allowed Akiri Mortgage Loan Claims are not entitled to vote to accept or reject the Plan.

4.    **Class 2C – CKD Penn Mortgage Claims**.

(a)    *Classification*:  Class 2C consists of all CKD Penn Mortgage Claims against any Debtor.

(b)    *Treatment:*  In full and final satisfaction of and in exchange for such Allowed CKD Penn Mortgage Claim, each Holder of an Allowed CKD Penn Mortgage Claim shall receive reinstatement of such Allowed CKD Penn Mortgage Claim as a Claim against the applicable Debtor or Debtors.  For the avoidance of doubt, following the Effective Date, the Holder of such Allowed CKD Penn Mortgage Claim shall not have a Claim against the NOLA Purchaser or a Lien on the NOLA Properties, which shall be transferred to the NOLA Purchaser free and clear of Liens, Claims, and encumbrances, to the maximum extent permissible under applicable law as provided in the NOLA Purchase Agreement.

(c)    *Voting*:  Class 2C is Unimpaired under the Plan.  Each Holder of an Allowed CKD Penn Mortgage Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed CKD Penn Mortgage Claims are not entitled to vote to accept or reject the Plan.

5.    **Class 3 – CIF Mortgage Loan Claim**.

(a)    *Classification*:  Class 3 consists of the CIF Mortgage Loan Claim against Debtors RH Lakewind East LLC and Laguna Reserve Apts Investor LLC.

(b)    *Allowance*:  The CIF Mortgage Loan Claim shall be Allowed in an amount equal to $4,500,000.

(c)    *Treatment*:  In full and final satisfaction of and in exchange for such Allowed CIF Mortgage Loan Claim, the Holder of the Allowed CIF Mortgage Loan Claim shall receive the CIF Lakewind Mortgage Payment.

(d)    *Voting*:  Class 3 is Impaired under the Plan.  The Holder of an Allowed CIF Mortgage Loan Claim is entitled to vote on the Plan.

6.    **Class 4 – NOLA Go-Forward Trade Claims**.

(a)    *Classification*:  Class 4 consists of all NOLA Go-Forward Trade Claims against Debtors RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East LLC, and RH Windrun LLC.

(b)    *Treatment*:  In full and final satisfaction of and in exchange for such Allowed NOLA Go-Forward Trade Claim, each Holder of an Allowed NOLA Go-Forward Trade Claim shall receive a treatment determined by the NOLA Purchaser in accordance with the terms of the NOLA Purchase Agreement.

(c)    *Voting*:  Class 4 is Impaired under the Plan.  Each Holder of an Allowed NOLA Go-Forward Trade Claim is entitled to vote on the Plan.

7.    **Class 5 – Other NOLA Unsecured Claims**.

(a)    *Classification*:  Class 5 consists of all Other NOLA Unsecured Claims against Debtors RH Chenault Creek LLC, RH Copper Creek LLC, RH Lakewind East

LLC, RH Windrun LLC, RH New Orleans Holdings LLC, and Laguna Reserve Apts Investor LLC.

(b)    *Treatment*:  On the Effective Date, in full and final satisfaction of and in exchange for such Allowed Other NOLA Unsecured Claim, each Holder of an Allowed Other NOLA Unsecured Claim shall receive its Pro Rata share of the Debtors' Cash on hand (if any) and the Cash proceeds (if any) of any other property available for distribution that is not otherwise distributed or transferred under this Plan or the CBRM Plan.

(c)    *Voting*: Class 5 is Impaired under the Plan.  Each Holder of an Allowed Other NOLA Unsecured Claim is entitled to vote on the Plan.

8.    **Class 6 – Crown Capital Unsecured Claims**.

(a)    *Classification*:  Class 6 consists of all Crown Capital Unsecured Claims against Debtor Crown Capital Holdings LLC.

(b)    Treatment:  In full and final satisfaction of and in exchange for such Allowed Crown Capital Unsecured Claim, each Holder of an Allowed Crown Capital Unsecured Claim shall receive its Pro Rata share of the Distributable Value of the Creditor Recovery Trust (as such terms are defined in, and subject to the terms of, the CBRM Plan).

(c)    *Voting*: Class 6 is Impaired under the Plan.  Each Holder of an Allowed Crown Capital Unsecured Claim is entitled to vote on the Plan.

9.    **Class 7 – RH New Orleans Unsecured Claims**.

(a)    *Classification*:  Class 7 consists of all RH New Orleans Unsecured Claims against Debtor RH New Orleans Holdings MM LLC.

(b)    *Treatment*:  In full and final satisfaction of and in exchange for such Allowed RH New Orleans Unsecured Claim, each Holder of an Allowed RH New Orleans Unsecured Claim shall receive its Pro Rata share of the Distributable Value of the Creditor Recovery Trust (as such terms are defined in, and subject to the terms of, the CBRM Plan) provided to such Holder on account of its Allowed CBRM Unsecured Claim.

(c)    *Voting*: Class 7 is Impaired under the Plan.  Each Holder of an Allowed Crown RH New Orleans Unsecured Claim is entitled to vote on the Plan.

10.    **Class 8 – Intercompany Claims**.

(a)    *Classification*:  Class 8 consists of all Intercompany Claims.

(b)    *Treatment*:  On or after the Effective Date, except as otherwise provided in the Plan Supplement, each Intercompany Claim shall be canceled, released, and extinguished and of no further force or effect without any distribution on account of such Intercompany Claim; *provided, however*, that any such Intercompany Claim shall not be canceled, released or extinguished and shall remain in force to the extent necessary to allow the Creditor Recovery Trustee to seek recovery from any non-Debtor.

(c)    *Voting*: Class 8 is Impaired under the Plan.  Each Holder of an Intercompany Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

11. **Class 9 – Intercompany Interests**.

    (a)    *Classification*: Class 9 consists of all Intercompany Interests.

    (b)    *Treatment*: On the Effective Date, except as otherwise provided in the Plan Supplement, each Holder of an Intercompany Interest shall not be entitled to any Distribution on account of such Intercompany Interest, which shall be canceled, released, and extinguished and of no further force or effect without further action by the Debtors.

    (c)    *Voting*: Class 9 is Impaired under the Plan. Each Holder of an Intercompany Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

12. **Class 10 – Crown Capital Interests**.

    (a)    *Classification*: Class 10 consists of all Interests in Debtor Crown Capital Holdings LLC.

    (b)    *Treatment*: On the Effective Date, each Crown Capital Interest shall be transferred to the Creditor Recovery Trust as provided in the Plan; *provided, however*, that the Crown Capital Interests shall remain subject to the alleged lien arising from the prepetition judgment, levy and property execution of Spano Investor LLC against CBRM Realty Inc. unless otherwise ordered by the Bankruptcy Court pursuant to a Final Order or agreed to by Spano Investor LLC; *provided, further, however*, that Spano Investor LLC shall not directly or indirectly seek to exercise any legal, equitable, or other rights against such Crown Capital Interests or other assets of any Debtor or subsidiary of any Debtor that may constitute collateral of Spano Investor LLC with respect to the alleged lien arising from the prepetition judgment, levy and property execution of Spano Investor LLC against CBRM Realty Inc. pending further order of the Bankruptcy Court or a Final Order of the Bankruptcy Court in the Spano Adversary Proceeding; *provided, further, however*, that notwithstanding the foregoing, nothing in this Plan shall limit or affect Spano Investor LLC's rights to enforce its prepetition judgment and exercise any remedies against non-Debtors Fox Capital LLC, CBCC 1 LLC, CBCC 2 LLC, CBCC 3 LLC, CBCC 4 LLC, CBCC 5 LLC, Westwood Jackson Apts MM LLC, or Westwood Jackson Apts LLC, or any assets of such non-Debtor entities.

    (c)    *Voting*: Class 10 is Impaired under the Plan. Each Holder of a Crown Capital Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Crown Capital Interests are not entitled to vote to accept or reject the Plan.

13. **Class 11 – RH New Orleans Interests**.

    (a)    *Classification*: Class 11 consists of all Interests in Debtor RH New Orleans Holdings MM LLC.

    (b)    *Treatment*: On the Effective Date, each Holder of a RH New Orleans Interest shall not be entitled to any Distribution on account of such Interest, which shall be transferred to the Creditor Recovery Trust as provided in the Plan.

    (c)    *Voting*: Class 11 is Impaired under the Plan. Each Holder of a RH New Orleans Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of RH New Orleans Interests are not entitled to vote to accept or reject the Plan.

14. **Class 12 – Section 510(b) Claims**.

(a) *Classification*: Class 12 consists of all Section 510(b) Claims against any Debtor.

(b) *Treatment*: On the Effective Date, each Holder of a Section 510(b) Claim shall not be entitled to any Distribution on account of such Section 510(b) Claim, which shall be canceled, released, and extinguished and of no further force or effect without further action by the Debtors.

(c) *Voting*: Class 12 is Impaired under the Plan. Each Holder of a Section 510(b) Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C. *Elimination of Vacant Classes*.

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

D. *Voting Classes Where No Valid Votes Are Received*.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, then such Class shall be deemed to have accepted the Plan.

E. *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *NOLA Sale Transaction, Restructuring Transactions, and Sources of Consideration for Plan Distributions*.

The Confirmation Order shall be deemed to authorize the Debtors, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions and, to the extent not approved pursuant to a Sale Order, the NOLA Sale Transaction. With respect to the Plan, all amounts of Cash necessary for the Debtors to make payments or distributions pursuant to the Plan shall be obtained from the Sale Proceeds, the NOLA Debtor Contributed Creditor Recovery Trust Assets, and the Wind-Down Assets. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the NOLA Purchase Agreement, the Cash proceeds of the NOLA Sale Transaction (after payment of the CIF Lakewind Mortgage Payment and satisfaction of the NOLA DIP Claims as provided in the Plan) shall be exclusively used to pay Allowed Claims under Article II of the Plan, in each case, subject to the approval of the Independent Fiduciary.

1.      **NOLA Sale Transaction**.

To the extent not approved pursuant to a Sale Order, on the Effective Date, the Debtors shall be authorized to consummate the NOLA Sale Transaction and, among other things, the NOLA Properties shall be transferred to and vest in the NOLA Purchaser free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the NOLA Purchase Agreement and the Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Debtors or the NOLA Purchaser, as applicable, may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Neither the NOLA Purchaser nor any of its Affiliates shall be deemed to be a successor to the Debtors.

2.      **Payment of Sale Proceeds by NOLA Purchaser**.

To the extent the NOLA Sale Transaction is not approved pursuant to a Sale Order, on the Effective Date, the NOLA Purchaser shall pay to the Debtors the Sale Proceeds as and to the extent provided for in the NOLA Purchase Agreement.

3.      **Restructuring Transactions**.

On the Effective Date, the Debtors and the NOLA Purchaser, to the extent applicable, shall implement the Restructuring Transactions.  The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (d) all other actions that the Debtors or the NOLA Purchaser, to the extent applicable, determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.  Without limiting the foregoing, prior to the Effective Date, the Debtors, acting at the sole and exclusive direction of the Independent Fiduciary, shall have the right to establish a trust, special purpose vehicle, or other Entity to hold Crown Capital and any Entity directly or indirectly owned by Crown Capital.

B.     *General Settlement of Claims*.

To the extent provided for by the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, certain of the provisions of the Plan shall constitute a good-faith compromise and settlement of certain Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

C.     *Crown Capital Noteholder Settlement*.

Pursuant to the Crown Capital Noteholder Settlement, the NOLA Purchaser has agreed to provide the Crown Capital Notes Settlement Amount to the Holders of Allowed Crown Capital Unsecured Claims.  In accordance with the Crown Capital Noteholder Settlement, each Holder of an Allowed Crown Capital Unsecured Claim shall hold an Allowed Claim against each Debtor in an amount equal to the amount of such Holder's Allowed Crown Capital Unsecured Claim and shall be deemed to have voted to accept the Plan on account of such Allowed Claim against each Debtor, and the Debtors shall not be required to disseminate a Ballot to the Holders of Allowed Crown Capital Unsecured Claims on account of such Allowed Claims.

D.     *Wind Down and Dissolution of the Debtors.*

1.     **Appointment of the Wind-Down Officer**.

On the Effective Date, the Wind-Down Officer appointed under the CBRM Plan shall be appointed by the Debtors for the purpose of conducting the Wind-Down and shall have all powers, privileges, and responsibilities provided to the Wind-Down Officer under Article IV.C of the CBRM Plan with respect to these Debtors subject to the provisions of Article IV.A.3 and Article IV.G herein with respect to Crown Capital and any Entity directly or indirectly owned by Crown Capital.

2.     **Termination of Wind-Down Officer's Duties; Dissolution of Debtors**.

Upon a certification to be Filed with the Bankruptcy Court by the Wind-Down Officer of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Officer shall be discharged without any further action, including the filing of any documents with the secretary of state for the state in which the Debtors are formed or any other jurisdiction. Notwithstanding the foregoing, the Wind-Down Officer shall retain the authority to take all necessary actions to dissolve the Debtors in, and withdraw the Debtors from, applicable states and provinces to the extent required by applicable law, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities. Any funds remaining in the Debtors at the time of dissolution shall be transferred to the Creditor Recovery Trust, subject to any reversionary interests of the NOLA DIP Lender in the Fee Escrow solely to the extent that the Bankruptcy Court determines that the NOLA DIP Facility has not been indefeasibly repaid in full in Cash or otherwise satisfied in full by the NOLA Sale Transaction.

E.     *Creditor Recovery Trust.*

1.     **Appointment of the Creditor Recovery Trust**.

On the Effective Date, the Creditor Recovery Trust shall be automatically appointed as a representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code. From and after the Effective Date, the Creditor Recovery Trust shall succeed to all rights, privileges, and powers of the Debtors and their Estates with respect to the NOLA Debtor Contributed Creditor Recovery Trust Assets transferred to the Creditor Recovery Trust, which NOLA Debtor Contributed Creditor Recovery Trust Assets shall, upon such transfer, become Creditor Recovery Trust Assets (as defined in the CBRM Plan); *provided, however,* that the transfer of the NOLA Debtor Contributed Creditor Recovery Trust Assets to the Creditor Recovery Trust shall not (i) affect nor be deemed to affect the corporate governance actions or other actions of Crown Capital nor (ii) divest the Independent Fiduciary of her control of Crown Capital and any Entity directly or indirectly owned by Crown Capital. The Creditor Recovery Trust shall be substituted and will replace the Debtors and their Estates in all NOLA Debtor Contributed Creditor Recovery Trust Causes of Action and NOLA Debtor Contributed Insurance Causes of Action, whether or not such claims are pending in filed litigation. The Creditor Recovery Trust shall operate as set forth in and be subject to the tax provisions of the CBRM Plan.

To the extent that the Effective Date for the CBRM Plan does not occur prior to the Effective Date, the Creditor Recovery Trust shall be established as of the Effective Date as set forth in the CBRM Plan without the requirement of the Effective Date of the CBRM Plan having to occur.

2.     **Vesting of the Creditor Recovery Trust Assets**.

As of the Effective Date, the Creditor Recovery Trust Assets, including the Creditor Recovery Trust Causes of Action, shall vest in the Creditor Recovery Trust, free and clear of all Liens, Claims, Encumbrances, charges or other interests to the extent permitted by section 1141 of the Bankruptcy Code; *provided, however,* that the Crown Capital Interests shall remain subject to the alleged lien arising from the prepetition judgment, levy and property execution of Spano Investor LLC against CBRM

24

Realty Inc. unless otherwise ordered by the Bankruptcy Court pursuant to a Final Order or agreed to by Spano Investor LLC; *provided, further, however*, that Spano Investor LLC shall not directly or indirectly seek to exercise any legal, equitable, or other rights against such Crown Capital Interests or other assets of any Debtor or subsidiary of any Debtor that may constitute collateral of Spano Investor LLC with respect to the alleged lien arising from the prepetition judgment, levy and property execution of Spano Investor LLC against CBRM Realty Inc. pending further order of the Bankruptcy Court or a Final Order of the Bankruptcy Court in the Spano Adversary Proceeding; *provided, further, however*, that notwithstanding the foregoing, nothing in this Plan shall limit or affect Spano Investor LLC's rights to enforce its prepetition judgment and exercise any remedies against non-Debtors Fox Capital LLC, CBCC 1 LLC, CBCC 2 LLC, CBCC 3 LLC, CBCC 4 LLC, CBCC 5 LLC, Westwood Jackson Apts MM LLC, or Westwood Jackson Apts LLC, or any assets of such non-Debtor entities.

For the avoidance of doubt, subject to the provisions of this Plan, the Creditor Recovery Trust Assets will not be deemed property of the Debtors or their Estates and the Creditor Recovery Trust shall not be deemed to be a successor of the Debtors for purposes of any Distribution made by the Creditor Recovery Trust.

3. **Creditor Recovery Trust Executory Contracts**.

On the Effective Date, the Creditor Recovery Trust Executory Contracts shall be deemed assumed by the Debtors and assigned to the Creditor Recovery Trust in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption and assignment. Except as otherwise set forth herein, the assumption and assignment of a Creditor Recovery Trust Executory Contract pursuant to the Plan shall be effective as of the Effective Date. Any monetary defaults under each Creditor Recovery Trust Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash by the Creditor Recovery Trust.

Except as otherwise provided in the Plan, the Debtors shall, on or before the date of filing of the Plan Supplement, cause the Cure and Assumption Notices to be served on counterparties to Creditor Recovery Trust Executory Contracts to be assumed and assigned pursuant to the Plan. Any objection by a non-Debtor counterparty to an Creditor Recovery Trust Executory Contract to the assumption and assignment, the related Cure Amount, or adequate assurance must be filed, served, and actually received by the Debtors on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); *provided* that each counterparty to a Creditor Recovery Trust Executory Contract (a) that the Debtors later determine to assume and assign or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption and assignment or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing.

Any counterparty to a Creditor Recovery Trust Executory Contract that fails to timely object to the proposed assumption of any Creditor Recovery Trust Executory Contract shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption and assignment of the applicable Creditor Recovery Trust Executory Contract and from requesting payment of a Cure Amount that differs from the amount paid or proposed to be paid by the Creditor Recovery Trust, without the need for any objection by the Creditor Recovery Trust or any further notice to or action, order, or approval of the Bankruptcy Court. The Creditor Recovery Trust may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.

To the maximum extent permitted by law, to the extent any provision in any Creditor Recovery Trust Executory Contract assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by, the assumption and assignment of such Creditor Recovery Trust Executory Contract (including any change of control or similar provision), then such provision shall be deemed pre-empted and modified such that neither the Debtors' assumption and assignment of the Creditor Recovery Trust Executory Contract nor any of the

transactions contemplated by the Plan shall entitle the non-Debtor counterparty to terminate or modify such Creditor Recovery Trust Executory Contract or to exercise any other purported default-related rights thereunder.

The Debtors' assumption and assignment of any Creditor Recovery Trust Executory Contract pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in this Article IV.D, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed and assigned Creditor Recovery Trust Executory Contract at any time prior to the effective date of assumption and assignment.

In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of the Creditor Recovery Trust or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Creditor Recovery Trust Executory Contract to be assumed and assigned; or (3) any other matter pertaining to assumption and assignment or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Creditor Recovery Trust and the counterparty to the Creditor Recovery Trust Executory Contract. The Creditor Recovery Trust shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption and assignment, or as may otherwise be agreed upon by the Creditor Recovery Trust and the counterparty to the Creditor Recovery Trust Executory Contract. To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Creditor Recovery Trust, the Creditor Recovery Trust may, in its discretion, reject the applicable Creditor Recovery Trust Executory Contract after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption and assignment. Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption and assignment prevent or delay implementation of the Plan or the occurrence of the Effective Date.

F.      *Cancellation of Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing, or in any way related to, Claims or Interests shall be canceled as against the Debtors and each Released Party and the obligations of the Debtors thereunder or in any way related thereto shall be released, settled, and compromised.

G.      *Corporate Action.*

Notwithstanding any requirements under applicable nonbankruptcy law, upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions and, to the extent not approved pursuant to a Sale Order, the NOLA Sale Transaction. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any Person or Entity or any further notice to or action, order, or approval of the Bankruptcy Court.

On and after the Effective Date, the Debtors and their directors, managers, partners, officers, authorized persons, and members thereof (including the Independent Fiduciary) are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

H.    *Independent Fiduciary.*

As of the Effective Date, notwithstanding any agreement, proxy, resolution, shareholders' agreement, or other document to the contrary or the transfer of the Crown Capital Interests to the Creditor Recovery Trust, the Independent Fiduciary shall have the sole authority and power to control the corporate governance actions of Crown Capital and any Entity directly or indirectly owned by Crown Capital; *provided* that, notwithstanding the foregoing, nothing in this Plan shall limit or affect the rights of Cleveland International Fund – AG Crocker Park, Ltd. in connection with that certain Amended and Restated Operating Agreement of Country Club Manor Apts Investor LLC, dated as of July 18, 2023.

I.    *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or any Interests, including the Transferred Subsidiaries, pursuant to the Plan, including, to the extent applicable, the NOLA Sale Transaction, the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, registration tax, mortgage tax, stamp act, real estate, transfer tax, mortgage recording tax, or other similar tax, fees, charges, or governmental assessment (including any penalties and interest), and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment to the maximum extent covered by section 1146 of the Bankruptcy Code.

J.    *Preservation of Rights of Action.*

On the Effective Date, (i) the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action shall vest in the Creditor Recovery Trust, and (ii) the Wind-Down Retained Causes of Action shall vest in the post-Effective Date Debtors under the authority of the Wind-Down Officer, in each case free and clear of all Claims, Liens, Encumbrances and other interests. The NOLA Debtor Contributed Creditor Recovery Trust Causes of Action shall be transferred to the Creditor Recovery Trust and shall, upon such transfer, become Creditor Recovery Trust Assets (as defined in the CBRM Plan) and the Wind-Down Retained Causes of Action shall become Wind-Down Assets. On and after the Effective Date, the Creditor Recovery Trustee shall have sole and exclusive discretion to pursue and dispose of the Creditor Recovery Trust Causes of Action (including the NOLA Debtor Contributed Creditor Recovery Trust Causes of Action) and the Wind-Down Officer shall have sole and exclusive discretion to pursue the Wind-Down Retained Causes of Action. No Person or Entity may rely on the absence of a specific reference in the Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtor, and on and after the Effective Date, the Creditor Recovery Trustee, or Wind-Down Officer, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation. Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Creditor Recovery Trustee, subject to the oversight, approval, consultation and consent of the Advisory Committee as set forth in the Creditor Recovery Trust Agreement, and the Wind-Down Officer, as applicable, shall retain and shall have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Creditor Recovery Trustee or the Wind-Down Officer, as applicable, will not pursue any and all available Causes of Action**. Unless and until any such Causes of Action against any Person or

Entity are expressly waived, relinquished, exculpated, released, compromised, or assigned, or settled under the Plan or a Final Order, the Creditor Recovery Trustee and Wind-Down Officer, as applicable, expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

K.      *Election to Contribute Claims.*

Because aggregating all Contributed Claims may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner, each Holder of a Claim or Interest may agree, by electing on its Ballot, to contribute its Contributed Claims to the Creditor Recovery Trust for the Creditor Recovery Trustee to prosecute on behalf of Contributing Claimants.  Rather, as provided in the Creditor Recovery Trust Agreement, any value attributable to such Contributed Claims will be segregated and only available for disbursement to those Holders that elected to contribute such Claims. By electing such option on its Ballot, each Contributing Claimant agrees that, subject to the occurrence of the Effective Date and the appointment of the Creditor Recovery Trustee, it will be deemed, without further action, (i) to have irrevocably contributed its Contributed Claims to the Creditor Recovery Trust, and (ii) to have agreed to execute any documents reasonably requested by the Creditor Recovery Trustee to memorialize and effectuate such contribution.

L.      *Contribution of Contributed Claims.*

On the Effective Date, all Contributed Claims will be irrevocably contributed to the Creditor Recovery Trust for the Creditor Recovery Trustee to prosecute on behalf of Contributing Claimants. No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Confirmation Order, the Creditor Recovery Trust Agreement, the Plan Supplement, or any other document as any indication that the Creditor Recovery Trustee will or will not pursue any and all available Contributed Claims against such Person.  The Creditor Recovery Trustee shall have, retain, reserve, and be entitled to assert all Contributed Claims fully to the same extent that the Contributing Claimants could have asserted such claims prior to the Effective Date.  For the avoidance of doubt, the Contributed Claims shall not include the rights of any of the Contributing Claimants to receive the Distributions under the Plan on account of their Claims or Interests and shall not include any claims that cannot be assigned under applicable law.

### ARTICLE V
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases (including all Executory Contracts and Unexpired Leases identified on the Rejected Executory Contract and Unexpired Lease List) will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that previously were assumed or rejected by the Debtors or those that are subject to a pending motion to assume or assign such Executory Contract or Unexpired Lease.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections.

B.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after entry of the Confirmation Order.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan not filed within such time shall be disallowed, forever barred, estopped, and enjoined from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, or property thereof, without the need for any objection by**

28

**the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged.** All Allowed Claims arising from the rejection of any Executory Contracts or Unexpired Leases shall constitute and be treated as Class 5 Other NOLA Unsecured Claims. Nothing herein shall constitute an extension of any Claims Bar Date otherwise applicable to a Claim arising from an Executory Contract or Unexpired Lease that was previously rejected by the Debtors.

C.      *Treatment of Insurance Policies.*

Notwithstanding anything to the contrary herein, each of the Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; *provided, however,* that to the extent any such Insurance Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and assign the same to the Creditor Recovery Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible.

D.      *Effect of Confirmation on D&O Liability Insurance Policies.*

From and after the Effective Date, the D&O Liability Insurance Policies shall remain in place on terms for coverage and amounts no less favorable than the Debtors' current directors' and officers' insurance policies. From and after the Effective Date, the D&O Liability Insurance Policies shall be maintained for the benefit of the beneficiaries thereunder and shall not be transferred to the Creditor Recovery Trust nor become Creditor Recovery Trust Assets (as defined in the CBRM Plan). The Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, and the Independent Fiduciary shall be entitled to the full benefits of any such policy or policies for the full term of such policy or policies.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Except as (1) otherwise provided herein, (2) directed by a Final Order, or (3) as otherwise agreed to by the Debtors or the Wind-Down Officer, as the case may be, and the Holder of the applicable Claim, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the next Distribution Date after such Claim becomes an Allowed Claim), each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent. In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Distribution Agent.*

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Plan

Supplement; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan and the Plan Supplement, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan and the Plan Supplement.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Wind-Down Officer from the Wind-Down Account.

C.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*.

Except as otherwise provided herein, the Distribution Agent shall make all distributions required under the Plan.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the Wind-Down Account.

In the event that either (a) a distribution to any Holder is returned as undeliverable, (b) the Holder of an Allowed Claim does not respond in writing to a request by the Debtors or the Distribution Agent for information necessary to facilitate a particular distribution within sixty (60) days or otherwise complete the actions necessary to facilitate a distribution as identified to the Holder within ninety (90) days of the Distribution Agent's request, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time such distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six months after (a) the date of the distribution, if a distribution is made, or (b) the date that a request for information or action is sent by the Distribution Agent.  After such date, all unclaimed property or interests in property shall revert to the Creditor Recovery Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or interest in property shall be released and forever barred.

D.      *Claims Payable by Third Parties*.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy, including any D&O Liability Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

E.      *Distributions to Unsecured Claims*.

Notwithstanding anything to the contrary herein, all Crown Capital Unsecured Claims and RH New Orleans Unsecured Claims shall be administered by the Creditor Recovery Trust pursuant to and in accordance with the Creditor Recovery Trust Agreement.

F.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided herein, the aggregate consideration paid to Holders on account of their Allowed Claims pursuant to the Plan shall be treated as allocated first to the principal amount

of such Allowed Claims (to the extent thereof and as determined for federal income tax purposes) and second, to the extent the consideration exceeds the principal amount of the Allowed Claims, to the remaining portion of such Allowed Claim, if any.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims.*

After the Effective Date, the Wind-Down Officer and the Creditor Recovery Trustee shall have and shall retain any and all available rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date, including, without limitation, the right to assert any objection to Claims based on the limitations imposed by section 502 of the Bankruptcy Code; *provided* that neither the Wind-Down Officer nor the Creditor Recovery Trustee shall have the right to object to any Professional Fee Claims or fees of the Independent Fiduciary.  For the avoidance of doubt, the Creditor Recovery Trustee shall have the right to object to and otherwise reconcile any and all Claims that seek recovery from the Creditor Recovery Trust other than Professional Fee Claims and fees of the Independent Fiduciary.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim against any Debtor shall become an Allowed Claim unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

No payment or distribution provided under the Plan shall be made on account of a Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

B.      *Automatic Disallowance and Expungement of Certain Claims.*

On the Effective Date, all Claims Filed after the Claims Bar Date that were required to be Filed in advance of the Claims Bar Date under its terms shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Distributions After Allowance.*

To the extent a Disputed Claim ultimately becomes an Allowed Claim, as soon as practicable, the Debtors shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous Distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

**ARTICLE VIII**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      *Settlement, Compromise, and Release of Claims and Interests.*

To the extent provided for by the Bankruptcy Code, and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by agents or representatives of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or

non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.

B.    *Release of Liens*.

**Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised.**

C.    *Releases by the Debtors*.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors and their Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date.**

D.    *Releases by Holders of Claims and Interests*.

**As of the Effective Date, except as otherwise provided in the Plan, the Releasing Parties are deemed to have released the Debtors, their Estates, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct Claims held by any of the Releasing Parties against the Debtors, their Estates, and/or the Released Parties or derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other**

32

occurrence relating to the Debtors taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (1) the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (2) except as to any member of the Ad Hoc Group of Holders of Crown Capital Notes who opted to grant the releases contained in Article VIII.D of the Plan, the Ad Hoc Group of Holders of Crown Capital Notes and each of its members (whether or not any such member affirmatively voted to accept the Plan) shall not release nor be deemed to release any claim or cause of action that any such holders may hold against the Asset Manager or the Property Manager and such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

E.    Exculpation.

Except as otherwise specifically provided in the Plan, each Debtor and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects each Debtor and each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan. The Debtors, their Estates, the Independent Fiduciary, and the Debtors' professionals including White & Case LLP, IslandDundon LLC, Ken Rosen Advisors PC, and Kurtzman Carson Consultants, LLC dba Verita Global have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of the Plan and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    Injunction.

Pursuant to section 362(c)(1) of the Bankruptcy Code, the automatic stay of an act against property of the Debtors' estates will continue until such property is no longer property of the Debtors' estates, and pursuant to section 362(c)(2) of the Bankruptcy Code, the stay of any other act described in section 362(a) of the Bankruptcy Code continues until the earlier of the closure or dismissal of these Chapter 11 Cases. In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan.

For the avoidance of doubt, the foregoing relief may include (but is not limited to): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claim or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; and (5) commencing or

33

continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests.

For the avoidance of doubt, this Article VIII.F shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.

## ARTICLE IX
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date.*

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan:

1.    the Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order;

2.    all documents and agreements necessary to implement the Plan, including any documents related to the NOLA Sale Transaction and Restructuring Transactions shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.    all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

4.    all conditions precedent to implementation of the NOLA Sale Transaction and Restructuring Transactions, including any conditions precedent under the NOLA Bidding Procedures Order, including, for the avoidance of doubt, any auction, if necessary, shall have occurred.

B.    *Waiver of Conditions.*

The conditions to Consummation set forth in Article IX of the Plan may be waived only by consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise provided in the Plan, the Debtors reserve the right to modify the Plan, whether materially or immaterially, including by adding a non-Debtor entity that becomes a debtor and debtor in possession under chapter 11 of the Bankruptcy Code to, or removing a Debtor from, the Plan, and seek Confirmation, in each instance, to the extent permitted under the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors reserve their right to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date or the Effective Date and to File subsequent plans of reorganization, in which case the Plan shall be null and void in all respects.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to an Executory Contract or Unexpired Lease, including the rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which the Debtors may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, or any other matter related;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Restructuring Documents;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.D of the Plan;

13.     determine any disputes or other matters that may arise in connection with or relate to the Restructuring Documents or any contract, instrument, release, indenture, or other agreement or document created in connection with the Restructuring Documents or any transactions contemplated therein;

14.     hear and determine disputes arising in connection with the interpretation, modification, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

15.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

16.     enforce all orders previously entered by the Bankruptcy Court;

17.     hear any other matter not inconsistent with the Bankruptcy Code; and

18.     enter an order concluding or closing the Chapter 11 Cases.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

A.     *Additional Documents*.

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the NOLA Purchaser, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

B.     *Payment of Quarterly Fees*.

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are dismissed or closed, whichever occurs first.

C.     *Reservation of Rights*.

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Restructuring Documents shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests before the Effective Date.

D.     *Successors and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

36

*E.*    *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

1.    **Debtors**:

CBRM Realty Inc.
c/o White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Attention:  Elizabeth A. LaPuma

with copies to:

White & Case LLP
111 S. Wacker Drive, Suite 5100
Chicago, Illinois 60606
Attention: Gregory F. Pesce and Barrett Lingle
Email: gregory.pesce@whitecase.com; barrett.lingle@whitecase.com

*F.*    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

*G.*    *Entire Agreement.*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*H.*    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

*I.*    *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

*J.*       *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or its counsel, or any other Entity, if such agreement was not disclosed in the Restructuring Documents or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted, as of the date first set forth above,

Dated:  October 18, 2025

Crown Capital Holdings LLC, on behalf of itself and each Debtor

By:      _/s/ Elizabeth A. LaPuma_
Name:  Elizabeth A. LaPuma
Title:    Independent Fiduciary